IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CONSOLIDATED COMMERCIAL            )
CONTROLS, INC. d/b/a ALLPOINTS     )
FOODSERVICE PARTS & SUPPLIES,      )
                                   )
                Plaintiff,         )          Case No.
                                   )
        v.                         )
                                   )
5 STAR SUPPLY LLC, 5 STAR MANAGEMENT )
GROUP, LLC, LINDA A. WILLIAMS,     )
CLIFFORD G. WILLIAMS II, STEPHEN J. )
PURSEL, PHILIP J. CARUSO, AND ROBERT )
G. MASTROFRANCESCO,                )
                                   )
                Defendants.        )

```
FILED: AUGUST 1, 2008
08CV4388
JUDGE KENDALL
MAGISTRATE JUDGE MASON

JH
```

### VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Consolidated Commercial Controls, Inc. d/b/a AllPoints Foodservice Parts & Supplies ("CCC"), by its attorneys and for its Verified Complaint for Injunctive and Other Relief against Defendants Linda A. Williams, Clifford G. Williams II, Stephen J. Pursel, Philip J. Caruso, and Robert G. Mastrofrancesco (the "Individual Defendants"), 5 Star Supply LLC, and 5 Star Management Group, LLC (collectively, "5 Star"), allege as follows:

### NATURE OF THE ACTION

1)      For years, the Individual Defendants held executive and management-level positions with International Commercial Supply Corporation, LLC ("ICS") and obtained a wealth of confidential and trade secret information concerning its business operations.  On or about October 31, 2008, one of ICS's chief competitors, CCC, acquired substantially all of its assets, and the Individual Defendants assumed similar positions with CCC and became critical players in integrating the business operations of the two entities.  Unbeknownst to CCC, however, the Individual Defendants had no intention of remaining in its employ and were

conspiring to form a competitive business founded upon the confidential and trade secret information of CCC and ICS.  The Individual Defendants have now left CCC's employ – with the confidential and trade secret information of CCC and ICS in tow – and launched a new competitive venture, 5 Star.

2)      CCC brings this action against the Individual Defendants and 5 Star seeking equitable and legal relief for breach of contract, actual and threatened misappropriation of trade secrets, breach of fiduciary duty, conversion, conspiracy, and violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.  Defendants' continued efforts to found a competitive business based on CCC's confidential and trade secret information will substantially and irreparably injure its business and provide 5 Star with an unfair advantage in the marketplace.  Only the issuance of immediate injunctive relief can prevent this irreparable harm and preserve CCC's confidential information, its right to the exclusive use of that information, and good will.  Accordingly, CCC seeks a preliminary and permanent injunction to prevent the Individual Defendants and 5 Star from continuing to exploit its confidential information.

<u>**PARTIES, JURISDICTION, AND VENUE**</u>

3)      Plaintiff CCC is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Chicago, Illinois.  CCC is in the business of sourcing, marketing, selling, and distributing equipment, parts, accessories, components, and supplies to the foodservice industry.  As a result of the integration of its business with ICS, CCC is presently doing business under the name of AllPoints Foodservice Parts & Supplies ("AllPoints").

4)      Defendants 5 Star Supply LLC and 5 Star Management Group, LLC are limited liability companies organized and existing under the laws of Connecticut, with their principal places of business in New Hartford, Connecticut.  5 Star is in the business of sourcing,

2

marketing, selling, and distributing equipment, parts, accessories, components, and supplies to the foodservice industry, and is a direct competitor of CCC.

5)     Defendant Linda A. Williams ("L. Williams") is an individual residing in New Hartford, Connecticut.  L. Williams was previously employed by CCC in the position of Chief Operation Officer.  L. Williams is currently the Manager of 5 Star and, on information and belief, owns a controlling interest in 5 Star.

6)     Defendant Clifford G. Williams ("C. Williams") is an individual residing in New Hartford, Connecticut.  C. Williams was previously employed by CCC in the position of Receiving Manager.  C. Williams is married to L. Williams and, on information and belief, is currently employed by 5 Star and is performing duties substantially similar to those that he performed for CCC.

7)     Defendant Stephen J. Pursel ("Pursel") is an individual residing in Burlington, Connecticut.  Pursel was previously employed by CCC in the position of Executive of Product Development. On information and belief, Pursel is currently employed by 5 Star and is performing duties substantially similar to those that he performed for CCC.

8)     Defendant Philip J. Caruso ("Caruso") is an individual residing in Prospect, Connecticut.  Caruso was previously employed by CCC in the position of Warehouse Manager. On information and belief, Caruso is currently employed by 5 Star and is performing duties substantially similar to those that he performed for CCC.

9)     Defendant Robert G. Mastrofrancesco ("Mastrofrancesco") is an individual residing in Watertown, Connecticut.  Mastrofrancesco was previously employed by CCC in the position of Sales Manager. On information and belief, Mastrofrancesco is currently employed by 5 Star and is performing duties substantially similar to those that he performed for CCC.

10)     This Court has subject matter jurisdiction over the instant cause of action based on diversity jurisdiction pursuant to 28 U.S.C. Section 1332 since the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.  This Court also has subject matter jurisdiction over the instant cause of action based on federal question jurisdiction pursuant to 28 U.S.C. Section 1331.

11)     This Court also has supplemental jurisdiction, pursuant to 28 U.S.C. Section 1367, over Plaintiff's claims arising under state law since those claims are so related to the federal claims that they form part of the same case and controversy under Article III of the United States Constitution.

12)     Venue is proper in this District pursuant to 28 U.S.C. Section 1391.

## FACTUAL ALLEGATIONS

*CCC's Business, Confidential Information, and Trade Secrets*

13)     CCC is one of the leading suppliers of equipment, parts, accessories, components, and supplies to the foodservice industry.  A significant portion of CCC's business is founded on its ability to provide replacement parts for commercial kitchen equipment quicker and cheaper than its customers could obtain those parts from the original equipment manufacturer.

14)     Accordingly, a critical component of CCC's business success is acquiring these replacement parts from reliable vendors at the lowest possible price.  To that end, CCC maintains business relationships with a cadre of key vendors and enters into supply agreements with those vendors which are frequently subject to provisions barring the parties from disclosing the terms of the agreement, including the prices that CCC is paying and any rebates or discounts that it is receiving.

15)     Another essential aspect of CCC's business is its on-going customer relationships and the terms under which CCC supplies those customers.  Although CCC maintains two

catalogs with list prices for many of its products, these prices are subject to negotiation and CCC's customers often receive substantial discounts on these prices based on a number of factors including the volume of products being purchased and whether the customer is a member of a larger buying group.  For certain key customers, CCC is party to purchasing agreements which contain provisions barring the parties from disclosing the terms of the agreement, including the prices, rebates, and discounts that the customer is receiving.

16)    CCC regards information concerning its vendor and customer relationships as confidential and trade secret information, and carefully safeguards this information by, among other things, limiting employee access on a need-to-know basis, implementing password protections, maintaining a confidentiality policy, and requiring employees to execute confidentiality agreements.

***CCC's Acquisition of ICS and Employment of the Individual Defendants***

17)    In 2007, CCC entered into discussions with ICS's owners concerning the possibility of CCC acquiring ICS.  At this time, L. Williams was employed by ICS as its Chief Financial Officer and Chief Operating Officer, and was also engaged in discussions with ICS's owners regarding the possibility of her acquiring ICS.

18)    CCC succeeded in its efforts to acquire ICS, one of its chief competitors in the foodservice supply industry.  On or about October 31, 2007, CCC acquired substantially all of ICS's assets, including its goodwill and confidential and trade secret information, for approximately $31.5 million.

19)    Following the acquisition of ICS, CCC offered employment to each of the Individual Defendants – who were all previously employed by ICS at its headquarters in Winsted, Connecticut – in substantially similar positions to those that they held with ICS and

offered each of the Individual Defendants an opportunity to receive substantial bonuses and perquisites:

a)      Although L. Williams relinquished her duties as Chief Financial Officer of ICS, she retained her duties as Chief Operating Officer and assumed responsibility for the integrated operations of both ICS and CCC. L. Williams also received an increase in her salary of approximately 14% and was eligible to receive an integration bonus in the amount of $36,000 payable in October 2008 and a year-end bonus with a target payout of $31,366. L. Williams was also given the opportunity to invest in CCC through its equity program.

b)      C. Williams remained in the position of Receiving/Inventory Control Manager, and received an increase in his salary of approximately 21%. C. Williams was eligible to receive a year-end bonus with a target payout of $6,054 and the opportunity to invest in CCC through its equity program.

c)      Pursel remained in the position of Executive of Product Development and was eligible to receive an integration bonus in the amount of $18,000 payable in October 2008 and a year-end bonus with a target payout of $27,747, for which Pursel received a special advance payment of $800 per pay period. Pursel was also given the opportunity to invest in CCC through its equity program.

d)      Caruso remained in the position of Warehouse Manager and was eligible to receive an integration bonus in the amount of $18,000 payable in October 2008 and a year-end bonus with a target payout of $9,077. Caruso was also given the opportunity to invest in CCC through its equity program.

e)      Mastrofrancesco remained in the position of Sales Manager and was eligible to receive an integration bonus in the amount of $18,000 payable in October 2008 and a year-end bonus with a target payout of $7,950. Mastrofrancesco was also given the opportunity to invest in CCC through its equity program.

20)      During their employment with ICS, each of the Individual Defendants received a copy of ICS's Employee Handbook. Upon receiving the Employee Handbook, each Individual Defendant signed a Handbook Receipt and Acknowledgement form under which they acknowledged receipt of the handbook and confirmed that they have read and understood its contents. True and correct copies of the Individual Defendants' signed Handbook Receipt and Acknowledgement forms are attached hereto as Exhibit A.

21)      In its Employee Handbook, ICS maintained a Proprietary Information/Confidentiality policy, which informed its employees that "ICS has developed

certain proprietary products and processes that are unique to ICS" and that "[k]eeping such information from competitors plays an important part in our success."  A true and correct copy of ICS's Proprietary Information/Confidentiality policy is attached hereto as Exhibit B.

22)     Each of the Individual Defendants, with the sole exception of Pursel, also signed an Employee Proprietary Information Agreement through which they agreed to maintain the confidentiality of ICS's confidential information and trade secrets:

> Confidentiality.  I agree to keep confidential, except as ICS may otherwise consent in writing, not to disclose, or make any use of except for the benefit of ICS, at any time either during or subsequent to my employment, any trade secrets, confidential information, knowledge, data, or other information of ICS relating to products, processes, know-how, designs, customer lists, business plans, marketing plans and strategies, and pricing strategies or any subject matter pertaining to any business of ICS or any of its clients, licensees or affiliates, which I may produce, obtain or otherwise acquire during the course of my employment, except as herein provided.  I further agree not to deliver, reproduce or in any way allow any such trade secrets, confidential information, knowledge, data or other information, or any documentation relating thereto, to be delivered or used by any third parties without specific direction or consent of duly authorized representative of ICS.

(Employee Proprietary Information Agreement, ¶ 1)

23)     These Individual Defendants further agreed to return any materials relating to their employment or relating to any confidential information, knowledge, or data of ICS upon the termination of their employment:

> Conflicting Employment; Return of Confidential Material . . . . In the event of my termination of employment with ICS for any reason whatsoever, I agree to promptly surrender and deliver to ICS all records, materials, equipment, drawings and data of any nature pertaining to any invention or confidential information of ICS or to my employment, and I will not take with me any description containing or pertaining to any confidential information, knowledge or data of ICS which I may produce or obtain during the course of my employment . . . .

(Employee Proprietary Information Agreement, ¶ 2)

24)     Pursuant to the purchase agreement by and between CCC and ICS, these Employee Proprietary Information Agreements were assigned to CCC and are fully enforceable by CCC.  True and correct copies of the Employee Proprietary Information Agreements signed

by Mastrofrancesco, C. Williams, and Caruso are attached hereto as Exhibit C.  On information and belief, prior to leaving CCC's employ, L. Williams took and/or destroyed the signed copy of her Employee Proprietary Information Agreement maintained in her personnel file.

***Defendants' Access to CCC's and ICS's Confidential and Trade Secret Information***

25)     During their employment with ICS, L. Williams, Pursel, and Mastrofrancesco were privy to substantial amounts of confidential and trade secret information concerning the business of ICS, including confidential information concerning ICS's purchasing arrangements with key vendors and information concerning sales, including but not limited to the identities of its customers and pricing, volume, and margin information.

26)     After accepting employment with CCC, L. Williams, Pursel, and Mastrofrancesco took leading roles in integrating the business operations of CCC and ICS and obtained further confidential and trade secret information, including information concerning CCC to which they were not privy while employed by ICS and which is not known in the industry.  Each was given extensive access to the new enterprise's efforts to reduce costs by examining the vendor arrangements that CCC and ICS maintained prior to the acquisition, including the terms of confidential supply agreements between CCC and key vendors.  The end product of this analysis was a matrix identifying the parts or supplies that CCC and ICS were both purchasing and identifying those parties or supplies that one of the entities was obtaining at a lower cost than the other.  As a result of this analysis, the new integrated business is able to substantially reduce its overhead and increase its margins.

27)     L. Williams, Pursel, and Mastrofrancesco were also given access to information concerning CCC's sales, including the identities of key customers, pricing, volume, and margin information to which they were not privy during their employment with ICS and which is not available in the marketplace.

28)     As the Chief Operating Officer of CCC with responsibilities for integrated operations of CCC and ICS, L. Williams was also given access to CCC's business plan for 2008, which included target areas for increasing sales and detailed information regarding where the new enterprise could reduce costs and increase prices as a result of the synergies created by integrating ICS into CCC.

### The Abrupt Departures of the Individual Defendants

29)     Although CCC was aware that L. Williams was disappointed that she was unable to personally acquire ICS's business, CCC was surprised by her announcement on or about March 31, 2008 that she was resigning effective April 10, 2008.  When L. Williams resigned, she did not reveal her future employment or business plans.

30)     On or about April 22, 2008, Pursel announced that he, too, was resigning effective the very next day, April 23, 2008.  As with L. Williams, Pursel did not reveal his future employment or business plans.

31)     Concerned that the abrupt departures of two executives with close personal relationships with former ICS personnel could signal further resignations and fearing that ICS's goodwill and confidential information could be in jeopardy, CCC's President, John Hanby, sent letters to both L. Williams and Pursel reminding them of their contractual and legal obligations to not disclose CCC's confidential information or unlawfully interfere with its business.  True and correct copies of these letters, dated May 1, 2008, are attached hereto as Exhibit D.

32)     Neither L. Williams nor Pursel responded to these letters, exacerbating CCC's concerns regarding their activities and the continued security of its confidential information.

33)     On April 23, 2008, unbeknownst to CCC, L. Williams had already formed 5 Star Supply LLC.

34)     In an effort to prevent the departure of additional personnel, on or about May 1, 2008, CCC offered substantial retention bonuses to Mastrofranceso and Caruso conditioned on them remaining employed by CCC through December 31, 2008 and on their execution of an agreement containing restrictions on them interfering with CCC's customer, vendor, and employment relationships for a period of one (1) year after their employment ended.

35)     Mastrofrancesco and Caruso refused CCC's offer of a retention bonus claiming that they did not want to be bound by any restrictions following the end of their employment. On information and belief, prior to their resignations, L. Williams and Pursel had already informed Mastrofrancesco and Caruso of their intent to form a competing business and solicited them to leave CCC for employment with that business.  On information and belief, L. Williams and Pursel, prior to their resignations, also informed C. Williams of their intent to form a competing business and solicited him to leave CCC for employment with that business.

36)     While employed by CCC, Mastrofrancesco, Caruso, and C. Williams failed to disclose to CCC that they were aware of L. Williams's and Pursel's intent to form a competing enterprise or their solicitations.

37)     On June 24, 2008, Mastrofrancesco, Caruso, and C. Williams announced they were resigning effective immediately.  They did not disclose their future business or employment plans.  On information and belief, they are currently employed by 5 Star in positions that are nearly identical to those that they held with CCC.

38)     Shortly before the departures of Mastrofrancesco, Caruso, and C. Williams, on June 18, 2008, L. Williams formed a second entity, 5 Star Management Group, LLC.

*The Individual Defendants' Theft of Computer Files*

39)     After the resignations of the Individual Defendants, CCC undertook a forensic examination of their work computers which has revealed that a substantial number of files were transferred or deleted at or around the time of their resignations.

40)     In the days leading up to her resignation, L. Williams attached several portable memory devices to her work computer, including a portable hard drive capable of holding 120 GB of information.  On information and belief, L. Williams transferred a substantial number of files to these devices for later use on behalf of 5 Star.  On her last day of employment, April 10, 2008, she also deleted thousands of files from her work computer.

41)     Pursel also attached several portable memory devices to his work computer, including one of the devices also used by L. Williams, immediately prior to his resignation.  On information and belief, Pursel transferred a substantial number of files to these devices for later use on behalf of 5 Star.  Pursel also deleted thousands of files from his work computer prior to leaving CCC's employ.

42)     Mere days before his resignation, Mastrofrancesco also attached a portable memory device to his work computer.  On information and belief, Mastrofrancesco transferred a substantial number of files to this device for later use on behalf of 5 Star.  Mastrofrancesco also deleted thousands of files from his work computer prior to leaving CCC's employ.

43)     On July 17, 2008, after discovering this unlawful taking of computer files and following the departures of Mastrofrancesco, C. Williams and Caruso, CCC's counsel sent letters to each of the Individual Defendants reminding them of their contractual and legal obligations to CCC.  True and correct copies of these letters are attached hereto as Exhibit E.

44)     In the letters to L. Williams, Pursel, and Mastrofrancesco, CCC's counsel informed them that CCC was aware of their efforts to download files from their work computers

and demanded that they contact CCC's counsel to arrange for a forensic examination of any and all portable memory devices that have, at any time, been connected to a computer of CCC or ICS and any computers or portable memory devices to which any electronic documents of CCC or ICS have been transferred.  CCC's counsel also demanded the immediate return of any and all property and hard copy documents related to the business of CCC or ICS.  These Individual Defendants were also instructed that if a response was not received within five (5) business days, CCC would pursue its legal rights and seek a preliminary injunction to stop the continued misappropriation of its confidential and trade secretion information and to bar 5 Star from engaging in any activities in the foodservice supply industry.

45)    On July 24, 2008, CCC's counsel received a letter from an attorney purporting to representing 5 Star and the Individual Defendants.  Enclosed with this letter was a copy of a Complaint, filed in the United States District Court for the District of Connecticut, seeking a declaratory judgment.  In neither document did 5 Star or the Individual Defendants deny that they had taken information from CCC or were using that information to compete with CCC.  A true and correct copy of this letter and the enclosed Complaint are attached hereto as Exhibit F.

*Irreparable Injury and Need for Injunctive Relief*

46)    CCC has already learned that 5 Star has been in contact with some of CCC's key vendors in an effort to obtain parts and supplies as a first step in establishing 5 Star as a competitive venture.  To secure the lowest possible prices and the greatest possible margins for 5 Star, L. Williams, Pursel, and Mastrofrancesco have relied, or will inevitably rely, upon their knowledge of CCC's vendor arrangements and the prices, discounts, and rebates that it was receiving.

47)    As part of 5 Star's efforts to secure customer relationships, L. Williams, Pursel, and Mastrofrancesco have relied, or will inevitably rely, upon their knowledge of CCC's key

customers and their confidential pricing arrangements in an effort to undercut CCC and secure business on behalf of 5 Star.

48)     On information and belief, all of the Individual Defendants are also knowingly using confidential and trade secret information obtained from the surreptitious downloads that L. Williams, Pursel, and Mastrofrancesco orchestrated shortly before their departures to further establish 5 Star as a competitor in industry.

49)     If 5 Star and the Individual Defendants are able to use CCC's confidential and trade secret information to compete, they will gain an unfair competitive advantage and irreparably injure CCC.  Once confidential and trade secret information is used or disclosed, its value may be damaged forever and the *status quo* cannot be restored.  It will be extraordinarily difficult, if not impossible, to reasonably calculate all of the profits that CCC will lose as a result of such illegal conduct.   Without judicial intervention, CCC will continue to be irreparably injured through its competitor's unlawful exploitation of its business confidences.

## COUNT I

### Violation of the Illinois Trade Secrets Act
**(Against All Defendants)**

50)     CCC realleges paragraphs 1 through 49 of this Verified Complaint as though fully set forth herein.

51)     This Count arises under the Illinois Trade Secrets Act ("ITSA"), 765 ILCS 1065/1, *et seq.*

52)     CCC derives economic value from its confidential business information, including information concerning its vendor and customer relationships and future business plans (collectively, the "Confidential Information"), because such information is not generally known to others who could obtain economic value from its disclosure and use.

13

53)    CCC has spent substantial money, time, and corporate resources in developing, obtaining, and maintaining its Confidential Information which is not known (except through the misconduct of Defendants) outside of CCC.  CCC's Confidential Information could not be duplicated by others without significant and costly effort, and using it would give them a substantial economic and competitive advantage.

54)    CCC takes reasonable steps to keep its Confidential Information secret, including limiting access to those employees who have a need to use it to perform their job duties, maintaining the information on password-protected computer systems, maintaining a confidentiality policy, and requiring employees to sign confidentiality agreements.

55)    Defendants have misappropriated, or will inevitably misappropriate, CCC's Confidential Information for the benefit of themselves.

56)    Defendants' actions, as set forth herein, constitute willful and wanton violations of the ITSA.

57)    Unless enjoined, Defendants' actual, threatened, and inevitable misappropriation of CCC's Confidential Information will materially and irreparably injury CCC's business in a manner that cannot be adequately compensated in monetary damages.  As a direct and proximate result of this misappropriation, CCC has also suffered damages to its business in an amount to be determined at trial.

## COUNT II

### Breach of Contract
### (Against Defendants L. Williams, Mastrofrancesco, Caruso, and C. Williams)

58)    CCC realleges paragraphs 1 through 57 of this Verified Complaint as though fully set forth herein.

59)    The Employee Proprietary Information Agreements signed by Defendants L. Williams, Mastrofrancesco, Caruso, and C. Williams are valid and binding agreements.

60)     Defendants L. Williams, Mastrofrancesco, Caruso, and C. Williams have breached, or will inevitably breach, these agreements by disclosing or using CCC's Confidential Information in the course of their employment with 5 Star and by failing to return all materials relating to their employment or any confidential information, knowledge, or data of CCC upon the termination of their employment.

61)     Unless enjoined, Defendants' actual, threatened, and inevitable breaches of these agreements will materially and irreparably injury CCC's business in a manner that cannot be adequately compensated in monetary damages.   As a direct and proximate result of these breaches, CCC has also suffered damages to its business in an amount to be determined at trial.

## COUNT III

### Tortious Interference with Contract
### (Against Defendants 5 Star and L. Williams)

62)     CCC realleges paragraphs 1 through 61 of this Verified Complaint as though fully set forth herein.

63)     At the time 5 Star hired Mastrofrancesco, Caruso, and C. Williams, 5 Star and its Manager, L. Williams, were well aware that these Defendants were subject to contractual prohibitions against disclosing or using CCC's Confidential Information and were required to return all materials relating to their employment with CCC or any Confidential Information, knowledge, or data of CCC upon the termination of their employment.

64)     Nonetheless, Defendants 5 Star and L. Williams have improperly and unjustifiably interfered with these Defendants' contractual obligations by knowingly permitting them to disclose and use CCC's Confidential Information and materials relating to their employment with CCC and Confidential Information, knowledge, or data of CCC in the course of performing their job duties for 5 Star.

65)    Unless enjoined, the unlawful acts of 5 Star and L. Williams will result in material and irreparable injury CCC's business in a manner that cannot be adequately compensated in monetary damages.  As a direct and proximate result of their tortious interference, CCC has also suffered damages to its business in an amount to be determined at trial.

## COUNT IV

### Violation of Computer Fraud and Abuse Act, 18 U.S.C. §1030
### (Against Defendants L. Williams, Pursel, and Mastrofrancesco)

66)    CCC realleges paragraphs 1 through 65 of this Verified Complaint as though fully set forth herein.

67)    Prior to their resignations from CCC, L. Williams, Mastrofrancesco, and Pursel accessed CCC's work computers, a protected computer engaged in interstate commerce, with the intent to defraud CCC and benefit themselves and 5 Star, and specifically to improperly convert documents developed by CCC.

68)    L. Williams, Mastrofrancesco, and Pursel also intentionally accessed CCC's work computers, a protected computer engaged in interstate commerce, to cause damage to those computers.

69)    The actions of L. Williams, Mastrofrancesco, and Pursel were intentional and without CCC's knowledge, permission, or authorization, or in excess of their authority.

70)    As a result of these violations of the Computer Fraud and Abuse Act, CCC has suffered damage and loss exceeding $5,000, including both the value of its misappropriated information, as well as the cost of investigating the misuse of the computers.

71)    As a result of these violations of the Computer Fraud and Abuse Act, L. Williams, Mastrofrancesco, Pursel, and 5 Star have obtained the value of CCC's misappropriated information.

16

## COUNT V

### Conversion
**(Against All Defendants)**

72)    CCC realleges paragraphs 1 through 71 of this Verified Complaint as though fully set forth herein.

73)    As set forth herein, CCC has spent substantial money, time, and corporate resources in developing, obtaining, and maintaining its Confidential Information.

74)    In their efforts to damage CCC's business and bolster their own competitive enterprise, 5 Star, the Defendants have assumed unauthorized and wrongful control of CCC's Confidential Information.

75)    As a direct and proximate result of this conversion, CCC has suffered damages to its business in an amount to be determined at trial.

## COUNT VI

### Breach of Fiduciary Duty
**(Against All Defendants)**

76)    CCC realleges paragraphs 1 through 75 of this Verified Complaint as though fully set forth herein.

77)    As employees of CCC, the Individual Defendants owed fiduciary duties to CCC, including, without limitation, the fiduciary duties of loyalty, care, and good faith.

78)    As an officer of CCC, L. Williams, further owed a heightened fiduciary duty to CCC not to: (a) actively exploit her position with CCC for her own personal benefit, or (b) hinder the ability of CCC to continue the business for which it was developed.

79)    The misconduct of the Individual Defendants described herein constitute breaches of their fiduciary duties to CCC.

80)    5 Star knowingly colluded with and/or assisted in these breaches of fiduciary duty and, therefore, is jointly and severally liable for the damages caused thereby.

81)    As a direct and proximate result of these breaches of fiduciary duty, CCC has suffered damages to its business in an amount to be determined at trial.

### COUNT VII

### Civil Conspiracy
**(Against All Defendants)**

82)    CCC realleges paragraphs 1 through 81 of this Verified Complaint as though fully set forth herein.

83)    The Defendants have unlawfully conspired and combined for the intentional and malicious purpose of injuring the business of CCC.

84)    One or more of these Defendants have taken overt and unlawful actions, in the form of misappropriation of trade secrets, conversion, and breach of fiduciary duty, in furtherance of the conspiracy.

85)    As a direct and proximate result of Defendants' conspiracy, CCC has suffered damages in amount to be proved at trial.

WHEREFORE, CCC respectfully requests that the Court enter an Order:

(a)    preliminarily and permanently enjoining Defendants from using or disclosing CCC's confidential information or trade secrets;

(b)    preliminarily and permanently enjoining 5 Star, L. Williams, Pursel, and Mastrofrancesco from engaging in the foodservice supply industry;

(c)    preliminary and permanently enjoining L. Williams, C. Williams, Caruso, and Mastrofrancesco from engaging in activities that would violate their Employee Proprietary Information Agreements;

(d)      directing Defendants to return all property of CCC in their possession, custody, or control;

(e)      awarding to CCC compensatory and punitive damages as provable at trial;

(f)      awarding CCC its costs, attorneys' fees, and any further legal and equitable relief as this Court deems just and proper.

Respectfully submitted,

CONSOLIDATED COMMERCIAL CONTROLS, INC. d/b/a ALLPOINTS FOODSERVICE PARTS & SUPPLIES,

By: _/s/ Jeffrey L. Rudd_____
            One of Its Attorneys

Bonita L. Stone
Jeffrey L. Rudd
Katten Muchin Rosenman LLP
525 West Monroe Street
Chicago, Illinois 60661-3693
(312) 902-5200 (telephone)
(312) 902-1061 (facsimile)

*Attorneys for Plaintiff*

60663580

```
08CV4388
JUDGE KENDALL
MAGISTRATE JUDGE MASON
```

# EXHIBIT A

## HANDBOOK RECEIPT AND ACKNOWLEDGEMENT

I have received a copy of the ICS Employee Handbook and have read and understood its contents. I understand that the handbook is intended to provide an overview of ICS's personnel policies and does not necessarily represent all such policies in force. ICS may at any time, in writing, add, change, or rescind any policy or practice at its sole discretion, without notice.

I understand that all employees at ICS are employed on an "at will" basis and that my employment and compensation are for no fixed term and may be terminated by ICS at any time with or without cause or notice. Likewise, I may resign at any time. I further understand and agree that no person other than the President, in writing has the authority to enter into any written or oral agreement different than what is stated herein.

LINDA PIESZAK

_____    _1-10-02_
Employee Name (Please Print)    Date

_____
Employee Signature

_John W. Combs 1-10-02_
Supervisor Name (Please Print)    Date

_____
Supervisor Signature

19

## HANDBOOK RECEIPT AND ACKNOWLEDGEMENT

I have received a copy of the ICS Employee Handbook and have read and understood its contents. I understand that the handbook is intended to provide an overview of ICS's personnel policies and does not necessarily represent all such policies in force. ICS may at any time, in writing, add, change, or rescind any policy or practice at its sole discretion, without notice.

**I understand that all employees at ICS are employed on an "at will" basis and that my employment and compensation are for no fixed term and may be terminated by ICS at any time with or without cause or notice. Likewise, I may resign at any time. I further understand and agree that no person other than the President, in writing has the authority to enter into any written or oral agreement different than what is stated herein.**

CLIFF WILLIAMS          1/21/02
Employee Name (Please Print)        Date

Employee Signature

Linda Bresak          1/21/02
Supervisor Name (Please Print)        Date

Supervisor Signature

19

## HANDBOOK RECEIPT AND ACKNOWLEDGEMENT

I have received a copy of the ICS Employee Handbook and have read and understood its contents. I understand that the handbook is intended to provide an overview of ICS's personnel policies and does not necessarily represent all such policies in force. ICS may at any time, in writing, add, change, or rescind any policy or practice at its sole discretion, without notice.

I understand that all employees at ICS are employed on an "at will" basis and that my employment and compensation are for no fixed term and may be terminated by ICS at any time with or without cause or notice. Likewise, I may resign at any time. I further understand and agree that no person other than the President, in writing has the authority to enter into any written or oral agreement different than what is stated herein.

STEVE PURSEL      *1 - 3 - 02*

_____    _____
Employee Name (Please Print)      Date

*Steve Pursel*

_____
Employee Signature


_____    _____
Supervisor Name (Please Print)      Date


_____
Supervisor Signature

19

Phit

## HANDBOOK RECEIPT AND ACKNOWLEDGEMENT

I have received a copy of the ICS Employee Handbook and have read and understood its contents. I understand that the handbook is intended to provide an overview of ICS's personnel policies and does not necessarily represent all such policies in force. ICS may at any time, in writing, add, change, or rescind any policy or practice at its sole discretion, without notice.

I understand that all employees at ICS are employed on an "at will" basis and that my employment and compensation are for no fixed term and may be terminated by ICS at any time with or without cause or notice. Likewise, I may resign at any time. I further understand and agree that no person other than the President, in writing has the authority to enter into any written or oral agreement different than what is stated herein.

PHIL CARUSO                                    1/03/02
_____      _____
Employee Name (Please Print)              Date

_____
Employee Signature

Linda Prescott 7-3-02
_____
Supervisor Name (Please Print)            Date

_____
Supervisor Signature

19

## HANDBOOK RECEIPT AND ACKNOWLEDGEMENT

I have received a copy of the ICS Employee Handbook and have read and understood its contents. I understand that the handbook is intended to provide an overview of ICS's personnel policies and does not necessarily represent all such policies in force. ICS may at any time, in writing, add, change, or rescind any policy or practice at its sole discretion, without notice.

**I understand that all employees at ICS are employed on an "at will" basis and that my employment and compensation are for no fixed term and may be terminated by ICS at any time with or without cause or notice. Likewise, I may resign at any time. I further understand and agree that no person other than the President, in writing has the authority to enter into any written or oral agreement different than what is stated herein.**

ROBERT
MASTROFRANCESCO                    1-3-02
_____    _____
Employee Name (Please Print)       Date


_____
Employee Signature


Linda Pieszak                       1-3-02
_____    _____
Supervisor Name (Please Print)      Date


_____
Supervisor Signature

19

08CV4388
JUDGE KENDALL
MAGISTRATE JUDGE MASON

# **<u>EXHIBIT B</u>**



# International Commercial Supply Corporation, LLC

# EMPLOYEE HANDBOOK

Revised 10-15-05

## DRESS CODE

What we wear to work is a reflection of the pride we have in ICS. To favorably impress our customers, members of the public and industry representatives, it is important for all employees to present a neat and acceptable appearance.  Here are some guidelines:

- ❑   Clothing must not constitute a safety hazard.

- ❑   All employees should practice common sense rules of neatness, good taste and comfort. Provocative clothing is prohibited.

## OUTSIDE EMPLOYMENT

ICS does not limit an employee's activities during nonworking hours unless those activities interfere with or are in conflict with the performance of his/her job, or create a conflict of interest.

## TERMINATIONS

We hope to retain good employees. However, employment at ICS is for no specified time, regardless of length of service. Just as you are free to leave for any reason, we reserve the same right to end our relationship with you at any time, with or without cause or notice, for any reason not prohibited by law.

When an employee wishes to resign because of illness or for personal reasons, the possibility of a leave of absence may be explored if the employee has a good work record and has sufficient length of service.

The employee is requested to give at least two weeks notice before voluntarily terminating employment.

## PROPRIETARY INFORMATION/CONFIDENTIALITY

ICS has developed certain proprietary products and processes that are unique to ICS.  Keeping such information from competitors plays an important part in our success.  ICS protects proprietary information by restricting employee and visitor access to certain designated company areas and documents to only those who have business reasons.  All employees are required to keep our technology secure and to sign our **EMPLOYEE PROPRIETARY INFORMATION AGREEMENT** at the beginning of employment. This document is located on pages **15 and 16** of this handbook and it grants ICS the patent rights to any invention associated with our technology and confirms your agreement not to divulge any confidential information to those outside of ICS. An employee who divulges confidential information may be terminated.

## SECURITY/LOSS PREVENTION

ICS has installed and maintains a security system to protect the premises from fire, unlawful entry, and theft.  Employees are encouraged to assist management in ensuring that the system is not compromised in any way, shape or form.  Tampering with the system, violating procedures or revealing the system to others may result in immediate termination.

```
08CV4388
JUDGE KENDALL
MAGISTRATE JUDGE MASON
```

# <u>EXHIBIT C</u>

## INTERNATIONAL COMMERCIAL SUPPLY CORPORATION, LLC

### EMPLOYEE PROPRIETARY INFORMATION AGREEMENT

In consideration and as a condition of my employment, or continuing employment, by International Commercial Supply Corporation, LLC and/or by companies which it owns, controls, or is affiliated with, or their successors in business ICS, and the compensation paid therefore:

1. **Confidentiality.** I agree to keep confidential, except as ICS may otherwise consent in writing, not to disclose, or make any use of except for the benefit of ICS, at any time either during or subsequent to my employment, any trade secrets, confidential information, knowledge, data, or other information of ICS relating to products, processes, know-how, designs, customer lists, business plans, marketing plans and strategies, and pricing strategies or any subject matter pertaining to any business of ICS or any of its clients, licensees or affiliates, which I may produce, obtain or otherwise acquire during the course of my employment, except as herein provided. I further agree not to deliver, reproduce or in any way allow any such trade secrets, confidential information, knowledge, data or other information, or any documentation relating thereto, to be delivered or used by any third parties without specific direction or consent of a duly authorized representative of ICS.

2. **Conflicting Employment; Return of Confidential Material.** I agree that during my employment with ICS I will not engage in any other employment, occupation, consulting or other activity relating to the business in which ICS is then engaged, or which would otherwise conflict with my obligations to ICS. In the event of my termination of employment with ICS for any reason whatsoever, I agree to promptly surrender and deliver to ICS all records, materials, equipment, drawings and data of any nature pertaining to any invention or confidential information of ICS or to my employment, and I will not take with me any description containing or pertaining to any confidential information, knowledge or data of ICS which I may produce or obtain during the course of my employment. In the event of the termination of my employment, I agree to sign and deliver the "Termination Certification" attached hereto.

3. **Maintenance of Records.** I agree to keep and maintain adequate and current written records in the performance of my job, which records shall be available to and remain the sole property of ICS at all times.

4. **Modification.** This agreement may not be changed, modified, released, discharged, abandoned, or otherwise amended, in whole or in part, except by an instrument in writing, signed by the employee and ICS. I agree that any subsequent change or changes in my duties, salary or compensation shall not effect the validity or scope of this Agreement.

5. **Entire Agreement.** I acknowledge receipt of this Agreement, and agree that with respect to the subject matter thereof it is my entire agreement with ICS, superseding any previous oral or written communications, representations, understandings, or agreements with the Company or any officer or representative thereof.

6. **Severability.** In the event that any paragraph or provision of this Agreement shall be held to be illegal or unenforceable, such paragraph or provision shall be severed from this Agreement and the entire agreement shall not fail on account thereof, but shall otherwise remain in full force and effect.

15

7.  Successors and Assigns. This Agreement shall be binding upon my heirs, executors, administrators or other legal representatives and is for the benefit of ICS, its successors and assigns.

8.  Governing Law. This Agreement shall be governed by the laws of the State of Connecticut.

9.  Counterparts. This Agreement shall be signed in two counterparts, each of which shall be deemed an original and both of which shall together constitute one agreement.

Dated:  *1-3-02*

Accepted and Agreed:

International Commercial Supply Corporation, LLC

By _____    _____
                                                         Employee

Title *Controller*    _____
                                                         Witness

16

Cliff Williams

## INTERNATIONAL COMMERCIAL SUPPLY CORPORATION, LLC

### EMPLOYEE PROPRIETARY INFORMATION AGREEMENT

In consideration and as a condition of my employment, or continuing employment, by International Commercial Supply Corporation, LLC and/or by companies which it owns, controls, or is affiliated with, or their successors in business ICS, and the compensation paid therefore:

1. Confidentiality. I agree to keep confidential, except as ICS may otherwise consent in writing, not to disclose, or make any use of except for the benefit of ICS, at any time either during or subsequent to my employment, any trade secrets, confidential information, knowledge, data, or other information of ICS relating to products, processes, know-how, designs, customer lists, business plans, marketing plans and strategies, and pricing strategies or any subject matter pertaining to any business of ICS or any of its clients, licensees or affiliates, which I may produce, obtain or otherwise acquire during the course of my employment, except as herein provided. I further agree not to deliver, reproduce or in any way allow any such trade secrets, confidential information, knowledge, data or other information, or any documentation relating thereto, to be delivered or used by any third parties without specific direction or consent of a duly authorized representative of ICS.

2. Conflicting Employment; Return of Confidential Material. I agree that during my employment with ICS I will not engage in any other employment, occupation, consulting or other activity relating to the business in which ICS is then engaged, or which would otherwise conflict with my obligations to ICS. In the event of my termination of employment with ICS for any reason whatsoever, I agree to promptly surrender and deliver to ICS all records, materials, equipment, drawings and data of any nature pertaining to any invention or confidential information of ICS or to my employment, and I will not take with me any description containing or pertaining to any confidential information, knowledge or data of ICS which I may produce or obtain during the course of my employment. In the event of the termination of my employment, I agree to sign and deliver the "Termination Certification" attached hereto.

3. Maintenance of Records. I agree to keep and maintain adequate and current written records in the performance of my job, which records shall be available to and remain the sole property of ICS at all times.

4. Modification. This agreement may not be changed, modified, released, discharged, abandoned, or otherwise amended, in whole or in part, except by an instrument in writing, signed by the employee and ICS. I agree that any subsequent change or changes in my duties, salary or compensation shall not effect the validity or scope of this Agreement.

5. Entire Agreement. I acknowledge receipt of this Agreement, and agree that with respect to the subject matter thereof it is my entire agreement with ICS, superseding any previous oral or written communications, representations, understandings, or agreements with the Company or any officer or representative thereof.

6. Severability. In the event that any paragraph or provision of this Agreement shall be held to be illegal or unenforceable, such paragraph or provision shall be severed from this Agreement and the entire agreement shall not fail on account thereof, but shall otherwise remain in full force and effect.

16

7. **Successors and Assigns.** This Agreement shall be binding upon my heirs, executors, administrators or other legal representatives and is for the benefit of ICS, its successors and assigns.

8. **Governing Law.** This Agreement shall be governed by the laws of the State of Connecticut.

9. **Counterparts.** This Agreement shall be signed in two counterparts, each of which shall be deemed an original and both of which shall together constitute one agreement.

Dated: 01/21/02

Accepted and Agreed:

International Commercial Supply Corporation, LLC

By _____

Employee _____

Title _____

Witness _____

16

Phil Caruso

## INTERNATIONAL COMMERCIAL SUPPLY CORPORATION, LLC

### EMPLOYEE PROPRIETARY INFORMATION AGREEMENT

In consideration and as a condition of my employment, or continuing employment, by International Commercial Supply Corporation, LLC and/or by companies which it owns, controls, or is affiliated with, or their successors in business ICS, and the compensation paid therefore:

1. Confidentiality. I agree to keep confidential, except as ICS may otherwise consent in writing, not to disclose, or make any use of except for the benefit of ICS, at any time either during or subsequent to my employment, any trade secrets, confidential information, knowledge, data, or other information of ICS relating to products, processes, know-how, designs, customer lists, business plans, marketing plans and strategies, and pricing strategies or any subject matter pertaining to any business of ICS or any of its clients, licensees or affiliates, which I may produce, obtain or otherwise acquire during the course of my employment, except as herein provided. I further agree not to deliver, reproduce or in any way allow any such trade secrets, confidential information, knowledge, data or other information, or any documentation relating thereto, to be delivered or used by any third parties without specific direction or consent of a duly authorized representative of ICS.

2. Conflicting Employment; Return of Confidential Material. I agree that during my employment with ICS I will not engage in any other employment, occupation, consulting or other activity relating to the business in which ICS is then engaged, or which would otherwise conflict with my obligations to ICS. In the event of my termination of employment with ICS for any reason whatsoever, I agree to promptly surrender and deliver to ICS all records, materials, equipment, drawings and data of any nature pertaining to any invention or confidential information of ICS or to my employment, and I will not take with me any description containing or pertaining to any confidential information, knowledge or data of ICS which I may produce or obtain during the course of my employment. In the event of the termination of my employment, I agree to sign and deliver the "Termination Certification" attached hereto.

3. Maintenance of Records. I agree to keep and maintain adequate and current written records in the performance of my job, which records shall be available to and remain the sole property of ICS at all times.

4. Modification. This agreement may not be changed, modified, released, discharged, abandoned, or otherwise amended, in whole or in part, except by an instrument in writing, signed by the employee and ICS. I agree that any subsequent change or changes in my duties, salary or compensation shall not effect the validity or scope of this Agreement.

5. Entire Agreement. I acknowledge receipt of this Agreement, and agree that with respect to the subject matter thereof it is my entire agreement with ICS, superseding any previous oral or written communications, representations, understandings, or agreements with the Company or any officer or representative thereof.

6. Severability. In the event that any paragraph or provision of this Agreement shall be held to be illegal or unenforceable, such paragraph or provision shall be severed from this Agreement and the entire agreement shall not fail on account thereof, but shall otherwise remain in full force and effect.

15

7.  Successors and Assigns. This Agreement shall be binding upon my heirs, executors, administrators or other legal representatives and is for the benefit of ICS, its successors and assigns.

8.  Governing Law. This Agreement shall be governed by the laws of the State of Connecticut.

9.  Counterparts. This Agreement shall be signed in two counterparts, each of which shall be deemed an original and both of which shall together constitute one agreement.

Dated: _1-3-02_

Accepted and Agreed:

International Commercial Supply Corporation, LLC

By _____    _____
                                            Employee

Title _Controller_    _____
                                            Witness

16

08CV4388
JUDGE KENDALL
MAGISTRATE JUDGE MASON

# **EXHIBIT D**



May 1, 2008

**Via Federal Express**
Linda Williams
66 Hidden Hill Road
New Hartford, CT 06057

Dear Linda:

As you know, Consolidated Commercial Controls, Inc. (the "Company") is focused on growing its business and maintaining the competitive advantage that it and its predecessor, International Supply Corporation, LLC ("ICS"), achieved through many years of hard work. To this end, I am writing to remind you of your continuing contractual and legal obligations not to disclose the Company's confidential information or otherwise unduly interfere with its business.

As you will recall, while employed by ICS you entered into an Employee Proprietary Information Agreement with ICS (the "Confidentiality Agreement"). This Confidentiality Agreement was assigned to the Company in connection with its acquisition of ICS. Pursuant to Paragraph 1 of the Confidentiality Agreement, you are obligated to keep confidential all trade secret and proprietary information of the Company, such as its business plans, customer information, pricing strategies and employee compensation information. This obligation extends to information such as customer identities and pricing and to the Company's arrangements with suppliers, including those that were disclosed to you in the business integration process. The Company is entitled to, and will, enforce the terms of the Confidentiality Agreement, as well as similar rights to protect its confidential information that it has under common law.

In addition to maintaining the confidentiality of its proprietary information, the Company expects that you will not engage in any conduct that may constitute unfair competition or compete with its business in violation of applicable law, including by improperly interfering with its relationships with employees, customers or vendors. You should also understand that, under certain circumstances, the former owners of ICS have an obligation to indemnify the Company for any losses the Company may suffer as a result of your competitive activities. The Company will, if necessary, invoke this right to indemnification.

In short, you should be aware that while the Company expects that you will fully honor your contractual and legal obligations, it will be closely monitoring the marketplace to ensure that you do so. Should we learn that any violation of your obligations has or may occur, we will take appropriate measures to protect our interests, which may include legal action.

Linda Williams
May 1, 2008
Page 2


Please contact me if you have any questions about the foregoing.

Very truly yours,

John Hanly
President


Cc:    Howard W. Brebeck
        John W. Combs
        James A. Bourgoin

Encl:   Employee Proprietary Information Agreement


60644438



May 1, 2008

**Via Federal Express**
Stephen Pursel
494 Spielman Hwy.
Burlington, CT 06013

Dear Steve:

As you know, Consolidated Commercial Controls, Inc. (the "Company") is focused on growing its business and maintaining the competitive advantage that it and its predecessor, International Supply Corporation, LLC, achieved through many years of hard work. To this end, I am writing to remind you of your continuing legal obligation not to disclose the Company's confidential information or otherwise unduly interfere with its business.

Under the law, you are obligated to keep confidential all trade secret and proprietary information of the Company, such as its business plans, customer information and pricing strategies. This obligation extends to information such as customer identities and pricing and to the Company's arrangements with suppliers, including those that were disclosed to you in the business integration process.

In addition to maintaining the confidentiality of its proprietary information, the Company expects that you will not engage in any conduct that may constitute unfair competition or compete with its business in violation of applicable law, including by improperly interfering with its relationships with employees, customers or vendors. You should also understand that, under certain circumstances, the former owners of ICS have an obligation to indemnify the Company for any losses the Company may suffer as a result of your competitive activities. The Company will, if necessary, invoke this right to indemnification.

In short, you should be aware that while the Company expects that you will fully honor your legal obligations, it will be closely monitoring the marketplace to ensure that you do so. Should we learn that any violation of your obligations has or may occur, we will take appropriate measures to protect our interests, which may include legal action.

Stephen Pursel
May 1, 2008
Page 2

Please contact me if you have any questions about the foregoing.

Very truly yours,

John Hanby
President

Cc:    Howard W. Brebeck
        John W. Combs
        James A. Bourgoin

Encl:   Employee Proprietary Information Agreement

60644466

08CV4388
JUDGE KENDALL
MAGISTRATE JUDGE MASON

# **<u>EXHIBIT E</u>**



**Katten**

KattenMuchinRosenman LLP

525 W. Monroe Street
Chicago, IL 60661-3693
312.902.5200 tel
312.902.1061 fax

BONITA L. STONE
bonita.stone@kattenlaw.com
312.902.5262 direct
312.577.8990 fax

July 17, 2008

<u>Via Federal Express</u>

Linda Williams
5 Star Supply LLC and
5 Star Management Group, LLC
66 Hidden Hill Rd.
New Hartford, CT 06057

**Re:    5 Star Supply LLC/5 Star Management Group, LLC**

Dear Ms. Williams:

I have been retained by your former employer, Consolidated Commercial Controls, Inc. (the "Company"), to represent its interests with respect to your efforts to unlawfully compete with the Company in the foodservice supply industry through 5 Star Supply LLC and 5 Star Management Group, LLC (collectively, "5 Star"). Such activity will not be tolerated by the Company, which finds your conduct particularly egregious considering that you were forewarned any attempt to exploit the Company's trade secret and confidential information or to interfere with the Company's employee, customer, or vendor relationships would be improper and may result in legal action.

In Mr. John Hanby's May 2, 2008 letter, you were reminded of your continuing obligations under the Employee Proprietary Information Agreement that you signed while employed by International Commercial Supply Corporation, LLC ("ICS") and which was assigned to the Company in connection with its acquisition of ICS. Rather than respond to the Company's letter with assurances that its confidential information was not at risk and you would not interfere with its employee, customer or supplier relationships, you proceeded to form a directly competitive business venture, 5 Star, and raid the Company's workforce.

As a threshold matter, in light of the wealth of confidential and trade secret information to which you were privy as an executive of the Company (and, previously, ICS), it is simply not possible for you to own and operate a directly competitive business without relying upon the Company's information. During your tenure with the Company, you were granted access to the Company's 2008 business plan, which included information regarding the customers and markets that it will be targeting. By virtue of your prior employment with ICS and your work in integrating ICS into the Company, you also obtained sensitive information concerning both companies' purchasing arrangements with key suppliers, including the products for which ICS and the Company were



receiving significant discounts or rebates. In addition, you had access to detailed information concerning both companies' key customers and their confidential pricing arrangements. This is information that you will necessarily use in securing business and supplier relationships for 5 Star, which will invariably damage the competitive position of the Company.

Moreover, your activities since leaving the Company reveal that you have no intention of honoring your contractual and legal obligations. The Company has recently learned that you misappropriated a wealth of its confidential information immediately upon resigning your employment. A forensic examination of your work computer has revealed that you attached two separate portable memory devices to that computer on March 31 – four days *after* your March 27 resignation – and transferred substantial amounts of data to those devices. On the day of your resignation, you also attached a portable memory device to your work computer and transferred a significant volume of data. Such conduct reveals a blatant disregard of the Company's rights, and constitutes a breach of your agreement with the Company, a breach of your fiduciary duties, and a violation of trade secret laws.

You have also chosen to intentionally interfere with the Company's employee relationships by soliciting several of its employees to leave the Company for employment at 5 Star, including Phil Caruso, Cliff Williams, Stephen Pursel, and Robert Mastrofrancesco. In apparent furtherance of your efforts to misappropriate the Company's confidential and trade secret information, two of these employees, Mr. Pursel and Mr. Mastrofrancesco, also downloaded large amounts of data from their work computers immediately prior to joining 5 Star in violation of their own legal obligations to the Company.

Accordingly, the Company demands that you immediately return any and all property and hard copy documents related to the business of the Company or ICS that may be in the possession, custody, or control of 5 Star or any of its employees or agents (including you, Mr. Pursel, and Mr. Mastrofrancesco). Given the surreptitious mass downloads of the Company's information, you must also contact me to arrange for the inspection, by a qualified computer forensic expert, of any and all portable memory devices that have, at any time, been connected to a computer of the Company or ICS and that are in the possession, custody, or control of 5 Star or any of its employees or agents, which must include the Toshiba, PNY, Crucial Gizmo!, and Samsung memory devices used by you, Mr. Pursel, and Mr. Mastrofrancesco to transfer data from the Company's computers. To the extent that any electronic documents of the Company or ICS have been transferred to any other computers or portable memory devices, we will also need to have those computers or portable memory devices examined by a forensic expert.

Unless I receive a response to this letter within five (5) business days, the Company will take your silence as an admission that you have used, and intend to continue to use, its confidential information and trade secrets on behalf of 5 Star. In which case, the Company will pursue its legal rights, and seek a preliminary injunction to stop the continued misappropriation of its



5 Star Supply LLC, 5 Star Management Group, LLC
July 17, 2008
Page 3

confidential and trade secret information and to bar 5 Star from engaging in any activities in the
foodservice supply industry.   The Company will not stand idly by and suffer the loss of its
competitive position through the disclosure and misuse of its confidential business information.

Very truly yours,

Bonita L. Stone

BLS:jlr



525 W. Monroe Street
Chicago, IL 60661-3693
312.902.5200 tel
312.902.1061  fax

BONITA L. STONE
bonita.stone@kattenlaw.com
312.902.5262 direct
312.577.8990 fax

July 17, 2008

<u>Via Federal Express</u>

Cliff Williams
66 Hidden Hill Rd.
New Hartford, CT 06057

Mr. Williams:

I have been retained by your former employer, Consolidated Commercial Controls, Inc. (the "Company"), which has recently learned that you left its employ to join a direct competitor, 5 Star Supply LLC and 5 Star Management Group, LLC (collectively, "5 Star"). In light of your competitive employment, I am writing to remind you of your continuing contractual and legal obligations not to disclose the Company's confidential information or otherwise interfere with its business.

As you will recall, while employed by International Commercial Supply Corporation, LLC ("ICS"), you entered into an Employee Proprietary Information Agreement (the "Confidentiality Agreement"), a copy of which is enclosed. This Confidentiality Agreement was assigned to the Company in connection with its acquisition of ICS. Pursuant to Paragraph 1 of the Confidentiality Agreement, you are obligated to keep confidential all trade secret and proprietary information of the Company, such as its business plans, customer information, and supplier information.

Pursuant to Paragraph 2 of the Confidentiality Agreement, you are further obligated to deliver to the Company any documents and property related to the business of the Company or ICS. The Company hereby demands, consistent with your contractual obligations, that you immediately return any and all such documents and property that may be in your possession, custody, or control. To the extent that you possess any documents in electronic form (such as documents or files maintained on a computer or portable memory device), please contact me immediately to arrange for the inspection and deletion of those materials through a qualified computer forensic expert.

Very truly yours,

Bonita L. Stone

Cliff Williams

# INTERNATIONAL COMMERCIAL SUPPLY CORPORATION, LLC

## EMPLOYEE PROPRIETARY INFORMATION AGREEMENT

In consideration and as a condition of my employment, or continuing employment, by International Commercial Supply Corporation, LLC and/or by companies which it owns, controls, or is affiliated with, or their successors in business ICS, and the compensation paid therefore:

1. **Confidentiality.** I agree to keep confidential, except as ICS may otherwise consent in writing, not to disclose, or make any use of except for the benefit of ICS, at any time either during or subsequent to my employment, any trade secrets, confidential information, knowledge, data, or other information of ICS relating to products, processes, know-how, designs, customer lists, business plans, marketing plans and strategies, and pricing strategies or any subject matter pertaining to any business of ICS or any of its clients, licensees or affiliates, which I may produce, obtain or otherwise acquire during the course of my employment, except as herein provided. I further agree not to deliver, reproduce or in any way allow any such trade secrets, confidential information, knowledge, data or other information, or any documentation relating thereto, to be delivered or used by any third parties without specific direction or consent of a duly authorized representative of ICS.

2. **Conflicting Employment; Return of Confidential Material.** I agree that during my employment with ICS I will not engage in any other employment, occupation, consulting or other activity relating to the business in which ICS is then engaged, or which would otherwise conflict with my obligations to ICS. In the event of my termination of employment with ICS for any reason whatsoever, I agree to promptly surrender and deliver to ICS all records, materials, equipment, drawings and data of any nature pertaining to any invention or confidential information of ICS or to my employment, and I will not take with me any description containing or pertaining to any confidential information, knowledge or data of ICS which I may produce or obtain during the course of my employment. In the event of the termination of my employment, I agree to sign and deliver the "Termination Certification" attached hereto.

3. **Maintenance of Records.** I agree to keep and maintain adequate and current written records in the performance of my job, which records shall be available to and remain the sole property of ICS at all times.

4. **Modification.** This agreement may not be changed, modified, released, discharged, abandoned, or otherwise amended, in whole or in part, except by an instrument in writing, signed by the employee and ICS. I agree that any subsequent change or changes in my duties, salary or compensation shall not effect the validity or scope of this Agreement.

5. **Entire Agreement.** I acknowledge receipt of this Agreement, and agree that with respect to the subject matter thereof it is my entire agreement with ICS, superseding any previous oral or written communications, representations, understandings, or agreements with the Company or any officer or representative thereof.

6. **Severability.** In the event that any paragraph or provision of this Agreement shall be held to be illegal or unenforceable, such paragraph or provision shall be severed from this Agreement and the entire agreement shall not fail on account thereof, but shall otherwise remain in full force and effect.

16

7. **Successors and Assigns.** This Agreement shall be binding upon my heirs, executors, administrators or other legal representatives and is for the benefit of ICS, its successors and assigns.

8. **Governing Law.** This Agreement shall be governed by the laws of the State of Connecticut.

9. **Counterparts.** This Agreement shall be signed in two counterparts, each of which shall be deemed an original and both of which shall together constitute one agreement.

Dated: _01|24|02_

Accepted and Agreed:

International Commercial Supply Corporation, LLC

By _____    _____
                                Employee

Title _Controller_              _____
                                Witness

16



KattenMuchinRosenman LLP

525 W. Monroe Street
Chicago, IL 60661-3693
312.902.5200 tel
312.902.1061 fax

BONITA L. STONE
bonita.stone@kattenlaw.com
312.902.5262 direct
312.577.8990 fax

July 17, 2008

<u>Via Federal Express</u>

Stephen Pursel
494 Spielman Hwy.
Burlington, CT 06013


Mr. Pursel:

I have been retained by your former employer, Consolidated Commercial Controls, Inc. (the "Company"), to represent its interests with respect to your efforts to unlawfully compete with the Company in the foodservice supply industry through your new employer, 5 Star Supply LLC and 5 Star Management Group, LLC (collectively, "5 Star"). Such activity will not be tolerated by the Company, which finds your conduct particularly egregious considering that you were forewarned any attempt to exploit the Company's trade secret and confidential information or to interfere with the Company's employee, customer, or vendor relationships would be improper and may result in legal action.

In Mr. John Hanby's May 1, 2008 letter, you were reminded of your continuing legal obligation to keep confidential all trade secret and proprietary information of the Company, such as its customer and supplier information. Rather than respond to the Company's letter with assurances that its confidential information was not at risk and you would not interfere with its employee, customer or supplier relationships, you proceeded to accept employment with a directly competitive business venture, 5 Star, which has then raided the Company's workforce.

As a threshold matter, in light of the wealth of confidential and trade secret information to which you were privy while employed by the Company (and, previously, International Commercial Supply Corporation ("ICS")), it is simply not possible for you to work in a similar capacity for a directly competitive business without relying upon the Company's information. By virtue of your prior employment with ICS and your work in integrating ICS into the Company, you obtained sensitive information concerning both companies' purchasing arrangements with key suppliers, including the products for which ICS and the Company were receiving significant discounts or rebates. In addition, you had access to detailed information concerning both companies' key customers and their confidential pricing arrangements. This is information that you will necessarily use in securing business and supplier relationships for your new employer, 5 Star, which will invariably damage the competitive position of the Company.

CHICAGO    CHARLOTTE    IRVING    LONDON    LOS ANGELES    NEW YORK    PALO ALTO    WASHINGTON, DC    WWW.KATTENLAW.COM

LONDON AFFILIATE:  KATTEN MUCHIN ROSENMAN CORNISH LLP
A limited liability partnership including professional corporations



5 Star Supply LLC, 5 Star Management Group, LLC
July 17, 2008
Page 2

Moreover, your activities prior to leaving the Company reveal that you have no intention of honoring your legal obligations. The Company has recently learned that you misappropriated a wealth of its confidential information immediately prior to resigning your employment. A forensic examination of your work computer has revealed that you attached two separate portable memory devices to that computer on April 15 and 21, 2008, and transferred substantial amounts of data to those devices. Such conduct reveals a blatant disregard of the Company's rights, and constitutes a breach of your fiduciary duties and a violation of trade secret laws.

Accordingly, the Company demands that you immediately return any and all property and hard copy documents related to the business of the Company or ICS that may be in your possession, custody, or control. Given your surreptitious mass download of the Company's information, you must also contact me to arrange for the inspection, by a qualified computer forensic expert, of any and all portable memory devices that have, at any time, been connected to a computer of the Company or ICS, which must include the PNY and flash drive memory devices used by you to transfer data from the Company's computer. To the extent that any electronic documents of the Company or ICS have been transferred to any other computers or portable memory devices, we will also need to have those computers or portable memory devices examined by a forensic expert.

Unless I receive a response to this letter within five (5) business days, the Company will take your silence as an admission that you have used, and intend to continue to use, its confidential information and trade secrets on behalf of your new employer. In which case, the Company will pursue its legal rights, and seek a preliminary injunction to stop the continued misappropriation of its confidential and trade secret information. The Company will not stand idly by and suffer the loss of its competitive position through the disclosure and misuse of its confidential business information.

Very truly yours,

Bonita L. Stone

BLS:jlr



Katten Muchin Rosenman LLP

525 W. Monroe Street
Chicago, IL 60661-3693
312.902.5200 tel
312.902.1061  fax

BONITA L. STONE
bonita.stone@kattenlaw.com
312.902.5262 direct
312.577.8990 fax

July 17, 2008

<u>Via Federal Express</u>

Phil Caruso
25 Cheryl Lane
Prospect, CT 06712

Mr. Caruso:

I have been retained by your former employer, Consolidated Commercial Controls, Inc. (the "Company"), which has recently learned that you left its employ to join a direct competitor, 5 Star Supply LLC and 5 Star Management Group, LLC (collectively, "5 Star").  In light of your competitive employment, I am writing to remind you of your continuing contractual and legal obligations not to disclose the Company's confidential information or otherwise interfere with its business.

As you will recall, while employed by International Commercial Supply Corporation, LLC ("ICS"), you entered into an Employee Proprietary Information Agreement (the "Confidentiality Agreement"), a copy of which is enclosed.  This Confidentiality Agreement was assigned to the Company in connection with its acquisition of ICS.   Pursuant to Paragraph 1 of the Confidentiality Agreement, you are obligated to keep confidential all trade secret and proprietary information of the Company, such as its business plans, customer information, and supplier information.

Pursuant to Paragraph 2 of the Confidentiality Agreement, you are further obligated to deliver to the Company any documents and property related to the business of the Company or ICS.  The Company hereby demands, consistent with your contractual obligations, that you immediately return any and all such documents and property that may be in your possession, custody, or control.  To the extent that you possess any documents in electronic form (such as documents or files maintained on a computer or portable memory device), please contact me immediately to arrange for the inspection and deletion of those materials through a qualified computer forensic expert.

Very truly yours,

Bonita L. Stone

Bonita L. Stone

Phil Caruso

## INTERNATIONAL COMMERCIAL SUPPLY CORPORATION, LLC

### EMPLOYEE PROPRIETARY INFORMATION AGREEMENT

In consideration and as a condition of my employment, or continuing employment, by International Commercial Supply Corporation, LLC and/or by companies which it owns, controls, or is affiliated with, or their successors in business ICS, and the compensation paid therefore:

1.  Confidentiality. I agree to keep confidential, except as ICS may otherwise consent in writing, not to disclose, or make any use of except for the benefit of ICS, at any time either during or subsequent to my employment, any trade secrets, confidential information, knowledge, data, or other information of ICS relating to products, processes, know-how, designs, customer lists, business plans, marketing plans and strategies, and pricing strategies or any subject matter pertaining to any business of ICS or any of its clients, licensees or affiliates, which I may produce, obtain or otherwise acquire during the course of my employment, except as herein provided. I further agree not to deliver, reproduce or in any way allow any such trade secrets, confidential information, knowledge, data or other information, or any documentation relating thereto, to be delivered or used by any third parties without specific direction or consent of a duly authorized representative of ICS.

2.  Conflicting Employment; Return of Confidential Material. I agree that during my employment with ICS I will not engage in any other employment, occupation, consulting or other activity relating to the business in which ICS is then engaged, or which would otherwise conflict with my obligations to ICS. In the event of my termination of employment with ICS for any reason whatsoever, I agree to promptly surrender and deliver to ICS all records, materials, equipment, drawings and data of any nature pertaining to any invention or confidential information of ICS or to my employment, and I will not take with me any description containing or pertaining to any confidential information, knowledge or data of ICS which I may produce or obtain during the course of my employment. In the event of the termination of my employment, I agree to sign and deliver the "Termination Certification" attached hereto.

3.  Maintenance of Records. I agree to keep and maintain adequate and current written records in the performance of my job, which records shall be available to and remain the sole property of ICS at all times.

4.  Modification. This agreement may not be changed, modified, released, discharged, abandoned, or otherwise amended, in whole or in part, except by an instrument in writing, signed by the employee and ICS. I agree that any subsequent change or changes in my duties, salary or compensation shall not effect the validity or scope of this Agreement.

5.  Entire Agreement. I acknowledge receipt of this Agreement, and agree that with respect to the subject matter thereof it is my entire agreement with ICS, superseding any previous oral or written communications, representations, understandings, or agreements with the Company or any officer or representative thereof.

6.  Severability. In the event that any paragraph or provision of this Agreement shall be held to be illegal or unenforceable, such paragraph or provision shall be severed from this Agreement and the entire agreement shall not fail on account thereof, but shall otherwise remain in full force and effect.

7.  Successors and Assigns. This Agreement shall be binding upon my heirs, executors, administrators or other legal representatives and is for the benefit of ICS, its successors and assigns.

8.  Governing Law. This Agreement shall be governed by the laws of the State of Connecticut.

9.  Counterparts. This Agreement shall be signed in two counterparts, each of which shall be deemed an original and both of which shall together constitute one agreement.

Dated:  _1 - 3 -02_

Accepted and Agreed:

International Commercial Supply Corporation, LLC

By _____    _____
                              Employee

Title _Controller_            _____
                              Witness

16



**Katten**

KattenMuchinRosenman LLP

525 W. Monroe Street
Chicago, IL 60661-3693
312.902.5200 tel
312.902.1061 fax

BONITA L. STONE
bonita.stone@kattenlaw.com
312.902.5262 direct
312.577.8990 fax

July 17, 2008

<u>Via Federal Express</u>

Robert Mastrofrancesco
1076 Hamilton Ave.
Watertown, CT 06795

Mr. Mastrofrancesco:

I have been retained by your former employer, Consolidated Commercial Controls, Inc. (the "Company"), to represent its interests with respect to your efforts to unlawfully compete with the Company in the foodservice supply industry through your new employer, 5 Star Supply LLC and 5 Star Management Group, LLC (collectively, "5 Star"). Such activity will not be tolerated by the Company.

As you will recall, while employed by International Commercial Supply Corporation ("ICS"), you entered into an Employee Proprietary Information Agreement (the "Confidentiality Agreement"), which was assigned to the Company in connection with its acquisition of ICS. A copy of the Confidentiality Agreement is enclosed herein. Pursuant to Paragraph 1 of the Confidentiality Agreement, you are obligated to keep confidential all trade secret and proprietary information of the Company, such as its customer and supplier information.

In light of the wealth of confidential and trade secret information to which you were privy while employed by the Company (and, previously, ICS), it is simply not possible for you to work in a similar capacity for a directly competitive business without relying upon the Company's information. By virtue of your prior employment with ICS and your work in integrating ICS into the Company, you obtained sensitive information concerning both companies' purchasing arrangements with key suppliers, including the products for which ICS and the Company were receiving significant discounts or rebates. In addition, you had access to detailed information concerning both companies' key customers and their confidential pricing arrangements. This is information that you will necessarily use in securing business and supplier relationships for your new employer, 5 Star, which will invariably damage the competitive position of the Company.

Moreover, your activities prior to leaving the Company reveal that you have no intention of honoring your contractual and legal obligations. The Company has recently learned that you misappropriated a wealth of its confidential information immediately prior to resigning your employment. A forensic examination of your work computer has revealed that you attached a

**Katten**

KattenMuchinRosenman LLP

5 Star Supply LLC, 5 Star Management Group, LLC
July 17, 2008
Page 2

portable memory device to that computer on June 15, 2008 and transferred substantial amounts of data to that device.  Such conduct reveals a blatant disregard of the Company's rights, and constitutes a breach of your agreement with the Company, a breach of your fiduciary duties, and a violation of trade secret laws.

Accordingly, the Company demands that you immediately return any and all property and hard copy documents related to the business of the Company or ICS that may be in your possession, custody, or control.  Given your surreptitious mass download of the Company's information, you must also contact me to arrange for the inspection, by a qualified computer forensic expert, of any and all portable memory devices that have, at any time, been connected to a computer of the Company or ICS, which must include the Samsung memory device used by you to transfer data from the Company's computer.  To the extent that any electronic documents of the Company or ICS have been transferred to any other computers or portable memory devices, we will also need to have those computers or portable memory devices examined by a forensic expert.

Unless I receive a response to this letter within five (5) business days, the Company will take your silence as an admission that you have used, and intend to continue to use, its confidential information and trade secrets on behalf of your new employer.  In which case, the Company will pursue its legal rights, and seek a preliminary injunction to stop the continued misappropriation of its confidential and trade secret information.  The Company will not stand idly by and suffer the loss of its competitive position through the disclosure and misuse of its confidential business information.

Very truly yours,

Bonita L. Stone

BLS:jlr

## INTERNATIONAL COMMERCIAL SUPPLY CORPORATION, LLC

### EMPLOYEE PROPRIETARY INFORMATION AGREEMENT

In consideration and as a condition of my employment, or continuing employment, by International Commercial Supply Corporation, LLC and/or by companies which it owns, controls, or is affiliated with, or their successors in business ICS, and the compensation paid therefore:

1. Confidentiality. I agree to keep confidential, except as ICS may otherwise consent in writing, not to disclose, or make any use of except for the benefit of ICS, at any time either during or subsequent to my employment, any trade secrets, confidential information, knowledge, data, or other information of ICS relating to products, processes, know-how, designs, customer lists, business plans, marketing plans and strategies, and pricing strategies or any subject matter pertaining to any business of ICS or any of its clients, licensees or affiliates, which I may produce, obtain or otherwise acquire during the course of my employment, except as herein provided. I further agree not to deliver, reproduce or in any way allow any such trade secrets, confidential information, knowledge, data or other information, or any documentation relating thereto, to be delivered or used by any third parties without specific direction or consent of a duly authorized representative of ICS.

2. Conflicting Employment; Return of Confidential Material. I agree that during my employment with ICS I will not engage in any other employment, occupation, consulting or other activity relating to the business in which ICS is then engaged, or which would otherwise conflict with my obligations to ICS. In the event of my termination of employment with ICS for any reason whatsoever, I agree to promptly surrender and deliver to ICS all records, materials, equipment, drawings and data of any nature pertaining to any invention or confidential information of ICS or to my employment, and I will not take with me any description containing or pertaining to any confidential information, knowledge or data of ICS which I may produce or obtain during the course of my employment. In the event of the termination of my employment, I agree to sign and deliver the "Termination Certification" attached hereto.

3. Maintenance of Records. I agree to keep and maintain adequate and current written records in the performance of my job, which records shall be available to and remain the sole property of ICS at all times.

4. Modification. This agreement may not be changed, modified, released, discharged, abandoned, or otherwise amended, in whole or in part, except by an instrument in writing, signed by the employee and ICS. I agree that any subsequent change or changes in my duties, salary or compensation shall not effect the validity or scope of this Agreement.

5. Entire Agreement. I acknowledge receipt of this Agreement, and agree that with respect to the subject matter thereof it is my entire agreement with ICS, superseding any previous oral or written communications, representations, understandings, or agreements with the Company or any officer or representative thereof.

6. Severability. In the event that any paragraph or provision of this Agreement shall be held to be illegal or unenforceable, such paragraph or provision shall be severed from this Agreement and the entire agreement shall not fail on account thereof, but shall otherwise remain in full force and effect.

15

7. Successors and Assigns. This Agreement shall be binding upon my heirs, executors, administrators or other legal representatives and is for the benefit of ICS, its successors and assigns.

8. Governing Law. This Agreement shall be governed by the laws of the State of Connecticut.

9. Counterparts. This Agreement shall be signed in two counterparts, each of which shall be deemed an original and both of which shall together constitute one agreement.

Dated: _1-3-02_

Accepted and Agreed:

International Commercial Supply Corporation, LLC

By _____    Employee _____

Title _Controller_    Witness _Jamie Brignoto_

16

08CV4388
JUDGE KENDALL
MAGISTRATE JUDGE MASON

# **EXHIBIT F**

# ■ Brenner, Saltzman & Wallman LLP

ATTORNEYS AT LAW

NEWTON D. BRENNER (1934-2006)
STEPHEN L. SALTZMAN, P.C.
MARC A. WALLMAN, P.C.
DAVID R. SCHAEFER, P.C.
DONALD W. ANDERSON, P.C.
SAMUEL M. HURWITZ, P.C.
WAYNE A. MARTINO, P.C.
MITCHELL S. JAFFE, P.C.
ALICE J. MICK, P.C.
KENNETH ROSENTHAL
CAROLYN W. KONE
BRIAN P. DANIELS
GEORGE BRENCHER IV, P.C.
JENNIFER DOWD DEAKIN, P.C.
ROWENA A. MOFFETT
JAMES E. ROSENBLUTH

SUZANNE H. ALDERMAN
SEAN M. FISHER
RONALD A. SOCCOLI, JR.

OF COUNSEL:
SHARON KOWAL FREILICH
HOLLY WINGER

Rowena A. Moffett
Email:  rmoffett@bswlaw.com

July 24, 2008

VIA EMAIL and OVERNIGHT MAIL
Bonita L. Stone, Esq.
KattenMuchinRosenman LLP
525 W. Monroe Street
Chicago, IL 60661-3693

Re:    *5 Star Supply LLC/Consolidated Commercial Controls, Inc.*

Dear Attorney Stone:

      This office represents 5 Star Supply LLC, 5 Star Management Group, LLC, Linda Williams, Stephen Pursel, Clifford Williams, Philip Caruso and Robert Mastrofrancesco (the "5 Star Parties") in connection with the claims raised by Consolidated Commercial Controls, Inc. ("CCC") in your letters to my clients dated July 17, 2008.  The 5 Star Parties vehemently deny CCC's allegations of wrongful conduct, more particularly but without limitation, the allegation that the 5 Star Parties are utilizing confidential and trade secret information of CCC in connection with the business of 5 Star Supply LLC.

      Enclosed please find a copy of a Complaint against CCC, Civil Cover Sheet and my Appearance, which were filed today in the United States District Court for the District of Connecticut seeking, <u>inter</u> <u>alia</u>, a declaratory judgment to resolve the parties' disputes in connection with this matter.  Also enclosed is a Notice of a Lawsuit and Request to Waive Service of a Summons.  Please advise whether CCC agrees to waive service of a Summons and Complaint in accordance with the enclosed Waiver.  I have enclosed two (2) copies of the Waiver, together with a self-addressed stamped envelope, for your convenience in returning the executed Waiver.

Bonita L. Stone, Esq.
July 24, 2008
Page 2


If you wish to discuss this matter further, feel free to contact me.

Sincerely,

Rowena A. Moffett


RAM/jr
Enclosures

ab4585.doc

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2008 JUL 24  P 3: 3:

U.S. DISTRICT COURT
NEW HAVEN, CT

| | |
|---|---|
| 5 STAR SUPPLY LLC,<br>LINDA A. WILLIAMS, CLIFFORD G. WILLIAMS, II,<br>STEPHEN J. PURSEL, PHILIP J. CARUSO<br>and ROBERT G. MASTROFRANCESCO,<br>Plaintiffs,<br><br>v.<br><br>CONSOLIDATED COMMERCIAL<br>CONTROLS, INC.,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

CIVIL ACTION NO.

JULY 24, 2008

## COMPLAINT

Plaintiffs 5 Star Supply LLC, Linda A. Williams, Clifford G. Williams, II, Stephen J. Pursel, Philip J. Caruso, and Robert G. Mastrofrancesco bring this Complaint against Defendant Consolidated Commercial Controls, Inc.  This is an action seeking a declaratory judgment and other relief arising from the Defendant's efforts to bar the Plaintiffs from engaging in business competitive with the Defendant, notwithstanding the absence of any contractual or other limitations on Plaintiffs' ability to do so.

**The Parties**

1.      Plaintiff 5 Star Supply LLC is a limited liability company organized under the laws of the State of Connecticut having its principal place of business in the State of Connecticut.

2.      Plaintiff Linda Williams is an individual who resides in and is a citizen of the State of Connecticut.

3.    Plaintiff Clifford Williams is an individual who resides in and is a citizen of the State of Connecticut.

4.    Plaintiff Stephen Pursel is an individual who resides in and is a citizen of the State of Connecticut.

5.    Plaintiff Philip Caruso is an individual who resides in and is a citizen of the State of Connecticut.

6.    Plaintiff Robert Mastrofrancesco is an individual who resides in and is a citizen of the State of Connecticut.

7.    Defendant Consolidated Commercial Controls, Inc. is a corporation organized under the laws of the State of Delaware having its principal place of business in the State of Illinois.

## Jurisdiction and Venue

8.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 since the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

9.    Venue in this District is proper pursuant to 28 U.S.C. §1391

10.    This is an action seeking, _inter alia_, a declaratory judgment pursuant to 28 U.S.C. § 2201, for the purpose of determining a question of actual controversy between the parties, as hereinafter more fully appears.

## Background

11.    Defendant is a distributor of foodservice replacement parts and supplies.

12.    Plaintiff Linda Williams had been employed by Defendant and its predecessor in interest, International Commercial Supply Corporation ("ICS") for nine (9) years as CFO/COO prior to April 10, 2008.

13.    As CFO/COO of ICS, Linda Williams was responsible for overseeing all operational and financial functions of ICS. After the acquisition of ICS by Defendant, Linda Williams' title changed to COO only, she reported to the President at Defendant's headquarters in Chicago, and her responsibilities were limited to the operational functions of Defendant's Connecticut and Nevada facilities. Following the acquisition, Linda Williams was required to travel extensively to Defendant's headquarters in Chicago in order to carry out her job responsibilities.

14.    Plaintiff Clifford Williams had been employed by Defendant and its predecessor in interest, ICS, for twenty-two (22) years as Receiving/Inventory Control Manager prior to June 24, 2008.

15.    As Receiving/Inventory Control Manager for ICS, Clifford Williams was responsible for overseeing receipts of inventory and inventory control. After Defendant's acquisition of ICS, Clifford Williams was demoted to a supervisory role within the warehouse, reporting to the warehouse manager.

16.    Plaintiff Stephen Pursel had been employed by Defendant and its predecessor in interest, ICS, for sixteen (16) years as Executive of Product Development prior to April 23, 2008.

17.    As Executive of Product Development of ICS, Stephen Pursel was responsible for creating and maintaining the annual catalog. After Defendant's

acquisition of ICS, Stephen Pursel reported to Defendant's General Manager located in Chicago and he no longer had final decision making authority.

18.    Plaintiff Philip Caruso had been employed by Defendant and its predecessor in interest, ICS for twenty-five (25) years as Warehouse Manager prior to June 24, 2008.

19.    As Warehouse Manager for ICS, Philip Caruso was responsible for overseeing all warehouse functions. After Defendant's acquisition of ICS, Philip Caruso's title remained unchanged, but he lacked the hiring authority that he previously enjoyed at ICS. Following the acquisition, Philip Caruso also was informed that he would have to travel to Chicago regularly as part of his job duties.

20.    Plaintiff Robert Mastrofrancesco had been employed by Defendant and its predecessor in interest, ICS for twenty-seven (27) years as Export Sales and Customer Service Manager prior to June 24, 2008.

21.    As Export Sales and Customer Service Manager for ICS,  Robert Mastrofrancesco was responsible for overseeing all sales and customer service reps for domestic and international sales. After Defendant's acquisition of ICS, Robert Mastrofrancesco was demoted to Customer Service Manager, reporting to a Manager in Chicago, and he was no longer responsible for export sales.

22.    Defendant purchased substantially all of the assets of ICS (previously a competitor of Defendant) in or about October 31, 2007, and thereafter became the employer of the individual Plaintiffs.

23.    Due to dissatisfaction with the operation of the Defendant company after it acquired ICS, each of the individual Plaintiffs determined to resign their employment

with Defendant. Linda Williams resigned her employment with Defendant, effective April 10, 2008. Stephen Pursel resigned his employment with Defendant, effective April 23, 2008. Clifford Williams, Philip Caruso and Robert Mastrofrancesco resigned their employment with Defendant, effective June 24, 2008.

24.    At no time were any of the individual Plaintiffs parties to an employment agreement with either ICS or Defendant.

25.    After resigning from Defendant's employ, the individual Plaintiffs became employed by Plaintiff 5 Star Supply LLC, which also is a distributor of foodservice replacement parts and supplies.

26.    On or about July 18, 2008, the individual Plaintiffs each received separate correspondence from legal counsel for Defendant making various demands of Plaintiffs in connection with their new employment. In the demand letter sent to Linda Williams, 5 Star Supply LLC and an affiliated entity 5 Star Management Group, LLC, Defendant's counsel asserted that Linda Williams was unlawfully competing with the Defendant, that Linda Williams had misappropriated confidential information of the Defendants, and that "it is simply not possible for [Ms. Williams] to own and operate a directly competitive business without relying upon the [Defendant's] information". Defendant's counsel also demanded that Linda Williams permit Defendant to inspect the Plaintiffs' computers and other electronic media. The letter further indicated that, unless Linda Williams responded to Defendant's demands within five (5) business days, Defendant would "pursue its legal rights, and seek a preliminary injunction to stop the continued misappropriation of its confidential and trade secret information and to bar 5 Star from engaging in any activities in the foodservice supply industry". The letters to Stephen

Pursel and Robert Mastrofrancesco contained essentially identical claims of the inevitable disclosure of confidential information, demands of access to Plaintiffs' computer devices and threats of impending litigation seeking preliminary injunctive relief. The letters to Clifford Williams and Philip Caruso demanded that they the return any documents and property related to the business of Defendant or ICS and that they immediately permit the inspection and deletion of any such information that may reside upon their computers or other electronic media.

27.    Plaintiffs are not utilizing Defendant's confidential or trade secret information in connection with their current business activities, indeed they have no need to do so, and they do not intend to do so at any time in the future.

28.    The individual Plaintiffs intend to continue their employment with 5 Star Supply LLC and do not believe that such employment violates or will violate any contractual obligation to Defendant or any applicable provision of law with respect to confidential information or trade secrets, and that any contractual obligation which could be interpreted to bar such employment with 5 Star Supply LLC is invalid and unenforceable under Connecticut law.

## COUNT I – DECLARATORY JUDGMENT

29.    Plaintiffs repeat and allege Paragraphs 1 through 28 hereof as if fully set forth herein.

30.    There is an actual controversy between the parties as to whether Plaintiffs can continue to engage in business competitive with the Defendant.

## COUNT II – CLAIM PURSUANT TO CONNECTICUT GENERAL STATUTES § 31-72

31.    Plaintiffs repeat and allege Paragraphs 1 though 28 as if fully set forth herein.

32.    Although Defendant paid Linda Williams, Stephen Pursel and others for their unused vacation days following the termination of their respective employment with Defendant, Defendant failed to pay Philip Caruso for his unused vacation days following the termination of his employment with Defendant.

33.    Additionally, Defendant failed to pay Clifford Williams and Robert Mastrofrancesco the wages due them for the last two days of their employment.

34.    Defendant's failure to pay Philip Caruso, Clifford Williams and Robert Mastrofrancesco the vacation pay and wages due them was in bad faith, arbitrariness and unreasonableness.

35.    As a result thereof, under Connecticut General Statutes § 31-72, Plaintiffs Philip Caruso, Clifford Williams and Robert Mastrofrancesco are entitled to recover twice the amount of such wages/vacation pay not paid to said Plaintiffs in violation of Connecticut General Statutes §§ 31-71c and 31-76k, costs and reasonable attorneys' fees.

WHEREFORE, Plaintiffs 5 Star Supply LLC, Linda Williams, Clifford Williams, Stephen Pursel, Philip Caruso, and Robert Mastrofrancesco pray for relief as follows:

1.    With respect to Count I, that this Court render a declaratory judgment that the individual Plaintiffs' employment with 5 Star Supply LLC does not violate any contractual or legal obligations of the individual Plaintiffs to Defendant or any alleged doctrine of inevitable disclosure of confidential information or trade secrets.

2.    With respect to Count I, that this Court render a declaratory judgment that any contractual provision which could be interpreted to bar the individual Plaintiffs' employment with 5 Star Supply LLC is invalid and unenforceable under Connecticut law.

3.    With respect to Count II, actual damages plus interest, costs and reasonable attorney's fees as provided pursuant to Connecticut General Statutes § 31-72.

PLAINTIFFS 5 STAR SUPPLY LLC, LINDA A. WILLIAMS, CLIFFORD G. WILLIAMS, II STEPHEN J. PURSEL, PHILIP J. CARUSO, and ROBERT G. MASTROFRANCESCO,

By_____
Rowena A. Moffett, Esq. (ct 19811)
BRENNER SALTZMAN & WALLMAN, LLP
Their Attorney
271 Whitney Avenue
New Haven, CT 06511
Telephone: 203-772-2600
Fax: 203-562-2098
Email: rmoffett@bswlaw.com

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| | |
|---|---|
| **I. (a) PLAINTIFFS**<br>5 Star Supply LLC, Linda Williams, Clifford Williams, Stephen Pursel, Philip Caruso and Robert Mastrofrancesco | **DEFENDANTS**<br>CONSOLIDATED COMMERCIAL CONTROLS, INC.<br>~~2008 JUL 24 P 3:3~~ |
| **(b)** County of Residence of First Listed Plaintiff   Litchfield County<br>(EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant   Cook County<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. NEW HAVEN, CT |
| **(c)** Attorney's (Firm Name, Address, and Telephone Number)<br>Rowena A. Moffett, Brenner, Saltzman & Wallman, 271 Whitney Avenue, New Haven, CT 06511 (203-772-2600) | Attorneys (If Known)<br>Bonita L. Stone, Katten Muchin Rosenmann LLP, 525 W. Monroe Street, Chicago, IL 66661-3693 |

FILED

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury - Med. Malpractice<br>☐ 365 Personal Injury - Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations |
| | | | | **PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark | ☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410 |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 444 Welfare<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 440 Other Civil Rights | **PRISONER PETITIONS**<br>☐ 510 Motions to Vacate Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt.Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes |
| | | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 463 Habeas Corpus - Alien Detainee<br>☐ 465 Other Immigration Actions | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. §§ 1332 and 2201

Brief description of cause: Declaratory Judgment that Plaintiffs are not barred from engaging in competitive business

**VII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ Actual damages and attorney's fees

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions):

JUDGE _____   DOCKET NUMBER _____

DATE   7/24/08

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

FILED

2008 JUL 24  P 3: 33

## APPEARANCE

U.S. DISTRICT COURT
NEW HAVEN, CT

5 STAR SUPPLY LLC,
LINDA A. WILLIAMS, CLIFFORD G. WILLIAMS, II,
STEPHEN J. PURSEL, PHILIP J. CARUSO
and ROBERT G. MASTROFRANCESCO,
                                 Plaintiffs,

:
:
:
:
:
:
:

CIVIL ACTION NO.

     v.

CONSOLIDATED COMMERCIAL
CONTROLS, INC.,

                        Defendant.

:
:
:
:
:
:
:

To the Clerk of this court and all parties of record:

     Enter my appearance as counsel in this case for:

     Plaintiffs 5 Star Supply LLC, Linda A. Williams, Clifford G. Williams, II, Stephen J. Pursel, Philip J. Caruso, and Robert G. Mastrofrancesco

| | |
|---|---|
| July 24, 2008<br>Date | Signature |
| CT19811<br>Connecticut Federal Bar Number | Rowena A. Moffett<br>Print Clearly or Type Name |
| (203) 772-2600<br>Telephone Number | 271 Whitney Avenue<br>Address |
| (203) 772-4008<br>Fax Number | New Haven, CT 06511 |
| rmoffett@bswlaw.com<br>Email Address | |

AB4463.DOC

AO 398 (03/08) Notice of a Lawsuit and Request to Waive Service of a Summons

# UNITED STATES DISTRICT COURT

for the

District of Connecticut

| | | |
|---|---|---|
| 5 Star Supply LLC, et al. | ) | |
| Plaintiff | ) | |
| v. | ) | Civil Action No. |
| Consolidated Commercial Controls, Inc. | ) | |
| Defendant | ) | |

## Notice of a Lawsuit and Request to Waive Service of a Summons

To: Consolidated Commercial Controls, Inc. c/o Bonita Stone, KattenMuchinRosenman LLP

*(Name of the defendant or - if the defendant is a corporation, partnership, or association - an officer or agent authorized to receive service)*

**Why are you getting this?**

A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above. A copy of the complaint is attached.

This is not a summons, or an official notice from the court. It is a request that, to avoid expenses, you waive formal service of a summons by signing and returning the enclosed waiver. To avoid these expenses, you must return the signed waiver within  30  days (*give at least 30 days or at least 60 days if the defendant is outside any judicial district of the United States*) from the date shown below, which is the date this notice was sent.   Two copies of the waiver form are enclosed, along with a stamped, self-addressed envelope or other prepaid means for returning one copy. You may keep the other copy.

**What happens next?**

If you return the signed waiver, I will file it with the court. The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 60 days from the date this notice is sent (see the date below) to answer the complaint (or 90 days if this notice is sent to you outside any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will arrange to have the summons and complaint served on you. And I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

Please read the enclosed statement about the duty to avoid unnecessary expenses.

I certify that this request is being sent to you on the date below.

Date    07/24/2008

Signature of the attorney or unrepresented party

Rowena A. Moffett

Printed name

Brenner, Saltzman & Wallman LLP
271 Whitney Avenue
New Haven, CT  06511

Address

rmoffett@bswlaw.com

E-mail address

203-772-2600

Telephone number

AO 399 (03/08) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT
### for the
District of Connecticut

| | |
|---|---|
| 5 Star Supply LLC, et al. | ) |
| Plaintiff | ) |
| v. | ) |
| Consolidated Commercial Controls, Inc. | ) |
| Defendant | ) |

Civil Action No.

### Waiver of the Service of Summons

To: Rowena A. Moffett, Esq.

*(Name of the plaintiff's attorney or unrepresented plaintiff)*

I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from _____07/24/2008_____, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date _____

_____
Signature of the attorney or unrepresented party

_____
Printed name

_____
Address

_____
E-mail address

_____
Telephone number

### Duty to Avoid Unnecessary Expenses of Serving a Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

AO 399 (03/08) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT
### for the
### District of Connecticut

| | |
|---|---|
| 5 Star Supply LLC, et al. | ) |
| Plaintiff | ) |
| v. | )    Civil Action No. |
| Consolidated Commercial Controls, Inc. | ) |
| Defendant | ) |

## Waiver of the Service of Summons

To:  Rowena A. Moffett, Esq.
      *(Name of the plaintiff's attorney or unrepresented plaintiff)*

I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from _____07/24/2008_____, the date when this request was sent (or 90 days if it was sent outside the United States).  If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date _____

             _____
                   *Signature of the attorney or unrepresented party*

             _____
                           *Printed name*

             _____
                           *Address*

             _____
                        *E-mail address*

             _____
                        *Telephone number*

### Duty to Avoid Unnecessary Expenses of Serving a Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint.  A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court.  By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.