**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CONSOLIDATED COMMERCIAL CONTROLS, INC. | ) | |
| | ) | CASE NO. 1:08-cv-04388 |
| Plaintiff, | ) | Honorable Virginia M. Kendall |
| | ) | |
| v. | ) | |
| | ) | |
| 5 STAR SUPPLY LLC, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR
ALTERNATIVELY, TRANSFER ACTION DUE TO IMPROPER VENUE**

Defendants 5 Star Supply LLC, 5 Star Management Group, LLC, Linda A. Williams,

Clifford G. Williams II, Stephen J. Pursel, Philip J. Caruso, and Robert G. Mastrofrancesco

("Defendants") submit the instant memorandum of law in support of their motion, filed

concurrently herewith, seeking to dismiss or alternatively, transfer the above-captioned action

due to improper venue pursuant to Fed. R. Civ. P. 12(b)(3).

**I.    FACTUAL BACKGROUND**

A    The Parties

Plaintiff, a distributor of foodservice industry equipment, parts and supplies, is a

corporation organized under the laws of the State of Delaware having its principal place of

business in Chicago, Illinois.  Pl.'s Comp. ¶ 3.  On or about October 31, 2007, Plaintiff acquired

substantially all of the assets of an industry competitor, International Commercial Supply

Corporation, LLC ("ICS"), which entity was based in Winsted, Connecticut and employed

Defendants at the time.  Id. ¶ 1, 18.

Defendant Linda Williams resides in and is a citizen of the State of Connecticut.

Declaration of Linda Williams ("L. Williams Dec.") ¶ 3.  At the time of Plaintiff's acquisition of

ICS, Ms. Williams had been employed by ICS for approximately nine (9) years as CFO/COO. Id. ¶ 4.  As CFO/COO of ICS, Ms. Williams was responsible for overseeing all operational and financial functions of ICS.  Id.  After the acquisition of ICS by Plaintiff, Ms. Williams' title was changed to COO only (she was stripped of her chief financial officer responsibilities), she reported to Plaintiff's President at its headquarters in Chicago, and Ms. Williams' responsibilities were limited to the operational functions of Plaintiff's facilities.  Ms. Williams was advised that, following the acquisition, she would be required to travel extensively to Plaintiff's headquarters in Chicago in order to carry out her job responsibilities; something which for personal and health-related reasons, she was unwilling to do.  Id. ¶ 4.

Defendant Clifford Williams resides in and is a citizen of the State of Connecticut. Declaration of Clifford Williams ("C. Williams Dec.") ¶ 2.  At the time of Plaintiff's acquisition of ICS, Mr. Williams had been employed by ICS for approximately twenty-two (22) years as Receiving/Inventory Control Manager.  C. Williams Dec. ¶ 2.  As Receiving/Inventory Control Manager for ICS, Mr. Williams was responsible for overseeing receipts of inventory and inventory control.   After Plaintiff's acquisition of ICS, Mr. Williams was demoted to a supervisory role within the warehouse, reporting to the warehouse manager.  Id. ¶ 2.

Defendant Stephen Pursel resides in and is a citizen of the State of Connecticut. Declaration of Stephen Pursel ("Pursel Dec.") ¶ 2.  At the time of Plaintiff's acquisition of ICS, Mr. Pursel had been employed by ICS for approximately sixteen (16) years as Executive of Product Development.[1]  Pursel Dec. ¶ 2.  As Executive of Product Development of ICS, Stephen Pursel was responsible for creating and maintaining the annual catalog.  Id.  After Defendant's acquisition of ICS, Mr. Pursel reported to Defendant's General Manager located in Chicago and he no longer had final decision making authority.  Id. ¶ 2.

---

[1] Prior to his employment with ICS, Mr. Pursel worked for 2 other companies in the industry for a total of 17 additional years. Pursel Dec. ¶ 3.

Defendant Philip Caruso is an individual who resides in and is a citizen of the State of Connecticut. Declaration of Philip Caruso ("Caruso Dec.") ¶ 2. At the time of Plaintiff's acquisition of ICS, Mr. Caruso had been employed by ICS for approximately twenty-five (25) years as Warehouse Manager. Caruso Dec. ¶ 2. As Warehouse Manager for ICS, Mr. Caruso was responsible for overseeing all warehouse functions. Id. After Plaintiff's acquisition of ICS, Mr. Caruso's title remained unchanged, but he lacked the hiring authority that he previously enjoyed at ICS. Following the acquisition, Mr. Caruso also was informed that he would have to travel to Chicago regularly as part of his job duties, which he was unwilling to do because he is the primary caregiver for his child. Id. ¶ 2.

Defendant Robert Mastrofrancesco resides in and is a citizen of the State of Connecticut. Declaration of Robert Mastrofrancesco ("Mastrofrancesco Dec.") ¶ 2. At the time of Plaintiff's acquisition of ICS, Mr. Mastrofrancesco had been employed by ICS for approximately twenty-seven (27) years as Export Sales and Customer Service Manager. Mastrofrancesco Dec. ¶ 3. As Export Sales and Customer Service Manager for ICS, Mr. Mastrofrancesco was responsible for overseeing all sales and customer service reps for domestic and international sales. Id. After Plaintiff's acquisition of ICS, Mr. Mastrofrancesco was demoted to Customer Service Manager, reporting to a Manager in Chicago, and he was no longer responsible for export sales. Id. ¶ 3.

Defendant 5 Star Supply LLC is a limited liability company organized under the laws of the State of Connecticut having its principal place of business in the State of Connecticut. 5 Star Supply LLC is a distributor of foodservice replacement parts and supplies. Defendant 5 Star Management Group, LLC also is a limited liability company organized under the laws of the State of Connecticut having its principal place of business in the State of Connecticut, and is a member of 5 Star Supply LLC. 5 Star Management Group, LLC has no business operations

other than its ownership interest in 5 Star Supply LLC.  L. Williams Dec. ¶ 5.  Neither 5 Star

Supply LLC nor 5 Star Management Group, LLC has any members located in Illinois.  Id.

       B.       <u>The Termination of Defendants' Employment with Plaintiff</u>

Due to dissatisfaction with Plaintiff's operation of the former ICS and their desire not to

work for a Chicago-based entity, each of the individual Defendants determined to resign their

employment with Plaintiff.  L. Williams Dec. ¶ 6; C. Williams Dec. ¶ 3; Pursel Dec. ¶ 4; Caruso

Dec. ¶ 3; Mastrofrancesco Dec. ¶ 4.  Linda Williams resigned her employment with Plaintiff

effective April 10, 2008.  L. Williams Dec. ¶ 6.  Stephen Pursel resigned his employment with

Plaintiff effective April 23, 2008.  Pursel Dec. ¶ 4.  Clifford Williams, Philip Caruso and Robert

Mastrofrancesco resigned their employment with Plaintiff effective June 24, 2008.  C. Williams

Dec. ¶ 3; Caruso Dec. ¶ 3; Mastrofrancesco Dec. ¶ 4.

At no time were any of the individual Defendants parties to an employment contract with

either ICS or Plaintiff.  L. Williams Dec. ¶ 7; C. Williams Dec. ¶ 4; Pursel Dec. ¶ 5; Caruso Dec.

¶ 4; Mastrofrancesco Dec. ¶ 5.   None of the individual Defendants were subject to any post-

employment restrictions regarding competition or solicitation of employees or customers of ICS

or Plaintiff.  <u>Id.</u>  Having no such limitations, after resigning from Plaintiff's employ, the

individual Defendants became employed by Defendant 5 Star Supply LLC.  <u>Id.</u>  Importantly,

Defendants did not misappropriate any confidential or trade secret information of Plaintiff in

anticipation of their employment with a competitor of Plaintiff,[2] and Defendants have not and

---

[2] Defendants vigorously deny Plaintiff's claims of theft of computer files.  Up until their departure, Ms. Williams and Mr. Pursel routinely worked from home in the fulfillment of their duties for Plaintiff and had occasion to transport information on portable memory devices in furtherance of same.  L. Williams Dec. ¶ 9; Pursel Dec. ¶ 8. Ms. Williams did copy a number of personal files from her work computer upon her resignation, but with the express knowledge and permission of Plaintiff's IT manager, Paul Cohen.  L. Williams Dec. ¶ 9.  For his part, Mr. Mastrofrancesco flatly denies that he transferred any information to a portable memory device while in Plaintiff's employ.  Mastrofrancesco Dec. ¶ 7.  In fact, prior to learning of the accusations against him in this case, Mr. Mastrofrancesco did not even know what a portable memory device looked like.  <u>Id.</u> ¶ 7.  Defendants note that Plaintiff's IT personnel accessed Defendants' computers with great regularity prior to Defendants' resignation, and, in fact, said personnel implemented a significant computer conversion the very weekend (Father's Day, which day

will not utilize any confidential or trade secret information of Plaintiff in connection with the Defendants' new business venture. L. Williams Dec. ¶ 8; C. Williams Dec. ¶ 5, Pursel Dec. ¶ 6; Caruso Dec. ¶ 5; Mastrofrancesco Dec. ¶ 6.[3]

    C.    <u>Plaintiff's Failure to Pay Wages owed Defendants</u>

Although Plaintiff paid Linda Williams and Stephen Pursel for their unused vacation days following the termination of their respective employment with Plaintiff, Plaintiff failed to pay Philip Caruso for his unused vacation days following the termination of his employment with Plaintiff. L. Williams Dec. ¶ 12; Pursel Dec. ¶ 7; Caruso Dec. ¶ 6. Additionally, Plaintiff failed to pay Clifford Williams and Robert Mastrofrancesco the wages due them for the last two days of their employment. C. Williams Dec. ¶ 6 and Ex. A thereto; Mastrofrancesco Dec. ¶ 9 and Ex. B thereto. Defendants believe that Plaintiff's refusal to pay said wages was retaliatory, and was in bad faith, arbitrariness and unreasonableness. Connecticut Action Complaint, attached hereto as **Exhibit A**, ¶ 34.

    D.    <u>Defendants' Limited Contacts with Illinois</u>

As indicated above, all of the individual Defendants are residents of Connecticut, and the company Defendants both are Connecticut entities based in Connecticut. None of the Defendants owns any property or maintains any bank accounts in Illinois. L. Williams Dec. ¶ 13; C. Williams Dec. ¶ 7; Pursel Dec. ¶ 10; Caruso Dec. ¶ 7; Mastrofrancesco Dec. ¶ 10. The individual Defendants' former employer, ICS, was a Connecticut limited liability company, based in Connecticut, with no operations in Illinois. L. Williams Dec. ¶ 14. Other than in the

---

Mr. Mastrofrancesco spent with his family, away from the office) that Plaintiff alleges that Defendant Mastrofrancesco downloaded computer information. Mastrofrancesco Dec. ¶ 8 and Exhibit A thereto; L. Williams Dec. ¶ 10; Pursel Dec. ¶ 9. As part of that conversion, Plaintiff transferred ICS's computer information (housed in Connecticut until that point) to Plaintiff's server located in Illinois and installed/uninstalled a variety of computer programs on Defendants' work computers. Mastrofrancesco Dec., Ex. A.

[3] In this regard, Defendants have developed their own customer list, supplier contacts, catalog and pricing through the use of publicly available information, and without utilizing any confidential or trade secret information of Plaintiff. L. Williams Dec. ¶ 11.

course of their employment, none of the individual Defendants has ever been to the state of Illinois or transacted any business there.  L. Williams Dec. ¶ 15; C. Williams Dec. ¶ 8; Pursel Dec. ¶ 11; Caruso Dec. ¶ 8; Mastrofrancesco Dec. ¶ 11.

After Plaintiff's acquisition of ICS, Defendants were required to attend a management meeting at Plaintiff's home office in Chicago, Illinois in November 2007.  L. Williams Dec. ¶ 16; C. Williams Dec. ¶ 9; Pursel Dec. ¶ 12; Caruso Dec. ¶ 9; Mastrofrancesco Dec. ¶ 12.  Linda Williams thereafter was required to attend meetings at Plaintiff's home office on four (4) other occasions, the last being in January 2008.  Ms. Williams and Mr. Williams also were required to attend the company's holiday party in Illinois in December 2007.  L. Williams Dec. ¶ 16; C. Williams Dec. ¶ 9.  Four years earlier, Ms. Williams attended a seminar in Illinois in the course of her duties with her former employer, ICS.  L. Williams Dec. ¶ 16.   In addition to the November management meeting, Philip Caruso was required to attend meetings at Plaintiff's home office on one (1) other occasion.  Caruso Dec. ¶ 10.  Neither Stephen Pursel, Clifford Williams nor Robert Mastrofrancesco ever visited Plaintiff's home office again after the initial management meeting.  C. Williams Dec. ¶ 9; Pursel Dec. ¶ 12; Mastrofrancesco Dec. ¶ 13. While employed by ICS and in furtherance of his duties therewith, Mr. Mastrofrancesco attended an annual trade show in Illinois (8) times over the past twenty-seven (27) years, at ICS's expense; he did not attend the trade show in the last five (5) years.  Mastrofrancesco Dec. ¶ 14. Mr. Pursel also attended the trade show in Illinois three (3) times in the past twenty-seven (27) years (but not in the last ten (10) years), in furtherance of his employment with ICS and a prior employer.  Pursel Dec. ¶ 13.  Other than the foregoing limited visits, which were undertaken at the direction of and for the benefit of Plaintiff or Defendants' other former employers, none of the individual Defendants has visited Illinois for any purpose whatsoever.  L. Williams Dec. ¶ 17; C. Williams Dec. ¶ 10; Pursel Dec. ¶ 14; Caruso Dec. ¶ 11; Mastrofrancesco Dec. ¶ 15.

With respect to the company defendants, neither entity has (or ever has had) operations based in or customers located in Illinois.  L. Williams Dec. ¶ 18.  As a result, since the individual Defendants' resignation from Plaintiff's employ, the Defendants have not conducted business in Illinois; they do not maintain an office or employees with in Illinois; they have not sent agents into Illinois to conduct business; they have not advertised or solicited business in Illinois; and they have not designated an agent for service of process in Illinois. L. Williams Dec. ¶ 18; C. Williams Dec. ¶ 11; Pursel Dec. ¶ 15; Caruso Dec. ¶ 12; Mastrofrancesco Dec. ¶ 10.

## II.    PROCEDURAL BACKGROUND

So as not to burden the Court with duplicative filings, Defendants incorporate by reference the Procedural Background for this action as set forth in Defendants' memorandum in support of their motion to dismiss due to lack of personal jurisdiction, filed concurrently herewith.

## III.    LEGAL STANDARD

In analyzing a Fed. R. Civ. P. 12(b)(3) improper venue claim, the court resolves any conflicts in the pleadings and affidavits in favor of the plaintiffs, but accepts as true any facts in the defendants' affidavits that remain unrefuted by the plaintiffs.  Promero, Inc. v. Mammen, No. 02 C 1191, 2002 U.S. Dist. LEXIS 21232, at * 22-23 (N.D. Ill. Oct. 30, 2002) (attached hereto as **Exhibit B**).  Additionally, the court may examine facts outside of the complaint.  Id.  It is the plaintiff's burden to establish proper venue.  Id.

## IV.    ARGUMENT

Plaintiff inappropriately seeks to have its dispute adjudicated in this District, where the statutory venue requirements cannot be met, and when there already is a prior legal action pending in the District of Connecticut in which the controlling issues in this action will be

determined.    For these reasons, discussed below, this matter should be dismissed, or alternatively, transferred to the District of Connecticut.

        A.      <u>Venue is Not Appropriate under 28 U.S.C. § 1391(b)</u>

In its Complaint, Plaintiff alleges that that subject matter jurisdiction is based on diversity jurisdiction and also federal question jurisdiction, and that venue in this District is proper pursuant to 28 U.S.C. § 1391.  Pl.'s Compl. ¶¶ 10, 12.  In such a case, venue is proper in a district where a defendant resides, if all defendants are residents of the same state; in a district where a substantial part of the acts or omissions from which the claim emanates occurred; or in any district where any defendant may be found if venue cannot be established via either of the other two avenues. 28 U.S.C. § 1391(b); <u>Gencor Pac., Inc. v. Nature's Thyme, LLC</u>, No. 07 C 167, 2007 U.S. Dist. LEXIS 29995, at * 18 (N.D. Ill. Apr. 24, 2007) (attached hereto as **Exhibit C**).  In the instant matter, venue in this District is improper because none of the foregoing criteria is satisfied.

None of the individual Defendants or members of the company Defendants reside in Illinois.  <u>See</u> Section I-D, <u>supra</u>.  Moreover, a substantial part of the acts or omissions from which the claim emanates did not occur in this District.   In fact, Plaintiff's own factual allegations in its Complaint demonstrate that <u>none</u> of the allegedly wrongful conduct of Defendants took place in Illinois.  <u>See</u> Pl.'s Compl. ¶¶ 13-49.  To the contrary, Defendants are alleged to have downloaded confidential information from Defendants' computers, located in Connecticut, and misappropriated Plaintiff's trade secret information by utilizing same in connection with their new employment, again, in Connecticut.  Such conduct, if it occurred (which Defendants deny), took place not just substantially, but entirely, in Connecticut.  Finally, as this action clearly could have been brought in the District of Connecticut (and indeed a prior action between the parties is pending), subsection (3) of § 1391(b) is inapplicable.  Under such

circumstances, venue in Illinois is improper.  See, e.g., Gencor Pac., Inc., 2007 U.S. Dist. LEXIS 29995, at * 18-19 (**Exhibit C**) (dismissing action due to improper venue where events that gave rise to claims took place in New Jersey, where defendants resided and where venue would be proper); Hyundai Motor Co. v. Ill. Nat'l Ins. Co., No. 04 C 7367, 2005 U.S. Dist. LEXIS 10366, at * 4-6 (N.D. Ill. May 12, 2005) (attached hereto as **Exhibit D**) (dismissing action due to improper venue where claims overwhelmingly focused on events which did not occur in Illinois); see also Schwarz v. Nat'l Van Lines, Inc., 317 F. Supp. 2d 829, 834 (N.D. Ill. 2004) (stating that to be substantial, "the events that occurred in the forum district must be a part of the historical predicate of the claim").

> B.    The Prior Pendency of the Connecticut Action Warrants Dismissal of the Instant Matter

Even if venue were proper in this District, the Court nevertheless should dismiss this action due to the pendency of the earlier filed Connecticut Action.

The so-called "first-filed rule" gives priority to the party who first establishes jurisdiction for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts. Newell Co. v. Lee, 950 F. Supp. 864, 870 (N.D. Ill. 1997) (citing Northwest Airlines v. American Airlines, 989 F.2d 1002, 1006 (8th Cir. 1993)); see Ill. Blower, Inc. v. Deltak, L.L.C., No. 04 C 0341, 2004 U.S. Dist. LEXIS 5838 (N.D. Ill. Apr. 6, 2004) (attached hereto as **Exhibit E**) ("The 'first filed rule' gives priority 'to the party who first establishes jurisdiction' in order to conserve judicial resources and avoid conflicting rulings.") (quoting Keymer v. Mgmt. Recruiters, Int'l Inc., 169 F.3d 501, 503 n.2 (8th Cir. 1999)).[4]  It is true that "[t]his circuit does not rigidly adhere to a 'first-to-file' rule". Trippe Mfg. Co. v. Am. Power

---

[4] This first-filed rule applies even when the defendant in a second-filed case is not a party in the first-filed action, if its interests are "clearly aligned" with the interests of a party in the first-filed case.  Sparktrode LLC v. HMT High Med. Techs. AG, No. 04 C 8018, 2005 U.S. Dist. LEXIS 14175, at * 5 (N.D. Ill. July 13, 2005) (attached hereto as **Exhibit F**).  Here, Defendant 5 Star Supply Management Group, LLC is not a party in the Connecticut Action, but its interests are clearly aligned with those of 5 Star Supply LLC, which is a party to both actions.

Conservation Corp., 46 F.3d 624, 629 (7th Cir. 1995).[5]   There is, however, a rebuttable

presumption that the first case which establishes jurisdiction should be allowed to proceed, and

the second case dismissed.  Moore v. Morgan Stanley & Co., No. 07 C 5606, 2007 U.S. Dist.

LEXIS 90567 at * 4 (N.D. Ill. Dec. 6, 2007) (attached hereto as **Exhibit G**) (citing Asset

Allocation & Mgmt. Co. v. Western Employers Ins. Co., 892 F.2d 566, 573 (7th Cir. 1989);

Northwest Airlines, Inc., 989 F.2d at 1004).

Thus, the first-filed rule applies unless matters of convenience or other circumstances

suggest otherwise. Campbell Software, Inc. v. Kronos, Inc., No. 95 C 7348, 1996 U.S. Dist.

LEXIS 3262, at * 11 (N.D. Ill. Mar. 19, 1996) (attached hereto as **Exhibit H**).  The plaintiff of

the second-filed action bears the burden of showing compelling circumstances or an imbalance

of convenience to overcome the presumption that the first-filed suit should proceed.  Moore v.

Morgan Stanley & Co., Inc., 2007 U.S. Dist. LEXIS 90567, at * 4-5 (N.D. Ill. Dec. 6, 2007)

(**Exhibit G**).  "[T]he relevant equitable factors to be considered are (1) jurisdiction over the

parties, (2) judicial efficiencies and economies, (3) conveniences to the parties, (4) availability

and convenience of witnesses, and (5) the extent to which the declaratory judgment action filed

in another forum is anticipatory and motivated by forum shopping." Vanguard Prods. Group v.

---

[5] The Trippe case involved extenuating circumstances militating against application of the first-filed rule.  There, the Seventh Circuit affirmed the dismissal of the plaintiff's complaint in light of duplicate litigation in Rhode Island. The district court in Rhode Island had stayed the action there, having determined that the action in the Northern District of Illinois was the first-filed. The district court in the Northern District of Illinois held that it was not required to determine the issue of venue; in order to transfer from Rhode Island to Illinois, it was preferable to file a motion to transfer in Rhode Island, instead of filing an amended complaint in Illinois. Trippe Mfg. Co., 46 F.3d at 629.

The case cited by Plaintiff's counsel during the initial motion hearing held on August 21, 2008, Tempco Elec. Heater Corp. v. Omega Eng'g, Inc., 819 F.2d 746, 750 (7th Cir. 1987), is similarly distinguishable.  In Tempco, the alleged infringer filed a declaratory judgment action in the Illinois District Court and four days later the registrant filed its infringement action in the District of Connecticut. The Illinois court dismissed the declaratory judgment action in favor of the pending infringement action in Connecticut. In affirming the district court's dismissal, the Seventh Circuit noted that some of the alleged infringer's arguments were in the nature of venue objections but that such contentions were rightly addressed to and decided by the Connecticut court. Tempco, 819 F.2d at 750, n. 6.  Unlike the posture of the Trippe and Tempco cases, Defendants' venue objections are squarely before this Court, and, as discussed further below, the interests of justice warrant application of the first-filed rule.

Protex Int'l Corp., No. 05 CV 6310, 2005 U.S. Dist. LEXIS 41079, at * 10 (N.D. Ill. Mar. 14, 2005) (attached hereto as **Exhibit I**).

In the instant matter, the relevant factors weigh in favor of application of the first-filed rule, and the dismissal of the instant action. First, as discussed in Defendants' concurrent motion to dismiss due to lack of personal jurisdiction, this Court lacks jurisdiction over Defendants. Conversely, jurisdiction over all parties is clear in the Connecticut Action, where the events at issue transpired and where Plaintiff maintains an office and transacts business. At the very least, the jurisdictional issues raised by Defendants support application of the first-filed rule. Second, judicial efficiencies and economies favor avoiding a "redundancy of litigation". Vanguard Prods. Group, 2005 U.S. Dist. LEXIS 41079, at * 10 (**Exhibit I**). Comprehensive disposition of litigation of both actions can be achieved in the Connecticut Action, which involves the controlling issues raised in the instant matter. Conversely, Defendants' wage claim as alleged in the Connecticut Action is not encompassed by the current suit, such that both actions will still proceed even if this action is not dismissed. Moreover, if the company Defendants are dismissed from this action due to their complete lack of contact with Illinois, but some or all of the individual Defendants remain, Plaintiff would be required to litigate in two jurisdictions in order to seek relief against all parties, thereby wasting judicial resources litigating over identical issues in two courts and risking conflicting rulings.

The third factor, convenience to the parties, weighs heavily in favor of application of the first-filed rule. Evaluation of this factor involves consideration of the choice of forum of the first to file, the convenience of the witnesses, the ease of access to evidence, the location of material events, and the overall convenience of litigating in the respective forums. Id., at * 11-12. As Defendants' allegedly wrongful conduct took place at Plaintiff's office in Connecticut and Defendants are engaged in their allegedly improper current business activities out of their office

in Connecticut, it is evident that the material witnesses and the evidence similarly will be located in Connecticut. Moreover, the testimony of the individual Defendants' former co-workers at Plaintiff's Connecticut office may prove relevant in this matter, and such persons would be beyond Defendants' subpoena power if this matter were to proceed to trial in Illinois.[6] By far, it would be more convenient to litigate this dispute in Connecticut, particularly in view of the disparate resources of Defendants, individuals and a small start-up business with limited financing, as compared to Plaintiff, "one of the leading suppliers . . . to the foodservice industry, Pl.'s Compl. ¶ 13, with offices located throughout the country, including in Connecticut. Given the foregoing, it is no wonder that Defendants chose Connecticut as the forum for their earlier filed action. Cf. Vanguard Products Group, Inc., 2005 U.S. Dist LEXIS 41079, at * 12-13 (**Exhibit I**) ("Deference to a later-filed action will not be given when to do so 'merely serves to shift in conveniences from one to another.'") (citing cases).

The fourth factor, availability and convenience of the witnesses, also supports application of the first-filed rule. As explained above, Defendants may wish to call Plaintiff's current or former Connecticut employees as witnesses at trial, and this right would be constrained if the trial of this matter took place in Illinois. Moreover, requiring witnesses from both parties' Connecticut offices to travel to Illinois would add an undue, and unnecessary, expense to this litigation. The simple number of material witnesses (the five individual Defendants, plus personnel from Plaintiff's Connecticut office) located in Connecticut easily outweighs any number of witnesses located in Illinois that Plaintiff may anticipate calling as witnesses.

The final factor does not serve to rebut the presumption of dismissal of this action. It is true that courts have admonished against the use of the Declaratory Judgment Act solely for the purpose of securing a particular forum. See Schumacher Elec. Corp. v. Vector Prods., Inc., 286

---

[6] An out-of-state trial deposition would not suffice for such potentially critical witnesses.

F. Supp. 2d 953, 955 (N.D. Ill. 2003). Here, however, Defendants did not file the Connecticut Action solely in an attempt to select a forum—in fact, the individual Defendants maintain separate, cognizable wage claims against Plaintiff in the Connecticut Action, which, it must be pointed out, is the logical forum for the parties' dispute in any event. Accordingly, the Connecticut Action is not properly characterized as an improper anticipatory filing. See, e.g., Illinois Blower, Inc., 2004 U.S. Dist. LEXIS 5838, at * 8-9 (**Exhibit E**) (concluding that neither pending action could be characterized as an improper anticipatory filing, as both parties may potentially have had cognizable claims against the other). Moreover, "intent of the [first] filing party, though, is 'merely one factor to be considered in the analysis.'" Vanguard Products Group, Inc., 2005 U.S. Dist LEXIS 41079, at * 15 (**Exhibit I**) (citing Serco Servs. Co. v. Kelley Co., 51 F.3d 1037, 1347-48 (Fed. Cir. 1995)). Thus, even if this Court were to conclude that the Connecticut Action is an anticipatory declaratory judgment action, such a finding is insufficient to overcome the significant factors in favor of dismissing this action in favor of Defendants' chosen (and the logical) forum.[7]

In light of the foregoing analysis, it is clear that application of the first-filed rule is proper in this case, and this action should be dismissed. See, e.g., Vanguard Products Group, Inc., 2005 U.S. Dist. LEXIS 41079, at * 8-17 (**Exhibit I**) (dismissing action for improper venue under first-filed rule where factors failed to support an exception to the rule despite suggestion that movant filed earlier action for purpose of preemption); Sparktrode LLC, 2005 U.S. Dist. LEXIS 14175, at * 4-8 (**Exhibit F**) (denying motion to amend earlier judgment dismissing second-filed action on basis of first-filed rule); Indemnity Ins. Co. v. Melton Truck Lines, Inc., No. 04 C 2390, 2004

---

[7] In opposition to this motion, Plaintiff undoubtedly will cite to decisions declining to apply the first-filed rule in declaratory judgment actions. Defendants note, however, that many of these cases involve parties who surreptitiously filed the declaratory judgment action while feigning good faith efforts to negotiate the dispute. Defendants never engaged in any such dilatory tactics in the instant matter, choosing instead to file suit to bring this matter to a head upon learning of Plaintiff's spurious and unfounded allegations. The Connecticut Action also is distinguishable in that it contains an unrelated, affirmative claim for relief.

U.S. Dist. LEXIS 18970, at * 3-4 (N.D. Ill. Sept. 20, 2004) (attached hereto as **Exhibit J**) (dismissing action pursuant to first-filed rule); cf. Moore, 2007 U.S. Dist. LEXIS 90567, at * 4-9 (**Exhibit G**) (concluding that plaintiffs in later-filed action had not satisfied their burden of rebutting the presumption that the first-filed rule should be followed, and staying action subject to outcome of first-filed action); Applexion SA v. The Amalgamated Sugar Co., No. 95 C 858, 1995 U.S. Dist. LEXIS 9350, at * 3-6 (N.D. Ill. July 7, 1995) (attached hereto as **Exhibit K**) (applying first-filed rule to enjoin later-filed action).

C.     Alternatively, Transfer is Appropriate Pursuant to 28 U.S.C. § 1404(a)

In lieu of dismissal, a federal court may transfer a case to another judicial district. See 28 U.S.C. §1404(a) ("[f]or the convenience of parties and witnesses in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought"); see also Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219 (7th Cir. 1986). The Seventh Circuit has held that the requirements for transfer are: 1) venue is proper in the transferor and transferee court; 2) transfer is for the convenience of the parties and witnesses; and 3) transfer will serve the interests of justice. Id.; United Air Lines, Inc. v. Mesa Airlines, Inc., 8 F. Supp. 2d 796, 798 (N.D. Ill. 1998); Von Holdt v. Husky Injection Molding Sys, Ltd., 887 F. Supp. 185, 188 (N.D. Ill. 1995); Heller Fin., Inc. v. Riverdale Auto Parts, Inc., 713 F. Supp. 1125, 1127 (N.D. Ill. 1989).  These considerations are essentially the same as those discussed above in connection with application of the first-filed rule.  While Defendants believe dismissal of this action is appropriate for the reasons discussed above and in Defendants' concurrent motion to dismiss for lack of jurisdiction, alternatively, the circumstances discussed above also support transfer of this action pursuant to 28 U.S.C. § 1404(a), should this Court determine that venue is proper in this Court.  See, e.g., Illinois Blower, Inc., 2004 U.S.

Dist. LEXIS 5838, at * 9-14 (**Exhibit E**) (transferring later-filed action pursuant to §
1404(a)).

## V.     CONCLUSION

For the reasons discussed above, Defendants respectfully submit that this matter should

be dismissed, or alternatively, transferred to the United States District Court for the District of

Connecticut.

DEFENDANTS 5 STAR SUPPLY LLC, 5 STAR
MANAGEMENT GROUP, LLC, LINDA A.
WILLIAMS, CLIFFORD G. WILLIAMS, II
STEPHEN J. PURSEL, PHILIP J. CARUSO, and
ROBERT G. MASTROFRANCESCO,


By:   s/Cary E. Donham
    Cary E. Donham
    Roger Joseph Kiley
    SHEFSKY & FROELICH LTD
    Their Attorneys
    111 East Wacker Drive
    Suite 2800
    Chicago, IL 60601
    (312) 527-4000
    Email: cdonham@shefskylaw.com
          rkiley@shefskylaw.com

1094980_1

# EXHIBIT A

# ■ Brenner, Saltzman & Wallman LLP

*ATTORNEYS AT LAW*

NEWTON D. BRENNER (1934-2006)
STEPHEN L. SALTZMAN, P.C.
MARC A. WALLMAN, P.C.
DAVID R. SCHAEFER, P.C.
DONALD W. ANDERSON, P.C.
SAMUEL M. HURWITZ, P.C.
WAYNE A. MARTINO, P.C.
MITCHELL S. JAFFE, P.C.
ALICE J. MICK, P.C.
KENNETH ROSENTHAL
CAROLYN W. KONE
BRIAN P. DANIELS
GEORGE BRENCHER IV, P.C.
JENNIFER DOWD DEAKIN, P.C.
ROWENA A. MOFFETT
JAMES E. ROSENBLUTH

SUZANNE H. ALDERMAN
SEAN M. FISHER
RONALD A. SOCCOLI, JR.

OF COUNSEL:
SHARON KOWAL FREILICH
HOLLY WINGER

Rowena A. Moffett
Email: rmoffett@bswlaw.com

July 24, 2008

*VIA EMAIL and OVERNIGHT MAIL*
Bonita L. Stone, Esq.
KattenMuchinRosenman LLP
525 W. Monroe Street
Chicago, IL 60661-3693

Re:    *5 Star Supply LLC/Consolidated Commercial Controls, Inc.*

Dear Attorney Stone:

This office represents 5 Star Supply LLC, 5 Star Management Group, LLC, Linda Williams, Stephen Pursel, Clifford Williams, Philip Caruso and Robert Mastrofrancesco (the "5 Star Parties") in connection with the claims raised by Consolidated Commercial Controls, Inc. ("CCC") in your letters to my clients dated July 17, 2008. The 5 Star Parties vehemently deny CCC's allegations of wrongful conduct, more particularly but without limitation, the allegation that the 5 Star Parties are utilizing confidential and trade secret information of CCC in connection with the business of 5 Star Supply LLC.

Enclosed please find a copy of a Complaint against CCC, Civil Cover Sheet and my Appearance, which were filed today in the United States District Court for the District of Connecticut seeking, <u>inter alia</u>, a declaratory judgment to resolve the parties' disputes in connection with this matter. Also enclosed is a Notice of a Lawsuit and Request to Waive Service of a Summons. Please advise whether CCC agrees to waive service of a Summons and Complaint in accordance with the enclosed Waiver. I have enclosed two (2) copies of the Waiver, together with a self-addressed stamped envelope, for your convenience in returning the executed Waiver.

Bonita L. Stone, Esq.
July 24, 2008
Page 2

If you wish to discuss this matter further, feel free to contact me.

Sincerely,

Rowena A. Moffett

RAM/jr
Enclosures

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2008 JUL 24 P 3: 3:

U.S. DISTRICT COURT
NEW HAVEN, CT

| | | |
|---|---|---|
| 5 STAR SUPPLY LLC, <br> LINDA A. WILLIAMS, CLIFFORD G. WILLIAMS, II, <br> STEPHEN J. PURSEL, PHILIP J. CARUSO <br> and ROBERT G. MASTROFRANCESCO, <br> Plaintiffs, | : <br> : <br> : <br> : <br> : | CIVIL ACTION NO. |
| v. | : <br> : | |
| CONSOLIDATED COMMERCIAL <br> CONTROLS, INC., | : <br> : <br> : | |
| Defendant. | : <br> : | JULY 24, 2008 |

## COMPLAINT

Plaintiffs 5 Star Supply LLC, Linda A. Williams, Clifford G. Williams, II, Stephen J. Pursel, Philip J. Caruso, and Robert G. Mastrofrancesco bring this Complaint against Defendant Consolidated Commercial Controls, Inc. This is an action seeking a declaratory judgment and other relief arising from the Defendant's efforts to bar the Plaintiffs from engaging in business competitive with the Defendant, notwithstanding the absence of any contractual or other limitations on Plaintiffs' ability to do so.

### The Parties

1.     Plaintiff 5 Star Supply LLC is a limited liability company organized under the laws of the State of Connecticut having its principal place of business in the State of Connecticut.

2.     Plaintiff Linda Williams is an individual who resides in and is a citizen of the State of Connecticut.

3.    Plaintiff Clifford Williams is an individual who resides in and is a citizen of the State of Connecticut.

4.    Plaintiff Stephen Pursel is an individual who resides in and is a citizen of the State of Connecticut.

5.    Plaintiff Philip Caruso is an individual who resides in and is a citizen of the State of Connecticut.

6.    Plaintiff Robert Mastrofrancesco is an individual who resides in and is a citizen of the State of Connecticut.

7.    Defendant Consolidated Commercial Controls, Inc. is a corporation organized under the laws of the State of Delaware having its principal place of business in the State of Illinois.

**Jurisdiction and Venue**

8.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 since the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

9.    Venue in this District is proper pursuant to 28 U.S.C. §1391

10.    This is an action seeking, inter alia, a declaratory judgment pursuant to 28 U.S.C. § 2201, for the purpose of determining a question of actual controversy between the parties, as hereinafter more fully appears.

**Background**

11.    Defendant is a distributor of foodservice replacement parts and supplies.

12.    Plaintiff Linda Williams had been employed by Defendant and its predecessor in interest, International Commercial Supply Corporation ("ICS") for nine (9) years as CFO/COO prior to April 10, 2008.

13.    As CFO/COO of ICS, Linda Williams was responsible for overseeing all operational and financial functions of ICS. After the acquisition of ICS by Defendant, Linda Williams' title changed to COO only, she reported to the President at Defendant's headquarters in Chicago, and her responsibilities were limited to the operational functions of Defendant's Connecticut and Nevada facilities. Following the acquisition, Linda Williams was required to travel extensively to Defendant's headquarters in Chicago in order to carry out her job responsibilities.

14.    Plaintiff Clifford Williams had been employed by Defendant and its predecessor in interest, ICS, for twenty-two (22) years as Receiving/Inventory Control Manager prior to June 24, 2008.

15.    As Receiving/Inventory Control Manager for ICS, Clifford Williams was responsible for overseeing receipts of inventory and inventory control. After Defendant's acquisition of ICS, Clifford Williams was demoted to a supervisory role within the warehouse, reporting to the warehouse manager.

16.    Plaintiff Stephen Pursel had been employed by Defendant and its predecessor in interest, ICS, for sixteen (16) years as Executive of Product Development prior to April 23, 2008.

17.    As Executive of Product Development of ICS, Stephen Pursel was responsible for creating and maintaining the annual catalog. After Defendant's

acquisition of ICS, Stephen Pursel reported to Defendant's General Manager located in Chicago and he no longer had final decision making authority.

18.     Plaintiff Philip Caruso had been employed by Defendant and its predecessor in interest, ICS for twenty-five (25) years as Warehouse Manager prior to June 24, 2008.

19.     As Warehouse Manager for ICS, Philip Caruso was responsible for overseeing all warehouse functions. After Defendant's acquisition of ICS, Philip Caruso's title remained unchanged, but he lacked the hiring authority that he previously enjoyed at ICS. Following the acquisition, Philip Caruso also was informed that he would have to travel to Chicago regularly as part of his job duties.

20.     Plaintiff Robert Mastrofrancesco had been employed by Defendant and its predecessor in interest, ICS for twenty-seven (27) years as Export Sales and Customer Service Manager prior to June 24, 2008.

21.     As Export Sales and Customer Service Manager for ICS, Robert Mastrofrancesco was responsible for overseeing all sales and customer service reps for domestic and international sales. After Defendant's acquisition of ICS, Robert Mastrofrancesco was demoted to Customer Service Manager, reporting to a Manager in Chicago, and he was no longer responsible for export sales.

22.     Defendant purchased substantially all of the assets of ICS (previously a competitor of Defendant) in or about October 31, 2007, and thereafter became the employer of the individual Plaintiffs.

23.     Due to dissatisfaction with the operation of the Defendant company after it acquired ICS, each of the individual Plaintiffs determined to resign their employment

with Defendant. Linda Williams resigned her employment with Defendant, effective

April 10, 2008. Stephen Pursel resigned his employment with Defendant, effective April

23, 2008. Clifford Williams, Philip Caruso and Robert Mastrofrancesco resigned their

employment with Defendant, effective June 24, 2008.

24.    At no time were any of the individual Plaintiffs parties to an employment

agreement with either ICS or Defendant.

25.    After resigning from Defendant's employ, the individual Plaintiffs became

employed by Plaintiff 5 Star Supply LLC, which also is a distributor of foodservice

replacement parts and supplies.

26.    On or about July 18, 2008, the individual Plaintiffs each received separate

correspondence from legal counsel for Defendant making various demands of Plaintiffs

in connection with their new employment. In the demand letter sent to Linda Williams, 5

Star Supply LLC and an affiliated entity 5 Star Management Group, LLC, Defendant's

counsel asserted that Linda Williams was unlawfully competing with the Defendant, that

Linda Williams had misappropriated confidential information of the Defendants, and that

"it is simply not possible for [Ms. Williams] to own and operate a directly competitive

business without relying upon the [Defendant's] information". Defendant's counsel also

demanded that Linda Williams permit Defendant to inspect the Plaintiffs' computers and

other electronic media. The letter further indicated that, unless Linda Williams

responded to Defendant's demands within five (5) business days, Defendant would

"pursue its legal rights, and seek a preliminary injunction to stop the continued

misappropriation of its confidential and trade secret information and to bar 5 Star from

engaging in any activities in the foodservice supply industry". The letters to Stephen

Pursel and Robert Mastrofrancesco contained essentially identical claims of the inevitable disclosure of confidential information, demands of access to Plaintiffs' computer devices and threats of impending litigation seeking preliminary injunctive relief. The letters to Clifford Williams and Philip Caruso demanded that they the return any documents and property related to the business of Defendant or ICS and that they immediately permit the inspection and deletion of any such information that may reside upon their computers or other electronic media.

27.    Plaintiffs are not utilizing Defendant's confidential or trade secret information in connection with their current business activities, indeed they have no need to do so, and they do not intend to do so at any time in the future.

28.    The individual Plaintiffs intend to continue their employment with 5 Star Supply LLC and do not believe that such employment violates or will violate any contractual obligation to Defendant or any applicable provision of law with respect to confidential information or trade secrets, and that any contractual obligation which could be interpreted to bar such employment with 5 Star Supply LLC is invalid and unenforceable under Connecticut law.

## COUNT I – DECLARATORY JUDGMENT

29. Plaintiffs repeat and allege Paragraphs 1 through 28 hereof as if fully set forth herein.

30. There is an actual controversy between the parties as to whether Plaintiffs can continue to engage in business competitive with the Defendant.

## COUNT II – CLAIM PURSUANT TO CONNECTICUT GENERAL STATUTES § 31-72

31. Plaintiffs repeat and allege Paragraphs 1 though 28 as if fully set forth herein.

32. Although Defendant paid Linda Williams, Stephen Pursel and others for their unused vacation days following the termination of their respective employment with Defendant, Defendant failed to pay Philip Caruso for his unused vacation days following the termination of his employment with Defendant.

33. Additionally, Defendant failed to pay Clifford Williams and Robert Mastrofrancesco the wages due them for the last two days of their employment.

34. Defendant's failure to pay Philip Caruso, Clifford Williams and Robert Mastrofrancesco the vacation pay and wages due them was in bad faith, arbitrariness and unreasonableness.

35. As a result thereof, under Connecticut General Statutes § 31-72, Plaintiffs Philip Caruso, Clifford Williams and Robert Mastrofrancesco are entitled to recover twice the amount of such wages/vacation pay not paid to said Plaintiffs in violation of Connecticut General Statutes §§ 31-71c and 31-76k, costs and reasonable attorneys' fees.

WHEREFORE, Plaintiffs 5 Star Supply LLC, Linda Williams, Clifford Williams, Stephen Pursel, Philip Caruso, and Robert Mastrofrancesco pray for relief as follows:

1.    With respect to Count I, that this Court render a declaratory judgment that the individual Plaintiffs' employment with 5 Star Supply LLC does not violate any contractual or legal obligations of the individual Plaintiffs to Defendant or any alleged doctrine of inevitable disclosure of confidential information or trade secrets.

2.    With respect to Count I, that this Court render a declaratory judgment that any contractual provision which could be interpreted to bar the individual Plaintiffs' employment with 5 Star Supply LLC is invalid and unenforceable under Connecticut law.

3.    With respect to Count II, actual damages plus interest, costs and reasonable attorney's fees as provided pursuant to Connecticut General Statutes § 31-72.

PLAINTIFFS 5 STAR SUPPLY LLC, LINDA A.
WILLIAMS, CLIFFORD G. WILLIAMS, II
STEPHEN J. PURSEL, PHILIP J. CARUSO,
and ROBERT G. MASTROFRANCESCO,

By_____
Rowena A. Moffett, Esq. (ct 19811)
BRENNER SALTZMAN & WALLMAN, LLP
Their Attorney
271 Whitney Avenue
New Haven, CT 06511
Telephone: 203-772-2600
Fax: 203-562-2098
Email: rmoffett@bswlaw.com

# EXHIBIT B

LEXSEE 2002 U.S. DIST. LEXIS 21232



Positive
As of: Aug 29, 2008

**PROMERO, INC., a Delaware Corporation, Plaintiff, v. TERRY MAMMEN, individually, and ARNOLD KUM, individually, Defendants.**

**02 C 1191**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

**2002 U.S. Dist. LEXIS 21232**

**October 30, 2002, Decided
November 1, 2002, Docketed**

**DISPOSITION:**  [*1] Defendants' motion to dismiss granted in part and denied in part.

**COUNSEL:** For PROMERO INC, plaintiff: Michael Andrew Ficaro, Ross Edward Kimbarovsky, Jacob M Mihm, Ungaretti & Harris, Chicago, IL.

For PROMERO INC, plaintiff: Gary I. Levenstein, Shefsky & Froelich, Chicago, IL.

For TERRY MAMMEN, ARNOLD KUM, defendants: David Benjamin Goodman, Barry A. Chatz, Thadford A. Felton, Jeffrey D. Pilgrim, Arnstein & Lehr, Chicago, IL.

**JUDGES:** HON. RONALD A. GUZMAN, United States Judge.

**OPINION BY:** RONALD A. GUZMAN

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Promero, Inc. has sued defendants Terry Mammen and Arnold Kum in a five-count complaint alleging breach of contract (Count I), equitable estoppel (Count II), misrepresentation and fraud (Count III), civil conspiracy (Count IV), and tortious interference with prospective economic advantage (Count V). Defendants have moved to dismiss this action pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2), 12(b)(3), and

12(b)(6). For the following reasons, the Court denies the motion to dismiss based on Rule 12(b)(2) and 12(b)(3). The Court grants the Rule 12(b)(6) motion to dismiss Counts II, III, IV, and V and dismisses those [*2] counts without prejudice and denies the Rule 12(b)(6) motion to dismiss as to Count I.

**FACTS**

Plaintiff is a Delaware corporation with its principal place of business in Florida. (Compl. P 14.) It is the successor in interest to Chicago 216e, ("Chicago 216"), an Illinois limited liability company operating at the time as a private equity firm, which acquired the assets of Bye-ByeNow.com ("BBN"), a Florida corporation. (Id. P 1.)

Defendants were the sole shareholders of Kum Mammen Investors ("KMI"), a California corporation, and KMI was the sole shareholder of Cruise Holidays, Inc. ("Cruise Holidays") and of CruiseWeb Software Development ("CruiseWeb"). (Id. P 17.) In February 2000, BBN entered into a series of agreements (collectively the "KMI Agreement") with defendants by which KMI became a wholly owned subsidiary of BBN through a merger with an existing subsidiary of BBN. KMI's subsidiaries, Cruise Holidays and Cruise Web, remained wholly owned subsidiaries of KMI, which BBN owned upon completion of the KMI Agreement. (Id. PP 18-19.) In return for their stock in KMI, defendants received 1,500,000 shares of preferred stock in BBN, and a cash payment of $ 2,500,000, [*3] which was to be paid in monthly installments of $ 150,000, with the unpaid balance to become due on December 31, 2000, or, if BBN

2002 U.S. Dist. LEXIS 21232, *

made an IPO of its common stock before then, upon the IPO's completion. (*Id.* P 20.) Furthermore, if the IPO had not occurred by the twelve-month anniversary of the closing of the KMI Agreement, BBN was to pay defendants additional cash payments of $ 100,000 per month, and an additional cash payment of $ 2,900,000 was to be due if the IPO had not occurred by December 31, 2001. (*Id.*) Thus, by the terms of the KMI Agreement, defendants became major creditors of BBN. To secure its obligations to defendants, as part of the KMI Agreement, BBN granted defendants a security interest in the stock of Cruise Holidays and Cruise Web, and certain other assets including intellectual property and rights under franchise agreements. (*Id.* P 21.)

BBN's business went south shortly after the closing of the KMI Agreement. By the end of the calendar year 2000, BBN was unable to pay the monthly installments to defendants under the KMI Agreement. (*Id.* P 22.) Furthermore, due to the financial conditions of BBN and the condition of the capital markets, it became clear [*4] that BBN would not be able to either complete the IPO, pay the additional $ 100,000 monthly payments, or the $ 2,900,000 IPO contingency payment. (*Id.*)

BBN sought a way out of its financial distress. In December, 2000, BBN began discussion with Thomas Rubio ("Rubio"), then the manager of Chicago 216, regarding Chicago 216's possible acquisition of BBN. (*Id.* P 23.) To facilitate its proposed acquisition of BBN, Chicago 216 initiated negotiations with BBN's creditors, including the defendants, regarding a restructuring of the companies debt. (*Id.* P 25.) This suit arises out of these negotiations.

Plaintiff alleges that a series of discussions between Gary Plotkin ("Plotkin"), the attorney for defendants, and Chicago 216 occurred in Encino, California and Pompano Beach, Florida, in December 2000 and January 2001. (*Id.* P 26.) Plaintiff also refers to a meeting between Plotkin and Rubio that occurred in Chicago, and various telephone calls from Plotkin directed to the Plaintiff and its attorneys in State of Illinois. (*Id.* PP 12, 26.) Plaintiff alleges that in these discussions, Plotkin represented that he had actual authority to negotiate on behalf of the defendants [*5] and that he also appeared to have apparent authority to negotiate on their behalf. (*Id.* P 27.)

Plaintiff alleges that over the course of these discussions, defendants through their agent Plotkin and Chicago 216, entered into an oral contract. (*Id.* P 28.) Defendants orally agreed not to declare a default under the KMI Agreement and foreclose on their security in BBN. (*Id.*) In exchange, Chicago 216 agreed to cause BBN to sell its franchising business to a third party and apply the proceeds of the sale toward payment of BBN's remaining

unpaid debt to defendants. (*Id.*) Pending that sale, BBN would pay defendants the monthly installments then in arrears, and would pay them a portion of each installment due thereafter (collectively the "Cure Payments"). (*Id.*) Chicago 216 would also make certain loans (the "Bridge Loans") to BBN that would enable them to continue operating and to make the Cure Payments to defendants. (*Id.* P 29.) Plaintiff alleges that through the oral contract, defendants also agreed to reduce the remaining balances due to them under the KMI agreement to $ 2,000,000 plus the amount of the Cure Payment, and they agreed to invest in either (1) [*6] Chicago 216, or (2) any entity formed by Chicago 216 to acquire and operate BBN. (*Id.* P 30.) The amount the defendants were to invest was the entire amount of the Cure Payments less any amount that their share from the proceeds of the sale of BBN's franchise business was less than $ 2,000,000. (*Id.*) Plaintiff claims that pursuant to and in reliance on this oral contract, Chicago 216 made the Bridge Loans to the BBN and that from the proceeds of those loans the defendants received Cure Payments aggregating to $ 650,000. (*Id.* P 32.)

Following the alleged oral contract, Chicago 216 purchased the assets of BBN in connection with a Chapter XI Bankruptcy Proceeding for BBN. BBN sold its assets in its franchising business, and defendants received an amount in excess of $ 2,900,000, which being over $ 2,000,000, obligated them under the terms of the oral contract to invest the entire $ 650,000 Cure Payments in Chicago 216 or an entity formed by Chicago 216 to acquire and operate BBN. (*Id.* PP 34-35.) Chicago 216 formed such an entity, a wholly-owned subsidiary Promero, to which it contributed all of the assets in BBN, including any claim of Chicago 216 against the defendants, [*7] in return for shares of the common stock of Promero, and thereupon Chicago 216 dissolved and distributed its Promero stock to its shareholders. (*Id.* P 36.) Plaintiff Promero brings this action alleging a breach of contract by defendants in refusing to invest the Cure Payments of $ 650,000 in Promero, and alleging other tort and contract claims.

## DISCUSSION

Defendants move to dismiss the complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2), arguing that the alleged basis of jurisdiction, certain phone calls from Plotkin to plaintiffs in Illinois, and a meeting in Illinois between Plotkin and the plaintiffs is not sufficient to support jurisdiction in Illinois under either the Illinois long-arm statute or the due process clause of the U.S. Constitution. Alternatively, they argue that even if these contacts were sufficient to support personal jurisdiction, the complaint should be dismissed pursuant to Rule 12(b)(3) because venue is improper. Furthermore,

they move to dismiss under Rule 12(b)(6), arguing that none of the five counts alleged in the complaint state claims upon which relief can be granted.

## I. Motion to Dismiss for Lack of Personal Jurisdiction

[*8] The plaintiff bears the burden of establishing facts showing personal jurisdiction over the defendants. *Steel Warehouse of Wisc., Inc. v. Leach*, 154 F.3d 712, 714 (7th Cir. 1998). The Court can weigh affidavits submitted by both parties. *Banwell v. Ill. College of Optometry*, 981 F. Supp. 1137, 1139 (N.D. Ill. 1997). However, "'if a defendant's affidavit contesting jurisdiction is not refuted by a counter-affidavit filed by the plaintiff, the facts alleged in the defendant's affidavit are taken as true.'" *Connolly v. Samuelson*, 613 F. Supp. 109, 111 (N.D. Ill. 1985) (quoting *Kutner v. DeMassa*, 96 Ill. App. 3d 243, 248, 421 N.E.2d 231 (1st. Dist. 1981)). Otherwise, the court must accept all undenied factual allegations as true and interpret all disputed facts in favor of the party asserting jurisdiction. *Banwell*, 981 F. Supp. at 1139; *Saylor v. Dyniewski*, 836 F.2d 341, 342 (7th Cir. 1988).

In a diversity action, a federal court will have personal jurisdiction over a defendant only if an Illinois state court would have jurisdiction. *Banwell*, 981 F. Supp. at 1139. An Illinois state [*9] court has jurisdiction over the case if the Illinois long-arm statute, 735 ILL. COMP. STAT. 5/2-209 (2002), grants jurisdiction, jurisdiction is consistent with the Illinois constitution, and if jurisdiction over the defendants complies with the due process requirements of the federal constitution. *Id.*

Plaintiff alleges jurisdiction over defendants under three sections of the Illinois long-arm statute. The long-arm statute provides for jurisdiction over a person for a cause of action arising from actions of that person or those of his agent that constitute, (1) transacting "any business within this State"; (2) committing "a tortious act within this State"; (7) making or performing "any contract or promise substantially connected with this State." 735 ILL. COMP. STAT. 5/2-209(a). Plaintiff alleges that defendants transacted business in Illinois and entered into an oral contract substantially connected with Illinois, and because all the claims arise out of these actions, the Court has jurisdiction over defendants. It also argues that defendants committed a tortious act within Illinois, and as such, an Illinois court has jurisdiction over its tort claims.

Sections (1) and (7) are [*10] generally linked and considered in conjunction with one another. *Presley v. P & S Grain Co., Inc.*, 289 Ill. App. 3d 453, 460, 225 Ill. Dec. 398, 683 N.E.2d 901 (5th Dist. 1997). Three common factors courts look at to determine whether or not a defendant transacted business in Illinois for the purposes

of personal jurisdiction are: (1) who initiated the transaction; (2) where the contract was entered into; (3) where the performance of the contract was to take place. *Viktron Ltd. P'ship v. Program Data Inc.*, 326 Ill. App. 3d 111, 117-18, 259 Ill. Dec. 706, 759 N.E.2d 186 (2d Dist. 2001). Furthermore, "[a] fourth factor, where the contract was negotiated . . . is clearly relevant." *Id.*

The factors of where the contract was to be performed and where the parties negotiated the contract weigh heavily in favor of finding for jurisdiction in Illinois. It is obvious that at the time of the alleged contract, the parties would have contemplated that the contract would be performed to a substantial degree in Illinois. Plaintiffs allege that the defendants agreed to invest in a sizeable amount of money in either (1) Chicago 216, clearly an Illinois business, [*11] or (2) an entity Chicago 216 formed to manage BBN. Taking the allegations as true, clearly the defendants must have foreseen that their performance of the oral contract would very likely include investing money and taking an ownership interest in an Illinois business. The defendants argue that Promero is a Delaware corporation doing business in Florida, and that if they were to perform the contract today, the performance would not take place in Illinois. However, the Court cannot ignore the fact that when the alleged contract was made, it appeared as if the contract would be performed in Illinois--one of the contingencies the defendants agreed to was investing in Chicago 216, an Illinois business. Every case that articulates the factors determining whether a contract is substantially connected with Illinois under 5/2-209(a)(1) makes it clear that the relevant time period for the analysis is the time of contracting. *See id.*

That some of the negotiations for the putative contract occurred in a meeting between the plaintiff and defendants' agent in Illinois also weighs in favor of a finding of jurisdiction over the defendants. Although Plotkin's affidavit claims that at this meeting [*12] "no terms of a potential deal were negotiated," he admits that the parties discussed "the possibility of working out a deal between Promero and Defendants to acquire Promero stock." (Plotkin. Aff. P 11.) Furthermore, according to his affidavit these discussions occurred after he had already met Rubio of Chicago 216 twice and exchanged various communications with Rubio for the purpose of discussing a deal between Chicago 216 and the defendant. (*Id.* PP 6-9.) Despite the affidavit's classification of the dialogue between Plotkin and Rubio in Chicago, as well as at the other meetings as discussions rather than negotiations, it is difficult for the Court to see how meeting in Chicago to discuss the possible acquisition of stock in an Illinois business after several other discussions had already occurred between the parties on this

matter could not be considered negotiation of a contract in the forum state.

Because the alleged contract was negotiated in part in Illinois and at the time the parties should have expected that performance would occur in Illinois, jurisdiction over the defendants in Illinois is proper under Sections (a)(1) and (a)(7) of the Illinois long-arm statute. [*13] *See First Nat'l Bank of Chicago v. V.B. Boelc-skevy*, 126 Ill. App. 3d 271, 274, 81 Ill. Dec. 380, 466 N.E.2d 1182 (1st Dist. 1984) ("When a defendant comes to Illinois and engages in negotiations of some substance regarding the transaction from which the cause of action arises, then the defendant submits to jurisdiction under the long-arm statute. A defendant transacts business in Illinois when substantial performance of his or her contractual duties is to be rendered in Illinois."). In *Boelc-skevy*, the court decided that it had jurisdiction where the defendant was a party to a loan guarantee agreement that was negotiated over a series of telephone calls, but where the defendant discussed the agreement while physically present Illinois on only one occasion. *Id.* at 272.

Plaintiff does not contend that the contract was actually entered into in Illinois, and the parties do not dispute that the plaintiff initiated contact with the defendants regarding the negotiation of the alleged contract. However, whether the contract was entered into in the forum state, and whether the defendant initiated the contacts are only two factors to the analysis, and neither [*14] is absolutely necessary for a finding of jurisdiction over the defendants, particularly when negotiations over the contract occurred in Illinois and performance was contemplated in Illinois. *See Sky Valley Ltd. P'ship v. ATX Sky Valley, Ltd.*, 776 F. Supp. 1271, 1275 (N.D. Ill. 1991) (holding that substantial negotiations occurring in Illinois over a contract were sufficient to support personal jurisdiction even though the contract was not actually entered into in Illinois.); *Continental Bank N.A. v. Everett*, 742 F. Supp. 508, 511 (N.D. Ill. 1990), *aff'd*, 964 F.2d 701 (7th Cir. 1992).

Defendants make several arguments why the particular contacts with Illinois are not sufficient to support a finding of personal jurisdiction. They claim that an exchange of telephone calls and correspondence with a person in the forum state is not enough to support a finding of personal jurisdiction. (Mem. Law Supp. Defs.' Mot. Dismiss at 4.) Defendants are correct in arguing that telephone calls and correspondence through the mail is insufficient, without anything else, to support a finding of personal jurisdiction. Two of the cases they cite in favor [*15] of their proposition are situations where the only contacts that could be construed as transacting business in the forum state were certain phone calls and correspondence. *Konicki v. Wirta*, 169 Ill. App. 3d 21, 27, 119 Ill. Dec. 692, 523 N.E.2d 160 (2d Dist. 1988);

*Gordon v. Tow*, 148 Ill. App. 3d 275, 281, 101 Ill. Dec. 394, 498 N.E.2d 718 (1st. Dist. 1986). The present case involves much more than mere phone calls and correspondence.

Defendants also argue that even if Plotkin negotiated terms of the oral contract in Illinois, the fact that he did not come to Illinois specifically to negotiate this contract somehow nullifies the effect of his negotiating the contract in Illinois for the jurisdictional analysis. Once again, defendants' argument fails to take into account the entire picture. Certainly jurisdiction would be improper if the only connection with the forum state is that the party negotiated terms of a contract otherwise completely unconnected to the forum state while in that state for reasons unrelated to the negotiations. *Kaye-Martin v. Brooks*, 267 F.2d 394, 397-98 (7th Cir. 1959).

However, in *Continental Bank N.A.* [*16] *v. Everett*, where defendants negotiated a contract in Illinois, executed it out of state, but did not come to Illinois specifically for the negotiations, the court saw "no reason to disregard these [in-state] meetings merely because [defendant] also conducted other business while in Illinois." 742 F. Supp. at 511. The *Continental* court determined that jurisdiction was proper based on "the combined weight of the factors" despite the fact that "no single factor standing alone would appear to be sufficient to support *in personam* jurisdiction over the defendants." *Id.* Similarly, in this case, this Court views the negotiation which took place in Illinois, regardless of the fact that defendant also conduct other business while in Illinois, as one factor among many supporting a finding of jurisdiction.

In summary, due to the various contacts between the defendants and Illinois, including negotiations of a contract occurring in the state, various correspondence to the defendants, and the likelihood that the contract would be performed in Illinois, the Court finds jurisdiction over the defendants in Illinois as to their contract claims based on 5/2-209(a)(1), [*17] the Illinois long-arm statute's "transaction of business" clause.

Defendants' conduct in Illinois, which amounts to the transaction of business in the state, allows the court to assert jurisdiction over both the plaintiff's tort claims (Counts III, IV, and V) as well as its contract claims. The Illinois long-arm statute states that plaintiffs can assert only causes of action "arising from" acts on which jurisdiction is based. 735 ILL. COMP. STAT. 5/2-209(f) (2002). Thus, the question is whether the defendants' actions in transacting business in Illinois give rise to the plaintiff's tort claims as well as its contract claims.

"The statutory phrase 'arising from' requires only that the plaintiff's claim be one which lies in the wake of the commercial activities by which the defendant submit-

ted to the jurisdiction of the Illinois courts.'" *In re Oil Spill by Amoco Cadiz off Coast of France on March 16, 1978*, 699 F.2d 909, 915 (7th Cir. 1983) (quoting *Koplin v. Thomas, Haab & Botts*, 73 Ill. App. 2d 242, 253, 219 N.E.2d 646 (1966)). "A cause of action need not be contractual to be within [the long-arm statute]." *Id.* In *In re Amoco*, the plaintiffs [*18] asserted certain tort claims relating to an oil spill in France over both the operator of the tanker, Amoco, an Illinois-based company and the builder of the ship, Astilleros, a Spanish company. Amoco also cross-claimed against Astilleros for indemnity and contribution. In re Oil Spill by Amoco Cadiz off Coast of France, 699 F.2d at 912. The only basis for jurisdiction for Astilleros was under the predecessor of section 5/2-209(a)(1), the Illinois long-arm statute providing for jurisdiction over parties who transact business in Illinois. Astilleros had negotiated and signed the contract to build the ship in Illinois. *Id.* at 914. Judge Posner, writing for the court, ruled that although Amoco's claim against Astilleros for indemnity was not strictly an action in contract, it had "the form of a contractual argument-- enough so that it can be said to 'arise from' the negotiation and signing of the shipbuilding contract." *Id.* at 915. Thus, jurisdiction was proper over that claim under the Illinois long-arm statute. In regard to the French plaintiffs' tort claims, although stating that "the relationship between the contract signed in Illinois and the oil spill is looser" than that between the contract and Amoco's indemnity claims, [*19] *id.* at 917, the court held that the tort claims arose from the contract to build the ship because "the negotiation and signing of the contract were critical steps in the chain of events that led to the oil spill." *Id.*

The present case involves tort claims, and the parties dispute whether or not the injury sustained occurred in Illinois. However, an inquiry into the situs of the injury is irrelevant because as in *Amoco*, the alleged injuries all arise from the business transactions in Illinois. Furthermore, the injuries the plaintiffs allege in this case are much more clearly connected to the oral contract than the injuries to the French plaintiffs in *Amoco* were connected to the contract in that case. Each of the plaintiff's three tort claims in this case specifically rely on a finding that the defendants engaged in certain business transactions in Illinois. Because the alleged tort claims all arise from the defendants' business transactions in Illinois, jurisdiction over the defendants on those claims is proper based on section 5/2-209(a)(1), and the Court need not consider whether there was a "commission of a tortious act within this State," so as to base jurisdiction [*20] on section 5/2-209(a)(2).

The Court also finds that its assertion of jurisdiction over the defendants meets the "due process" requirements of the U.S. Constitution. To comport with due process requirements two factors must be satisfied. First, the defendant must have the requisite "minimum contacts" with the forum: "the defendant's conduct and connection with the forum State must be such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980)). Second, in light of the defendant's contacts with the forum, the assertion of jurisdiction must comport with "fair play and substantial justice." 471 U.S. at 477. After a showing of the necessary minimum contacts, to show that jurisdiction would not comport with "fair play and substantial justice," the burden is on the defendant to present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.*

In this case, the alleged conduct of defendants was [*21] such that they should have reasonably anticipated being haled into court in Illinois. At the time of the agreement, it seemed the defendants would invest a significant sum in a company doing business in Illinois. (Compl. P 30.) The name of the company in which the defendants were to potentially become a large shareholder, "Chicago 216e", which they knew to be an Illinois business, should have been a reasonable tip off that they might be haled into court in Illinois regarding their agreement to invest. Furthermore, the defendants have presented no compelling case why jurisdiction in Illinois would be unreasonable notwithstanding their contacts with the state. Therefore, jurisdiction in Illinois comports with the due process requirements of the U.S. Constitution. [1]

1    "Illinois court have held that the long-arm statute is narrower in scope than the constitutional due process test; by satisfying the requirements of the Illinois long-arm statute, the plaintiff necessarily satisfies the "minimum contacts" test set forth in *International Shoe* and its progeny." *See Cont'l Bank*, 742 F. Supp. at 512 (citing *Arthur Young & Co. v. Bremer*, 197 Ill. App. 3d 30, 35, 143 Ill. Dec. 736, 554 N.E.2d 671 (1990); *Green v. Advance Ross Elecs. Corp.*, 86 Ill.2d. 431, 436-37, 56 Ill. Dec. 657, 427 N.E.2d 1203 (1981)).

[*22] **II. Motion to Dismiss for Improper Venue**

The Court also denies defendants' motion to dismiss for improper venue. Venue in a diversity action is proper in "any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2) (2002). The plaintiff bears the burden of establishing that venue is proper. *Nagel v. ADM*

*Investor Servs., Inc.*, 995 F. Supp. 837, 843 (N.D. Ill. 1998). A majority of the events giving rise to the claim need not occur in a particular venue, only a "substantial part." *Pasulka v. Sykes*, 131 F. Supp. 2d 988, 994 (N.D. Ill. 2001). On a motion to dismiss under Rule 12(b)(3), the court takes all the allegations in the complaint as true unless contradicted by the defendant's affidavit and can examine facts outside the complaint. *Id.* The court must resolve factual conflicts and draw reasonable inferences in the plaintiffs favor. *Id.*

A substantial portion of the events giving rise to plaintiff's claims occurred in Illinois. The parties contracted for a potential investment in Illinois. They negotiated the contract over the phone [*23] in various communications made to and from Illinois, and the agent of the defendant engaged in discussions over the contract while in Illinois. Plotikin's affidavit admits that these discussions occurred. (Plotkin Aff. PP 11-12.) These communications led to the formation of the allegedly breached contract. They are sufficient to support venue in Illinois. *See Pasulka*, 131 F. Supp. 2d 988 at 994 (stating that "venue under [§ ] 1391(a)(2) may be satisfied by a communication to or [from] the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action."). In *Pasulka v. Sykes*, the Court held that venue was proper where the only connection the defendant had to Illinois was speaking on the telephone with the plaintiff on numerous occasions. *Id.* Because in this case, substantial events giving rise to the claims, including telephone conversations, e-mails, and face-to-face negotiations, occurred in Illinois, venue is proper. Thus, defendants' motion to dismiss based on Rule 12(b)(3) is denied.

### III. Motion to Dismiss for Failure to State a Claim

In reviewing motions to dismiss, the [*24] court must accept the plaintiff's well-pleaded allegations as true and resolve any ambiguity in the plaintiff's favor. *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1429 (7th Cir. 1996). The complaint must allege facts sufficiently setting forth the essential elements of the cause of action. *Bensdorf & Johnson, Inc. v. N. Telecom Ltd.*, 58 F. Supp. 2d 874, 877 (N.D. Ill. 1999). The court should not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). However, where fraud is alleged, the pleading standard is higher, and the circumstances involving the fraud must be stated with particularity. FED. R. CIV. P. 9(b).

The Court denies the motion to dismiss with respect to Count I of the complaint because the plaintiff alleges facts sufficiently setting forth the elements of a breach of contract. To survive a motion to dismiss a breach of contract claim, the complaint must satisfy the liberal federal notice pleading standard. *Quantum Color Graphics, LLC v. Fan Ass'n Event Photo GmbH*, 185 F. Supp. 2d 897, 905 (N.D. Ill. 2002). [*25] "General allegations of the existence of the contract, defendant's breach, and damages from the breach are sufficient." *Id.*

Defendants' major argument in support of their motion is that the facts the plaintiff alleges are not sufficiently definite. The Court disagrees. Plaintiff alleges a contract in which they orally agreed to invest in BBN and help BBN sell its franchise business so that BBN could repay defendants, and in consideration for this defendants agreed to invest some of the money they were repaid in plaintiff's company. (Compl. PP 28-30.) Plaintiff alleges that the contract was breached when defendants did not make the investment and that they were damaged by this breach. Given the liberal notice pleading requirements of Rule 8(a), these allegations are sufficient to establish a claim for breach of contract.

Defendants also argue that plaintiff's breach of contract claim is deficient because it does not allege adequate consideration. They posit that plaintiff bases its allegation of consideration on the payment of $ 650,000 from BBN to the defendants, which the defendants were to then invest in plaintiff. Defendants argue that this is inadequate consideration under [*26] "hornbook law" because BBN was already obligated to pay the defendants that money. The Court disagrees. BBN may have been obligated to pay $ 650,000 to defendants, and BBN could not base consideration for a subsequent contract on a promise to pay that same money. However, Chicago 216 was not obligated to defendants in any way. It was under no obligation to invest in BBN and enable it to make its payments to defendants. In this way, plaintiff was acting analogously to a guarantor of a pre-existing debt who takes additional consideration for his promise to guarantee another's obligations. There is no question that under Illinois law parties can enter into contracts to guarantee another's pre-existing debt for additional consideration. *See Cont'l Nat'l Bank of Fort Worth v. Schiller*, 89 Ill. App. 3d 216, 219, 44 Ill. Dec. 471, 411 N.E.2d 593 (3d Dist. 1980). Accordingly, the Court denies defendants' Rule 12(b)(6) motion to dismiss Count I.

Next, the Court grants defendants' motion to dismiss Count II. The elements of equitable estoppel are 1) a misrepresentation of a material fact; 2) defendant's knowledge that the representation was untrue; 3) plaintiff did not know [*27] the misrepresentations were untrue; 4) defendant reasonably expected plaintiff would rely on the misrepresentation; 5) plaintiff relied on the misrepresentations in good faith; and 6) plaintiff would be prejudiced if defendant denied the truth of the representations.

*In re Marriage of Schmidt*, 292 Ill. App. 3d 229, 241, 226 Ill. Dec. 152, 684 N.E.2d 1355 (4th Dist. 1997). Equitable estoppel is different from promissory estoppel in that equitable estoppel involves misrepresentations of existing fact, and promissory estoppel involves promises of future action. *Derby Meadows Util. Co., Inc. v. Inter-Cont'l Real Estate*, 202 Ill. App. 3d 345, 360, 147 Ill. Dec. 646, 559 N.E.2d 986 (1st. Dist. 1990). [2] The only misrepresentation of an existing fact that plaintiff alleges in its complaint is that Plotkin represented to it that he was the agent of and had authority to bind defendants. (Compl. P 50.) The alleged misrepresentation is insufficient to support a claim of equitable estoppel. Even if Plotkin had made misrepresentations that led plaintiff to believe that he had authority to bind defendants, it would not independently support a claim of equitable [*28] estoppel, because these misrepresentations alone did not induce plaintiff to act pursuant to the oral agreement. [3] The alleged promises that defendant would invest in Chicago 216 in the future induced plaintiff to act. In its opposition brief, plaintiff itself makes this argument, and argues that defendant should be estopped because of their "false misrepresentations regarding Defendants' intent to invest in Chicago." (Pl.'s Opp'n Def.'s Mot. Dismiss at 14.) These promises do not support a claim of equitable estoppel because they are not misrepresentations of existing conditions but promises of future actions. Thus, plaintiff asserts equitable estoppel in its complaint and argues for promissory estoppel in its briefs. The facts asserted in the complaint do not give rise to equitable estoppel. Count II is therefore dismissed without prejudice. Plaintiff, in its opposition brief, seems to argue that promissory estoppel applies. "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984). If plaintiff wishes to amend the complaint to plead promissory [*29] estoppel, it can do so by moving for leave to amend the complaint.

2   The Court notes that the Seventh Circuit has questioned whether Illinois courts continue to maintain a distinction between equitable and promissory estoppel. *See Geva v. Leo Burnett Co., Inc.*, 931 F.2d 1220, 1223 n.3 (7th Cir. 1991) ("Illinois at one time maintained a distinction between promissory and equitable estoppel, but those doctrines seem to overlap in great part today.") (citing *R.S. Bennett & Co. v. Economy Mechanical Indus., Inc.*, 606 F.2d 182, 187 n.5 (7th Cir. 1979); *Gold v. Dubish*, 193 Ill. App. 3d 339, 347-48, 140 Ill. Dec. 9, 549 N.E.2d 660 (1989)). However, since the *Burnett* case, Illinois cases have reinforced the distinction between promissory and equitable estoppel as being that

promissory estoppel is based on a promise of future action, and equitable estoppel is based on a misrepresentation of existing face. *See In re Marriage of Schmidt*, 292 Ill. App. 3d 229, 240-42, 226 Ill. Dec. 152, 684 N.E.2d 1355 (4th Dist. 1997); *Dickens v. Quincy College Corp.*, 245 Ill. App. 3d 1055, 1062-63, 185 Ill. Dec. 822, 615 N.E.2d 381 (4th Dist. 1993).

[*30]

3   Furthermore, the alleged misrepresentations as to Plotkin's authority were made by Plotkin and not defendants. If Plotkin had no authority whatsoever under agency law and misrepresented that he had authority, then any misrepresentations he made would not be binding on the defendants. Only misrepresentations made by a defendant, or someone acting with authority for the defendant, can give rise to equitable estoppel against the defendant. *Bd. of Educ. S. Stickney Sch. Dist. No. III v. Murphy*, 56 Ill. App. 3d 981, 985, 14 Ill. Dec. 620, 372 N.E.2d 899 (1st. Dist. 1978).

The Court also dismisses Count III because plaintiff has not pleaded defendants' allegedly fraudulent misrepresentations with sufficient particularity under Rule 9(b). The elements of a claim for fraudulent misrepresentation are "1) that the defendant made a statement; 2) of a material nature; 3) which was untrue; 4) known by the person making it to be untrue, or made in culpable ignorance of its truth or falsity; 5) relied on by the victim to his detriment; 6) made for the purpose of inducing reliance; and 7) [*31] the victim's reliance led to his injury. *Bensdorf*, 58 F. Supp. 2d at 881. Illinois law permits causes of action based on promissory fraud if the plaintiff alleges and ultimately proves that the fraudulent representation is part of a scheme to defraud. The defendant must have intended for his misrepresentation to induce the plaintiff to act in reliance on the misrepresentation for the defendant's benefit. *Id.* However, Rule 9(b) requires that "the circumstances constituting fraud . . . shall be stated with particularity." FED. R. CIV. P. 9(b). To meet the Rule 9(b) requirement, when the fraud is based on false misrepresentations, the plaintiff must state "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni* Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992). In other words, the plaintiff must plead the "who, what, where, and when" of the alleged fraud. *Id.*

Plaintiff's fraud claim must be dismissed because it has not pleaded the misrepresentations with adequate particularity. Plaintiff [*32] alleges generally that defendants misrepresented to Chicago 216 and its agent Rubio that they would make the investment at issue in

this case. However, the most specific the plaintiffs are regarding the when and where of these misrepresentations is that they occurred in "numerous telephone conversations and meetings in Encino, California and Pompano Beach, Florida, in December, 2000 and January, 2001" with Plotkin. (Compl. P 26.) The complaint also mentions the meeting between Plotkin and Rubio in Chicago. However, the complaint does not list the date for this meeting, which occurred on April 26, 2001 according to Plotkin's affidavit. (Compl. P 12; Plotkin Aff. P 11.) Furthermore, although the complaint speaks generally about Plotkin binding defendants in an oral contract through these discussions, it gives no information as to when defendants Kum and Mammen discussed the terms of the alleged contract or made false and fraudulent representations to Chicago 216. The complaint only says very generally that "Kum and Mammen each made false representations to Chicago and its agent Rubio." (Compl. P 53.) The complaint does not even say whether or not Kum and Mammen ever personally met any [*33] representative of Chicago 216, and it is only through Plotkin's affidavit that the Court knows that such a meeting did take place. Nor does the complaint specify which defendant made which misrepresentations. "Where the plaintiff alleges that multiple defendants committed a fraud, the complaint may not simply lump all the defendants together, but must specify which defendant committed which allegedly fraudulent act." *TLMS Motor Corp. v. Toyota Motor Distribs., Inc.*, 912 F. Supp. 329, 334 (N.D. Ill. 1995). Although these general allegations are sufficient to put the defendants on notice for a claim of breach of oral contract, they do not meet the more stringent requirements of Rule 9(b) regarding fraud. Claim III is therefore dismissed without prejudice.

Similarly, plaintiff's civil conspiracy claim (Count IV) is also dismissed without prejudice. "A conspiracy is not an independent tort. Where . . . a plaintiff fails to state an independent cause of action underlying its conspiracy allegations, the claim for a conspiracy also fails." *Indeck N. Am. Power Fund, L.P. v. Norweb plc*, 316 Ill.

App. 3d 416, 432, 735 N.E.2d 649, 249 Ill. Dec. 45 (1st Dist. 2000). Plaintiff bases its conspiracy [*34] claim on its fraud claim. (Compl. P 62.) Because the fraud claim fails, the conspiracy claim fails as well.

The Court also dismisses plaintiff's claim for tortious interference with prospective economic advantage (Count V) without prejudice. Both parties agree that plaintiff has not properly plead the elements of this cause of action. Specifically, this tort requires "a showing of action by the defendants toward a third party." *Williams v. Weaver*, 145 Ill. App. 3d 562, 570, 99 Ill. Dec. 412, 495 N.E.2d 1147 (1st Dist. 1986). Plaintiff admits that its claim is inadequate because it does not allege any action by defendants toward a third party. Accordingly, the Court dismisses Count V without prejudice. [4]

> 4   The Court reserves judgment as to whether it will grant plaintiff leave to amend the complaint with regard to Count V. The Court will make that determination if and when plaintiff moves for leave to amend the complaint.

## CONCLUSION

For the foregoing reasons, the Court grants in [*35] part and denies in part defendants' motion to dismiss [doc. no. 5-1]. The Court denies the motion to dismiss based on Rule 12(b)(2) and 12(b)(3). The Court grants the motion to dismiss based on Rule 12(b)(6) as to Counts II, III, IV, and V and dismisses those counts without prejudice and denies the Rule 12(b)(6) motion as to Count I.

**SO ORDERED**

**ENTERED:** 10/30/02

**HON. RONALD A. GUZMAN**

**United States Judge**

# EXHIBIT C

LEXSEE 2007 U.S. DIST. LEXIS 29995



Cited
As of: Aug 29, 2008

### GENCOR PACIFIC, INC., Plaintiff, vs. NATURE'S THYME, LLC, and GORDON GIBBS, and ADAM GIBBS, Defendants.

### 07 C 167

### UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

### 2007 U.S. Dist. LEXIS 29995; Copy. L. Rep. (CCH) P29,369

**April 24, 2007, Decided**
**April 24, 2007, Filed**

**COUNSEL:** [*1]  For Gencor Pacific, Inc., a Texas Corporation, Plaintiff: Rakesh Mahendra Amin, LEAD ATTORNEY, Weaver & Amin, Chicago, IL; Avaneesh Marwaha, Amin Law LLC, Chicago, IL; Ryan Mathew Kaiser, Amin Hallihan, LLC, Chicago, IL.

For Nature's Thyme, LLC, Gordon Gibbs, Adam Gibbs, Defendants: Alfred V. Gelen, Alfred V. Gellene, Esq., Denville, NJ.

**JUDGES:** Charles P. Kocoras, United States District Judge.

**OPINION BY:** Charles P. Kocoras

**OPINION**

**MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the motions of Defendants Nature's Thyme LLC, Gordon Gibbs, and Adam Gibbs to dismiss the complaint of Plaintiff Gencor Pacific, Inc. ("Gencor") pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3). For the reasons set forth below, the motions to dismiss are granted. [1]

> 1   The briefing schedule set in this matter contemplated a reply from Nature's Thyme. One was filed, but past the set deadline, prompting Gencor to move that it be stricken. The motion was granted. As a result, the assertions contained

within the reply played no role in the decision contained herein.

[*2] **BACKGROUND**

According to the complaint, Gencor is a Texas corporation with its principal place of business in Austin, Texas. Gencor manufactures an appetite suppressant and weight-loss promoter containing a *Caralluma Fimbriata* extract. To substantiate its claims of the product's efficacy, Gencor conducted clinical and laboratory trials, the findings of which were detailed in various studies and reports. It owns the copyrights, and all other rights, in these documents and uses them to market its *Caralluma* extract.

Nature's Thyme is a New Jersey corporation with its principal place of business in Cedar Knolls, New Jersey. Defendant Gordon Gibbs is its Chief Executive Officer; Defendant Adam Gibbs, its Vice President in Charge of Operations. Nature's Thyme sells a powdered product that contains *Caralluma Fimbriata*. Gencor alleges that Nature's Thyme used portions of its studies to support Nature's Thyme's claims about the composition and efficacy of its *Caralluma* product without Gencor's consent. The allegedly infringing and misleading documents were contained in marketing materials on a computer disk Nature's Thyme supplied to consumers.

On January 10, 2007, Gencor [*3]  filed a five-count complaint in this court. Count I alleges that Nature's Thyme's use of the study contents in its marketing materials constituted false advertising under the Lanham Act

Case 1:08-cv-04388   Document 26-3   Filed 08/29/2008   Page 3 of 18

Page 2

2007 U.S. Dist. LEXIS 29995, *; Copy. L. Rep. (CCH) P29,369

(15 U.S.C. § 1125(a)). Count II alleges common law unfair competition against all Defendants. Count III contends that Nature's Thyme was unjustly enriched by their use of Gencor's materials. Counts IV and V allege federal and common law copyright infringement, respectively.

Nature's Thyme and the Gibbses now move to dismiss Gencor's complaint for lack of personal jurisdiction and improper venue. Because of the nature of Gencor's challenge, we may look beyond the allegations of the complaint and consider properly supported factual assertions made by both parties. *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1275 (7th Cir. 1997). Any factual disputes must be resolved in favor of Gencor, but unrefuted assertions from Nature's Thyme will be considered to be true. *Id.*

### I. Motion to Dismiss for Lack of Personal Jurisdiction

#### A. Legal Standard

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of making [*4] a prima facie showing that jurisdiction over the defendant is proper. *RAR,* 107 F.3d at 1276. In a federal question case, a personal jurisdiction inquiry has two components: first, an examination of whether a defendant are amenable to service of process; and second, whether an exercise of extraterritorial jurisdiction would comport with the defendant's due process rights. *Swaim v. Moltan Co.,* 73 F.3d 711, 719-20 (7th Cir. 1996).

The first component, amenability to service, is determined in federal cases according to Fed. R. Civ. P. 4(k)(1). *Inter alia,* the rule provides that defendants are amenable to service in a federal case if they would be subject to the jurisdiction of a state court in the state in which the district court sits or if the suit is brought under a statute that explicitly provides for nationwide service. Fed. R. Civ. P. 4(k)(1)(A), (D).

With regard to the second component, the exercise of jurisdiction over a non-resident defendant comports with federal due process if the defendant has "purposefully established minimum contacts within the forum State. [*5] " *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). Once the level of contact with a forum state reaches a certain point, a party should understand that the trade-off for the privilege of conducting its activities is that it can be haled into that state's courts to answer for its actions. *Id.* at 474, 475. The level of contact necessary will depend on several factors. One consideration is whether the plaintiff asserts that the court has specific personal jurisdiction, meaning that the cause of action arises from the activities within the forum state, or general personal ju-

risdiction, meaning that the cause of action is unrelated to the defendant's activities in the forum state. In addition, factors other than the burden on the defending party can come into play, such as the interest of the forum state in adjudicating the dispute in its courts, allowing the plaintiff to obtain convenient and effective relief, and the interest of the interstate judicial system in efficient resolution of controversies that can be addressed in multiple fora. *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). No matter how these [*6] factors combine, however, due process mandates that maintenance of the suit in the forum is consistent with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945).

#### B. Discussion

Our first area of attention in assessing the 12(b)(2) motion must focus on whether Nature's Thyme and the Gibbses are amenable to service of process. Gencor has invoked two federal statutes, the Copyright Act and the Lanham Act; neither provides for nationwide service of process. Therefore, Nature's Thyme and the Gibbses are amenable to service only if they would be subject to the jurisdiction of an Illinois state court via the state's long-arm statute. 735 ILCS 5/2-209(c).

Two provisions of the long-arm statute are potentially at issue in this case. The first, subsection (a)(1), provides that a defendant submits to the jurisdiction of the Illinois courts if that party transacts business within Illinois. The second, subsection (c), allows an Illinois court to exercise jurisdiction over a nonresident defendant for any basis allowed by the Illinois and federal Constitutions not specifically addressed [*7] elsewhere in the long-arm statute. To date, no case has found any divergence between Illinois and federal due process with regard to personal jurisdiction and have evaluated jurisdictional questions using federal constitutional jurisprudence. *See, e.g., Bolger v. Nautica Int'l Inc.,* 369 Ill. App. 3d 947, 861 N.E.2d 666, 669 n.1, 308 Ill. Dec. 335 (Ill. App. Ct. 2007); *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 715 (7th Cir. 2002). None of the parties has asserted that this mechanism is insufficient in this case, so we shall employ it.

Gencor contends that Nature's Thyme should be subject to both specific and general personal jurisdiction. Specific personal jurisdiction exists when an asserted cause of action arises out of or is related to the defendant's contact with the forum state. *Id.* at 713. General jurisdiction is found when a defendant has such an extensive relationship with the forum state that it is in essence indistinguishable from a resident party. *IDS Life Ins. Co. v. SunAmerica Life Ins. Co.,* 136 F.3d 537, 540-41 (7th

Cir. 1998). When general jurisdiction is present, others may pursue any cause of action against a party in the state's courts, even [*8] if it is unconnected to the party's contacts. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415-16, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984).

The sum total of Nature's Thyme's contacts with Illinois are as follows: It has one customer in this state to whom a single sale of $ 300 worth of goods was made some time between late February 2007 and March 9, 2007. It has a practice of sending out general solicitations to prospective customers, one or two of which may have been sent to Illinois residents. It operates a website available to users in Illinois that advertises its *Caralluma* product. However, the company does not own any property in Illinois and has never had a relationship with another company in Illinois. Moreover, no solicitations containing the material referenced in Gencor's complaint were sent to Illinois.

1. Specific Jurisdiction

Gencor argues that the above contacts are sufficient to create specific jurisdiction [2] over Nature's Thyme. To properly assess this claim, we must focus on the nature of the claims Gencor makes against Nature's Thyme and the Gibbses. [3] Gencor's causes of action are targeted not at the sale of Nature's Thyme's *Caralluma* product [*9] but at the use of the information from the studies. Gencor alleges only that the infringing material was part of Nature's Thyme's marketing material on the physical disks that were shipped to customers. Gencor provides no evidence that the presentation disk that contained the offending material reached any consumers in Illinois. There is no assertion that these documents were available on Nature's Thyme's website.

> 2   The corresponding portion of the Illinois long-arm statute for this case would be 735 ILCS 5/2-209(a)(1), which provides for an exercise of jurisdiction when a cause of action arises from the transacting of business within Illinois.
> 3   Because Gencor has not offered any contacts that either of the Gibbses have outside of the company's contacts, we do not examine personal jurisdiction separately for those parties.

In the context of specific jurisdiction, business transactions completed in a context unrelated to the cause of action cannot be used to justify an exercise [*10] of personal jurisdiction. *RAR,* 107 F.3d at 1278. In this case, Nature's Thyme's single Illinois customer and the sporadic solicitations (that did not contain the allegedly infringing material) sent to Illinois are unrelated to the claims Gencor raises before this court. Furthermore, the additional factors identified by the Supreme Court

that can potentially reduce the amount of contact that will be required before an exercise of jurisdiction will comport with due process do not tilt the balance in Gencor's favor. *See World-Wide Volkswagen,* 444 U.S. at 292. Gencor is not an Illinois company, and there is no indication that Illinois customers were harmed by any action on the part of Nature's Thyme. Gencor has offered no reason why Illinois would be a more convenient forum for this litigation for it than Texas, its home forum, or New Jersey, Nature's Thyme's home state. Neither has Gencor given any rationale for us to conclude that resolution of this matter in an Illinois court would be more efficient than in a Texas or New Jersey court.

For all these reasons, we conclude that the contacts Nature's Thyme has with Illinois are not sufficiently connected [*11] to the causes of action Gencor has set out in its complaint to permit an exercise of specific personal jurisdiction over Nature's Thyme.

2. General Jurisdiction

As an alternative position, Gencor also contends that the contacts Nature's Thyme has with Illinois comprise a continuous and systematic pattern of behavior sufficient to expose it to general jurisdiction in Illinois courts, i.e., jurisdiction even over actions not related to its contacts. [4]

> 4   The applicable section of the Illinois long-arm statute for exercising general jurisdiction over a party like Nature's Thyme is 735 ILCS 5/2-209(b)(4).

Two seminal Supreme Court cases analyzed the issue of what sort of contacts with the forum state would be sufficient to establish general jurisdiction over an out-of-state defendant. *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 72 S. Ct. 413, 96 L. Ed. 485, 63 Ohio Law Abs. 146 (1952); *Helicopteros,* 466 U.S. at 408. In *Perkins,* the president of a Philippine mining corporation [*12] maintained an office in Ohio from which he conducted activities on behalf of the company during the Japanese occupation of the Philippines in World War II. *Perkins,* 342 U.S. at 448-49. These activities included keeping company files, holding meetings, carrying on correspondence, distributing checks drawn on Ohio bank accounts, and doing business with an Ohio bank. *Id.* The Court held that this level of activity established continuous and systematic business in Ohio and general jurisdiction was appropriate. *Id. Helicopteros* involved a wrongful death suit in Texas against a Colombian company for a fatal accident that occurred in South America. The company had some connection to Texas in that it sent its chief executive officer to Houston to conduct contract negotiations, sent its personnel to Fort Worth for training, accepted checks drawn from a Houston bank account, and purchased over $ 4 million

Case 1:08-cv-04388    Document 26-3    Filed 08/29/2008    Page 5 of 18

Page 4
2007 U.S. Dist. LEXIS 29995, *; Copy. L. Rep. (CCH) P29,369

worth of helicopters and accessories from a company based in Fort Worth. *Helicopteros,* 466 U.S. at 409-11. However, because the contacts were too sporadic to be analogous to the conduct seen in *Perkins,* the Court concluded that they were insufficient [*13] to justify Texas' assertion of general jurisdiction over the foreign defendant. *Id.* at 418.

Gencor contends that three things establish a continuous and systematic pattern of behavior by Nature's Thyme akin to that discussed in *Perkins.* The first is Nature's Thyme's single sale to an Illinois customer in Illinois. The second is the handful of general solicitation notices that may have been sent to Illinois. The third is the fact that Nature's Thyme maintains a website that allows customers to request information about its products and at one time permitted online ordering. Gencor also speculates that Nature's Thyme must have had more contact than what Nature's Thyme has described, as it is "common knowledge that not all sales leads result in sales" and Chicago's prominence as a business center must mean that Nature's Thyme has done significant business here.

The evidence that Gencor offers in support of its argument for general jurisdiction, with the possible exception of Nature's Thyme's website, could not even rise to the level deemed insufficient in *Helicopteros,* let alone approach the kind of conduct set out in *Perkins.* Nature's Thyme does not maintain [*14] an office in Illinois. There is no evidence that it conducts meetings in Illinois, has an Illinois bank account, or sends employees to Illinois. Thus, if Gencor's claims of personal jurisdiction are to succeed, they will have to find their foundation in Nature's Thyme's online activities.

If the activities conducted on a website or the Internet are extensive and frequent enough, they can form the basis for an exercise of general jurisdiction. *See, e.g., Gorman v. Ameritrade Holding Corp.,* 352 U.S. App. D.C. 229, 293 F.3d 506, 513 (D.C. Cir. 2002). The exact range of virtual business that can be conducted on Nature's Thyme's website is not clear from the parties' submissions. It is apparent that, at some point since the site's launch in 2001, customers were able to order products using online ordering mechanisms. It is also evident that customers can request information from Nature's Thyme via the website. The Illinois state courts have adopted a "sliding scale" approach to a defendant's internet activity and personal jurisdiction. *See Rosier v. Cascade Mountain, Inc.,* 367 Ill. App. 3d 559, 855 N.E.2d 243, 305 Ill. Dec. 352 (Ill. App. Ct. 2006); *Bombliss v. Cornelsen,* 355 Ill. App. 3d 1107, 824 N.E.2d 1175, 291 Ill. Dec. 925 (Ill. App. Ct. 2005). [*15] The scale classifies Internet activity into one of three categories. On one end of the spectrum is the "active" website, where the defendant clearly transacts a significant amount business over the

internet. *Bombliss,* 824 N.E.2d at 1180. On the other end is the "passive" site, which allows no interaction with a customer. *Id.* The "middle ground" is occupied by interactive websites where the user can exchange information with the defendant operator. *Id.* In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the website. *Id.*

In addition, the Illinois appellate courts have emphasized the necessity for a website to actually be used by Illinois residents before it can lead to an exercise of general jurisdiction. *Rosier,* 855 N.E.2d at 250. In *Rosier,* the out-of-state ski and snowboard facility maintained a website accessible to Illinois residents that allowed users to subscribe to e-mail bulletins and purchase gift certificates, season passes, insurance, and equipment rental. *Id.* at 249. The court noted that while [*16] the website provided for online purchasing, the plaintiff failed to offer evidence that the website was being used for actual purchases. *Id.* The plaintiffs did not cite any commercial transactions with Illinois residents through the website. *Id.* Consequently, the website presence in Illinois was an insufficient basis for exerting general jurisdiction over the nonresident defendant. *Id.* at 250.

In this case, Gencor has shown that Nature's Thyme used its website to post information about its products in a centralized location where Internet users, in Illinois or elsewhere, could access it without any further action from Nature's Thyme. It allowed users to contact Nature's Thyme for additional information and product quotes. At some point, it was possible for users to purchase products using online ordering and payment. However, there is no evidence that any Illinois users ever requested quotes or purchased goods via the website. Without such evidence, Illinois law does not permit an exercise of general jurisdiction. *Id.* Moreover, as the Seventh Circuit has pointed out, general jurisdiction is only appropriate over a nonresident defendant when that party [*17] is so like a resident business that the degree of benefit it derives from the services and protection of the forum state is nearly identical to that enjoyed by resident parties. *IDS Life,* 136 F.3d at 540-41. To reach this threshold of similarity, Nature's Thyme's Illinois-related activities would need to exhibit the permanent, continuous, systematic contact that would be seen with a resident business. *See Helicopteros,* 466 U.S. at 416; *Michael J. Neuman & Assocs., Ltd. v. Florabelle Flowers, Inc.,* 15 F.3d 721, 724 (7th Cir. 1994). Though the online activities Gencor points to are certainly some of the activities that a business that was a resident of Illinois would engage in, they cannot be said to be so extensive and central to the business's operation that Nature's Thyme becomes indistinguishable from a resident business. As a result, we conclude that an exercise of general

2007 U.S. Dist. LEXIS 29995, *; Copy. L. Rep. (CCH) P29,369

personal jurisdiction over Nature's Thyme would not be consistent with due process. Because neither specific nor general personal jurisdiction is available in this case, Nature's Thyme and the Gibbses are not amenable to service of process under the Illinois long-arm [*18] statute, and an exercise of personal jurisdiction would not be consistent with the defendants' due process rights. Accordingly, the 12(b)(2) motion to dismiss for lack of personal jurisdiction is granted.

## II. Motion to Dismiss for Improper Venue

In general, venue in federal question cases is proper in a district where a defendant resides, if all defendants are residents of the same state; in a district where a substantial part of the acts or omissions from which the claim emanates occurred; or in any district where any defendant may be found if venue cannot be established via either of the other two avenues. 28 U.S.C. § 1391(b). Further, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. 28 U.S.C. § 1391(c).

With the exception of Count IV, the causes of action asserted in the complaint fall within the ambit of § 1391(b). Nature's Thyme is a New Jersey corporation with its principal place of business in New Jersey. Gordon and Adam Gibbs also reside in New Jersey. This, combined with our conclusion that we [*19] do not have personal jurisdiction over any of the defendants, prevents a finding of proper venue under § 1391(b)(1). The events that gave rise to this claim did not occur in Illinois, so venue is also not proper under § 1391(b)(2). The final statutory subsection, § 1391(b)(3), is inapplicable because there are other districts, such as the District of New Jersey where the defendants reside, where venue would be proper.

For the copyright claim asserted in Count IV, venue is governed by 28 U.S.C. § 1400(a), which provides that it is proper in the district where the defendant resides or may be found. A defendant "may be found" only in districts where a court could properly exercise personal jurisdiction over that party. *Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co. Inc.,* 8 F.3d 441, 445 (7th Cir. 1993). Nature's Thyme, Gordon Gibbs, and Adam Gibbs are all residents of New Jersey, not Illinois, so venue is not proper under the first prong of § 1400(a). Because we have concluded that we do not have personal jurisdiction, the defendants may not be found in the Northern District of Illinois, so venue is not proper under the second statutory [*20] option either. 8 F.3d at 445.

Therefore, venue does not lie in this district, and the 12(b)(3) motion must be granted as well.

## CONCLUSION

For the foregoing reasons, the motions of Nature's Thyme, Gordon Gibbs, and Adam Gibbs to dismiss for lack of personal jurisdiction and improper venue are granted.

Charles P. Kocoras

United States District Judge

Dated: April 24, 2007

# EXHIBIT D

LEXSEE 2005 U.S. DIST. LEXIS 10366

**HYUNDAI MOTOR COMPANY d/b/a HYUNDAI MACHINE TOOLS AMERICA,
Plaintiffs, v. ILLINOIS NATIONAL INSURANCE CO., COSGRAVE VERGEER &
KESTER, LLP., Defendants.**

No. 04 C 7367

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION**

**2005 U.S. Dist. LEXIS 10366**

**May 12, 2005, Decided
May 12, 2005, Filed**

**COUNSEL:** [*1] For Hyundai Motor Company, Plaintiff: John Yo-Hwan Lee, McGuireWoods Ross & Hardies, Chicago, IL.

For Illinois National Insurance Company, Defendant: Jeffrey Alan Goldwater, Clay H. Phillips, Robert A. Chaney, Rostyslaw Jurij Smyk, Bollinger, Ruberry and Garvey, Chicago, IL.

For Cosgrave Vergeer & Kester, LLP., Defendant: William V. Johnson, Joseph R. Marconi, Victor J. Pioli, Johnson & Bell, Ltd., Chicago, IL.

**JUDGES:** SAMUEL DER-YEGHIAYAN, District Judge.

**OPINION BY:** Samuel Der-Yeghiayan

**OPINION**

*MEMORANDUM OPINION*

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Cosgrave Vergeer & Kester LLP's ("Cosgrave") motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) ("Rule 12(b)(3)"). For the reasons stated below, we grant the motion to dismiss pursuant to Rule 12(b)(3).

**BACKGROUND**

Plaintiff Hyundai Motor Company ("Hyundai") alleges that it purchased a commercial liability insurance policy from Defendant Illinois National Insurance Co.

("INIC"). Hyundai claims that on April 5, 2000, Scott Groth ("Groth") was killed while operating [*2] a V-5 Vertical Lathe Machine made by Hyundai. Hyundai alleges that it informed INIC of the accident and INIC took control of Hyundai's prospective legal defense. On September 8, 2000, the estate of Groth filed a wrongful death action against Hyundai ("Groth action") and Hyundai alleges that INIC undertook the defense of Hyundai in the Groth action. INIC allegedly retained Cosgrave to defend Hyundai and Jeffrey Johnson ("Johnson") was the lead counsel.

Hyundai alleges that on October 3, 2002, less than a month before trial, the parties in the Groth action participated in a mediation. Hyundai claims that during the mediation, the judge recommended a settlement amount and INIC's own counsel, who was present at the mediation, recommended accepting the settlement demand, but INIC refused to agree to pay the recommended settlement amount. According to Hyundai, shortly after the failed mediation, INIC informed Hyundai that it was terminating the services of Johnson and Cosgrave because INIC had discovered that Johnson was allegedly not prepared for the upcoming trial and was attempting to obtain a settlement to avoid discovery of his lack of trial preparation.

Hyundai claims that at that [*3] juncture it demanded that INIC settle with the plaintiff in the Groth action for an amount within the policy limits. Hyundai claims that INIC refused to settle in the Groth action and after INIC fired Cosgrave, INIC retained new counsel. However, according to Hyundai, the new counsel resigned within a week. Hyundai alleges that INIC then rehired Johnson and Cosgrave because it was unable to find other counsel for Hyundai. Hyundai claims that

when the trial began in the Groth action, its counsel from Cosgrave was unprepared for the trial. Hyundai alleges, for example, that when the trial began, its defense accident reconstruction expert had not even viewed the pertinent evidence or taken the necessary measurements to support his opinions. Hyundai claims that its expert was forced to view the evidence, which was kept in the court room during the trial, during the lunch hours of the trial. In the Groth action, the jury returned a verdict of $ 2.4 million in compensatory damages against Hyundai and its co-defendant Ellison Machinery Company Northwest, and $ 8 million in punitive damages against Hyundai. Hyundai brought the instant action and includes in its complaint a breach of contract [*4] claim against INIC (Count I), a negligence claim and breach of fiduciary duty claim against INIC and Cosgrave (Count II), and an unfair claim settlement practices claim under Oregon statutory law against INIC (Count III). Cosgrave has filed the instant motion to dismiss seeking to have all claims against Cosgrave dismissed.

## DISCUSSION

Cosgrave argues that venue is improper pursuant to 28 U.S.C. § 1391 which provides in part the following:

> (b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). The main basis underlying this entire action is the alleged malpractice committed by Cosgrave. [*5] The alleged acts and omissions of the malpractice by Cosgrave occurred in Oregon, rather than

Illinois. The Groth trial occurred in Oregon and Cosgrave made its trial preparations in Oregon. Hyundai alleges a violation of an Oregon statute and does not allege any Illinois statutory violation. The declaration of John Y. Lee, which is attached to Hyundai's answer, indicates that INIC managed the Groth litigation from its offices in New York and California, rather than in Illinois. (Lee Decl. par. 29-30). The decision not to pay the settlement demand in the Groth action was made in New York rather than Illinois and the other litigation decisions for the Groth action were made in New York and California rather than in Illinois. (Lee Decl. Par. 31, 35). INIC has one witness for the Groth action located in California and the rest of its witnesses and its files pertaining to the Groth action are located in New York. (Lee Decl. Par. 25).

Hyundai argues that Cosgrave made contact with INIC in Illinois, that Johnson visited Illinois on one occasion to speak with Hyundai officials, and that INIC hired Cosgrave from Illinois. However, such facts are not sufficient to render Illinois a proper [*6] venue. Neither are we persuaded by Hyundai's argument that INIC controlled Cosgrave from Illinois. It is clear that "a substantial part of the events or omissions giving rise to the" claims in the instant action, which overwhelmingly focus on the alleged malpractice in the Groth litigation, did not occur in Illinois and Illinois is not proper venue for this action. Hyundai should have filed the instant action in Oregon and should have known that Illinois was not a proper venue and therefore, we grant Cosgrave's motion to dismiss the instant action pursuant to 28 U.S.C. § 1406(a) since we do not find that justice requires a transfer of the action.

## CONCLUSION

Based on the foregoing analysis, we grant Cosgrave's motion to dismiss this action pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406(a).

Samuel Der-Yeghiayan

United States District Court Judge

Dated: May 12, 2005

# EXHIBIT E

LEXSEE 2004 U.S. DIST. LEXIS 5838



Cited
As of: Aug 29, 2008

**ILLINOIS BLOWER, INC., Plaintiff, v. DELTAK, L.L.C., Defendant.**

**No. 04 C 0341**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION**

**2004 U.S. Dist. LEXIS 5838**

**April 6, 2004, Decided
April 7, 2004, Docketed**

**DISPOSITION:**    [*1] Defendant's motion to transfer venue to Minnesota District Court granted.

**COUNSEL:** For ILLINOIS BLOWER, INC., plaintiff: Thomas John Verticchio, Sheryl Lynn Jaffee, Patrick Gerard Cooke, Patzik, Frank & Samotny, Ltd., Chicago, IL.

For DELTAK LLC, defendant: James M. Hoey, Clausen Miller P.C., Chicago, IL. Steven K Champlin, Angela M Hall, Dorsey & Whitney LLP, Minneapolis, MN.

**JUDGES:** David H. Coar, United States District Judge.

**OPINION BY:** David H. Coar

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Before this court is Deltak L.L.C.'s ("Deltak" or "Defendant") motion to transfer venue to the District Court of Minnesota pursuant to 28 U.S.C. § 1404 ("§ 1404(a)") For the reasons set forth below, Deltak's motion to transfer venue is GRANTED.

**I. FACTUAL AND PROCEDURAL HISTORY**

Plaintiff, Illinois Blower, Inc. ("IBI") is an Illinois corporation with its principal place of business in Cary, Illinois. (Pl. Comp. P2). IBI markets and sells industrial equipment, including ventilation fans and exhaust blowers. Id. Deltak is a Delaware limited liability company

with its principal place of business in Plymouth, Minnesota. (Pl. Comp. P3). Deltak manufactures and sells [*2] heat recovery steam generators ("HRSGs"), equipment that is used to make use of waste heat generated by industrial activities, such as electric power generation. (See Deltak's Memo. in Support of Motion to Transfer Venue, p. 1).

In early 2000, Deltak requested that IBI provide specialized fans to be used at some of Deltak's construction projects. (Pl. Comp. P6). Consequently, Deltak issued numerous purchase orders, which were filled by IBI. Id. After designing and manufacturing the fans according to Deltak's specifications, IBI delivered them to the Deltak project sites. (Pl. Comp. P7). Deltak contends it received complaints from its customers regarding work quality, and some of those complaints related to the IBI fans. (Pl. Comp. P8). IBI agreed to assist Deltak in resolving the problems that arose at its project sites. Id. To resolve those problems, IBI negotiated a Fan Repair Agreement ("Agreement") with Deltak. (Pl. Comp. P9). Under the Agreement, Deltak agreed to pay and contends that it did pay IBI certain sums and agreed to be responsible for the costs of certain replacement materials. (See Zack Aff.). Deltak contends that IBI promised that it would design a [*3] complete and satisfactory solution to the fan problems, and assume financial responsibility for work associated with the problem. (See Fan Repair Agreement). [1] IBI contends that it did provide Deltak with quality fans, parts and services, yet never received compensation for theses services. (Pl. Comp. PP10, 11). On December 15, 2003, Deltak sent a letter to IBI regarding the invoices and IBI's purported breach of the

Case 1:08-cv-04388   Document 26-3   Filed 08/29/2008   Page 12 of 18

Page 2
2004 U.S. Dist. LEXIS 5838, *

Agreement. (Zack Aff.). On December 17, 2003, IBI responded to Deltak by letter, demanding immediate payment of all allegedly outstanding invoices. (Zack Aff.; see also Hall Aff.; Def. Ex. 2).

> 1   The Fan Repair Agreement contains a choice of law and forum selection clause which states that "this Agreement shall be governed by the laws of the State of Minnesota. Venue for any disputes arising hereunder, at Deltak's option, may be the Courts of the State of Minnesota." (See Fan Repair Agreement).

Each letter was responded to with subsequent legal action. On January 13, 2004, Deltak served [*4] a summons and complaint upon IBI, claiming breach of the Fan Repair Agreement and breach of warranty, and seeking a declaration of the Parties' rights under the Agreement and purchase orders issued by Deltak. (See Hall Aff.; Def. Exs. 3 and 4). On January 16, 2004, IBI filed the action currently before this Court in the Northern District of Illinois. On January 24, 2004, IBI amended its Complaint in this Court pursuant to Fed.R.Civ.P. 15(a). Subsequently, Deltak's summons and complaint were filed in Minnesota State Court, Hennepin County District, on January 28, 2004. (See Hall Aff.; Def. Ex. 5). On February 11, 2004, IBI removed the case to the United States District Court for the District of Minnesota. (See Hall Aff.; Ex. 7). IBI answered Deltak's complaint on February 17, 2004. (See Hall Aff.; Ex. 9).

## II. ANALYSIS

IBI and Deltak do not dispute that the claims, parties and relief sought in their respective suits do not differ in any material respect. However, the Parties do dispute whether the Minnesota action or the Illinois action should be considered "first filed," which is a significant factor in determining [*5] where this cause of action should proceed. Additionally, the Parties dispute whether this cause of action should be transferred pursuant to § 1404(a). Therefore, this Court will address: (1) which action was "first filed"; and (2) whether the Illinois action should be transferred to the District of Minnesota pursuant to § 1404(a).

### A. Which Action Was "First Filed"?

It is undisputed that Deltak perfected service on Plaintiff in Minnesota State Court prior to IBI filing its Complaint in the Northern District of Illinois. However, IBI filed its Complaint in the Northern District of Illinois before Deltak filed its Complaint in Minnesota State Court. Therefore, the Court must determine, according to Eighth Circuit standards, whether a suit is filed after service is perfected, although no Complaint was filed before that service. [2]

> 2   Pursuant to Minn.R.Civ.P. 3.01, a civil action is commenced against a defendant when the summons is served upon the defendant. Pursuant to Minn.R.Civ.P. 5.04, the summons and complaint are required to be filed within a reasonable time after service upon defendant(s).

[*6]   "In cases of concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case as a matter of federal comity." Keymer v. Management Recruiters, Int'l Inc., 169 F.3d 501, 503 n.2 (8th Cir. 1999) (citing Northwest Airlines, Inc. v. American Airlines, Inc., 989 F.2d 1002, 1004-05 (8th Cir. 1993)). The "first filed rule" gives priority "to the party who first establishes jurisdiction" in order to conserve judicial resources and avoid conflicting rulings. Id.

There has been a dispute among the District Courts of the Eighth Circuits as to what actions "establish jurisdiction" for purposes of the first filed rule. Though authority exists for both positions, most courts consider the act of filing, rather than service, as determinative under the first filed rule. Fed. Cartridge Co. v. Remington Arms Co., 2003 U.S. Dist. LEXIS 23482, No. Civ. 03-6105, 2003 WL 23101805 at *2. (citing Hospah Coal Co. v. Chaco Energy Co., 673 F.2d 1161, 1163 (10th Cir. 1982) (use of date of filing of the complaint gives effect to Rule 3 of Federal Rules of Civil Procedure); Slidell, Inc. v. Archer Daniels Midland Co., 2003 U.S. Dist. LEXIS 15310, No. 02-4841, 2003 WL 22050776, [*7] at *5 (D. Minn. Sept. 2, 2003) (holding same). But see Red Wing Shoe Co. v. B-JAYS USA, Inc., 2002 U.S. Dist. LEXIS 11864, No. Civ. 02-257, 2002 WL 1398538 at *2 (using service date as priority criterion).; see also RK Dixon v. Dealer Mktg Servs., 284 F. Supp.2d 1204, 1215 n.14 (S. D. Iowa 2003) (citing Med-Tec Iowa, Inc. v. Nomos Corp., 76 F. Supp.2d 962, 968 n.3 (N.D. Iowa 1999) for the proposition that "the first court in which jurisdiction attaches means the first court in which a civil action is properly commenced."). While the Eighth Circuit has not directly addressed the issue of when jurisdiction first attaches, it has referenced filing dates, as opposed to dates of service, when addressing the first-filed rule. Fed. Cartridge Co., 2003 U.S. Dist. LEXIS 23482, 2003 WL 2310180 at *2 (citing Northwest, 989 F.2d at 1005; Anheuser-Busch, Inc. v. Supreme Int'l Corp., 167 F.3d 417, 418-19. (8th Cir. 1999). Though a close case, the majority of Eighth Circuit precedent dictates that jurisdiction does not attach until a complaint is actually filed, even if service was perfected prior to the filing of that complaint. Therefore, [*8] because IBI's Complaint was filed prior to Deltak's Complaint, IBI's was the first filed.

While the first-filed complaint is significant, the rule "is not intended to be rigid, mechanical, or inflexible."

Orthmann v. Apple River Campground, 765 F.2d 119, 121 (8th Cir. 1985). In fact, the Seventh Circuit does not rigidly adhere to the first-filed rule. Tripp Mfg. Co. v. American Power Conversion Corp., 46 F.3d 624, 629 (7th Cir. 1995). The Court may allow second-filed actions to proceed where it is favored by the interests of justice. Tempco Elec. Heater Corp. v. Omega Eng'g, Inc., 819 F.2d 746, 749-50 (7th Cir. 1987). Additionally, courts disfavor a first-filed suit if that suit is an improper anticipatory filing. "A suit for declaratory judgment aimed solely at wresting the choice of forum from the 'natural' plaintiff will normally be dismissed and the case allowed to proceed in the usual way." Allendale Mut. Ins. Co. v. Bull Data Systems, Inc., 10 F.3d 425, 431 (7th Cir. 1993) (citing Tempco, 819 F.2d at 747)). However, the Parties' submissions indicate that both IBI and Deltak may potentially [*9] have cognizable claims against the other; consequently, neither suit can be characterized as an improper anticipatory filing. Therefore, the Court will determine if any of the considerations of § 1404(a) mandate a transfer of this case to the District of Minnesota, even though IBI's Complaint was "first filed."

*B. Motion To Transfer Venue*

Pursuant to § 1404 (a), a court may transfer a civil action, "for the convenience of the parties and witnesses, in the interest of justice." Transfer under § 1404 (a) is appropriate if: (1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of parties and witnesses; and (3) transfer is in the interests of justice. Barnes v. Rollins Carriage Services, Inc., 976 F. Supp. 767, 768 (N.D. Ill. 1997). Whether a transfer is appropriate under § 1404(a) is left to the sound discretion of the trial court. Bryant v. ITT Corp., 48 F. Supp.2d 829, 832 (N.D. Ill. 1999) (citing Heller Fin., Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1293 (7th Cir. 1989)); Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219 (7th Cir. 1986)). Deltak, the moving [*10] party, has the burden of showing that "the transferee forum is clearly more convenient." Coffey, 796 F.2d at 219-20. Deltak and IBI do not dispute that venue is proper in both this Court and the District of Minnesota. Therefore, this Court will address whether transfer is for the convenience of the parties and witnesses, and in the interests of justice.

Courts consider four factors in determining whether transfer is convenient for the parties and witnesses: (1) the plaintiff's choice of forum; (2) the site of material events; (3) the availability of evidence in each forum; and (4) the convenience of the parties litigating in the respective forums. Barnes, 976 F. Supp. at 768. The second, third and fourth factors are relatively balanced between the parties, and weigh neither for nor against either IBI or Deltak. However, the first factor is significant

to IBI. IBI's choice of forum is Illinois, which is also its home forum. In general, a party's choice of forum is given substantial deference, particularly if that choice is also the plaintiff's home forum. Central States, Southeast & Southwest Areas Pension Fund v. Salasnek Fisheries, Inc., 977 F. Supp. 888, 890 (N.D. Ill. 1997). [*11] Therefore, IBI's choice of forum will be given substantial deference.

1. Does Transfer Serve the Interests of Justice?

Whether a transfer under § 1404(a) will serve the interests of justice "embraces traditional notions of judicial economy rather than the private interests of the litigants and their witnesses." Bryant, 48 F. Supp. 2d at 834 (quoting TIG Ins. Co. v. Brightly Galvanized Prods., 911 F. Supp. 344, 346 (N.D. Ill. 1996)). The court makes several considerations, including whether litigants are more likely to receive a speedy trial in one district or the other, if the litigation is related to other litigation in either forum, and in a diversity action, having a federal judge try the case who is familiar with the applicable law. Coffey, 796 F.2d at 221. The interests of justice "may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." Id. at 220. Most significant is the final factor, having a judge try the case who is familiar with the applicable law. The contract between the Parties expressly provides that all disputes are [*12] to be resolved according to Minnesota law. While this Court is able to address disputes that arise under the laws of other states, the fact remains that a Minnesota District Court, who must deal with Minnesota law with a significantly greater frequency than this Court, has the opportunity to hear the Parties' dispute. Therefore, this weighs in favor of transfer to the District of Minnesota.

2. Relevance of Forum Selection Clause

A forum selection clause in a contract does not mandate a transfer of venue. Newell Co. v. Lee, 950 F. Supp. 864 (N.D. Ill. 1997) (citing Heller & Co. v. Godbe Co., 601 F. Supp. 319, 321, n. 2 (N.D. Ill. 1984)). A court should consider a forum selection clause as one of many factors to consider in deciding a motion to transfer venue. Id. (citing G.H. Miller & Co. v. Hanes, 566 F. Supp. 305, 307 (N.D. Ill. 1983)). However, § 1404(a) may not be used to circumvent a valid forum selection clause. Id. (citing Northwestern Nat. Ins. Co. v. Donovan, 916 F.2d 372, 378 (7th Cir. 1990)). "The forum-selection clause...should receive neither dispositive consideration...nor no consideration. [*13] " Stewart Org. v. Ricoh Corp, 487 U.S. 22, 31, 101 L. Ed. 22, 108 S. Ct. 2239 (1988). The forum selection clause at issue in this case provides: this Agreement shall be governed by the laws of the State of Minnesota. Venue for any disputes arising hereunder, at Deltak's option, may be the

2004 U.S. Dist. LEXIS 5838, *

Courts of the State of Minnesota." (See Fan Repair Agreement). In this particular circumstance, it is significant that the Fan Repair Agreement, which is at the heart of the Parties' dispute, elects Minnesota as the appropriate forum. Consequently, the fact that the Parties' forum selection clause elects Minnesota as the chosen forum for any disputes weighs in favor of transfer.

After a consideration of all factors, the balance tips in favor of transfer to the District of Minnesota. Though IBI was technically the first to file its Complaint, the split in the Eighth Circuit concerning when jurisdiction attaches makes this fact less significant. Further, IBI's selection of Illinois as the forum for suit has less significance in context of the Parties' forum selection clause. Additionally, the forum selection clause electing Minne- sota, as well as the fact that Minnesota law governs the Parties' suits, makes [*14] it a more appropriate forum for adjudicating the Parties' disputes. Therefore, this Court will transfer this cause of action to the District of Minnesota, and allow that court to consolidate IBI's cause of action with Deltak's cause of action filed there.

**III. CONCLUSION**

For the foregoing reasons, Deltak's motion to trans- fer venue to the Minnesota District Court is GRANTED.

David H. Coar

United States District Judge

Dated: April 6, 2004

# EXHIBIT F

LEXSEE 2005 U.S. DIST. LEXIS 14175


**SPARKTRODE L.L.C., Plaintiff, v. HMT HIGH MEDICAL TECHNOLOGIES A.G., Defendant.**

**No. 04 C 8018**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

**2005 U.S. Dist. LEXIS 14175**


**July 13, 2005, Decided**
**July 13, 2005, Filed**

**DISPOSITION:**  Motion is denied.


**COUNSEL:**  [*1]  For Sparktrode L.L.C., Plaintiff: Marvin N. Benn, Stephen Joseph Cassin, Much, Shelist, Freed, Denenberg, Ament & Rubenstein, P.C., Chicago, IL.

For HMT High Medical Technologies A.G., Defendant: J. David Duffy, Steven P. Mandell, Mandell, Menkes & Surdyk, LLC, Chicago, IL; Ryan A. Kurtz, Miller & Martin, P.L.L.C., Atlanta, GA.

**JUDGES:** Judge Ruben Castillo.

**OPINION BY:** Ruben Castillo

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sparktrode L.L.C. ("Sparktrode") brought a declaratory judgment action against Defendant HMT High Medical Technologies A.G. ("HMT"). On December 14, 2004, this Court dismissed Sparktrode's action with prejudice. Sparktrode requests, pursuant to Federal Rule of Civil Procedure 59(e), that we amend our judgment. (R. 4-1.) For the reasons provided herein, we deny Sparktrode's motion.

**RELEVANT FACTS**

On September 5, 2000, HMT, a Swiss Company in the business of developing and manufacturing medical devices, obtained United States Patent No. 6,113,560 for a "Method and Device for Generating Shock Waves For Medical Therapy Particularly for Electrohydraulic Lith-

otripsy" ("the '560 Patent"). HMT discovered that Dr. Marc [*2] Rubinstein was acquiring, reconstructing, and reselling spent electrode devices manufactured by HMT pursuant to its '560 Patent. On November 5, 2004, HMT filed a lawsuit for patent infringement and deceptive trade practices in the United States District Court for the Northern District of Georgia (the "Georgia case") against two companies associated with Dr. Rubinstein: United Shockwave Services, L.T.D. and United Shockwave Therapies, L.L.C. (collectively "Shockwave").

On December 10, 2004, Sparktrode, which is also associated with Dr. Rubenstein, filed its declaratory judgment complaint, which sought a declaration of non-infringement of HMT's '560 Patent. We dismissed Sparktrode's complaint with prejudice in a minute order stating:

> After careful review of its recently filed complaint for a declaratory judgment, this Court dismisses said complaint with prejudice and refuses to exercise its discretionary jurisdiction because there is already pending litigation in the Northern District of Georgia. This Court concludes that it should follow the first-filed rule. Furthermore, there is no jurisdiction or venue over the non-resident defendant in this case.

(R. 2, Dec. 14. 2004 Minute [*3] Order.) Subsequent to our dismissal, we learned that Sparktrode was not a legal entity when it filed its complaint because its limited liability company status had been involuntarily dissolved. Shortly after Sparktrode's status was reinstated, HMT added Sparktrode as a party to the Georgia case. We

have also learned that the Georgia case has been stayed because HMT filed for bankruptcy protection in Switzerland.

## LEGAL STANDARDS

This Court has wide discretion to decide a Rule 59(e) motion to amend a judgment. *Caisse Nationale de Credit v. CBI Indus.*, 90 F.3d 1264, 1270 (7th Cir. 1996); *Williams v. Poulos*, 11 F.3d 271, 289 (1st Cir. 1993). These motions "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Publishers Res., Inc. v. Walker-Davis Publ'ns. Inc.*, 762 F.2d 557, 561 (7th Cir. 1985) (quoting *Keene Corp. v. Int'l Fidelity Ins. Co.*, 561 F. Supp. 656, 665 (N.D. Ill. 1982)).

## ANALYSIS

Sparktrode asserts that this Court committed multiple legal errors when we dismissed its complaint. Sparktrode claims that we should not have applied the first-filed [*4] rule and, even if we properly applied the rule, we should have dismissed its complaint without prejudice. Sparktrode also asserts that we should not have dismissed its complaint for lack of personal jurisdiction, but given our resolution of Sparktrode's first two arguments we need not address that argument.

### I. The First-Filed Rule

We have broad discretion to decline to hear a declaratory judgment action, even one within our jurisdiction--particularly if it is duplicative. *Tempco Elec. Heater Corp. v. Omega Eng'g*, 819 F.2d 746. 747 (7th Cir. 1987); *see (also Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995). No court--particularly this one--wants to encourage the simultaneous litigation of two essentially identical claims in two separate federal courts. *See Asset Allocation & Mgmt Co. v. W. Employers Ins. Co.*, 892 F.2d 566, 573 (7th Cir. 1989). Thus. we adhere to the "inherently fair" concept that the party who commenced the first suit generally should be afforded its choice of venue. *Barrington Group, Ltd. v. Genesys Software Sys., Inc.*, 239 F. Supp. 2d 870, 873 (E.D. Wis. 2003) [*5] (quoting *Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1150 (S.D. N.Y. 1995)). This first-filed rule applies even when the defendant in a second-filed case is not a defendant in the first-filed case if its interests are "clearly aligned" with the defendant's interests in the first-filed case. *Marshak v. Reed*, 2000 U.S. Dist. LEXIS 19577, No. 96 CV 2292(NG)(MLO), 2000 WL 33152076, at *3 (E.D. N.Y. Oct. 17, 2000). The first-filed rule should only be disregarded lo "prevent wrong or injustice." *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989). For example, it would be unjust to

apply the rule when the first-filed case was an "improper anticipatory filing" made either for the purpose of forum shopping or under the apparent threat of a presumed adversary filing. *Ontel Prods.*, 899 F. Supp. at 1150 (quoting *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 132 (S.D. N.Y. 1994)).

The Georgia case is the first-filed case. It was filed a month earlier than this case and involves the same issues. Sparktrode was not initially named as a party, but Sparktrode's interests were adequately [*6] protected by Shockwave. These companies are all affiliated with Dr. Rubenstein. Moreover, Sparktrode was added to the Georgia case after its limited liability company status was reinstated. Furthermore, there is no evidence that HMT's filing was improper, anticipatory, or constituted forum shopping. Thus, we properly applied the first-filed rule.

### II. Dismissal With or Without Prejudice

The court overseeing the first-filed case should generally decide whether the first-filed rule applies. *Weber-Stephen Prods. Co. v. Ivy Mar Co., Inc.*, 1993 U.S. Dist. LEXIS 18804, No. 93 C 5462, 1994 WL 11711, at *1 (N.D. Ill. Jan. 13, 1994). The court overseeing a second-filed, declaratory judgment action, however, can dismiss that case with prejudice if the first-filed case will resolve the entire controversy. *See Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1218 (7th Cir. 1980). A court can even dismiss with prejudice a first-filed declaratory judgment action if it is aimed solely at wresting the choice of forum away from the "natural" plaintiff, *Nucor Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 577 (7th Cir. 1994)(quoting *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 10 F.3d 425, 431 (7th Cir. 1993)), [*7] because such preemptive filings are "expressly disfavored," *Eli's Chi. Finest v. Cheesecake Factory Inc.*, 23 F. Supp. 2d 906, 908 (N.D. Ill. 1998). After all, a declaratory judgment should issue only if it will serve a useful purpose. *Int'l Harvester*, 623 F.2d at 1218.

Sparktrode asserts that we should have dismissed this action without prejudice. We disagree. The Georgia case involves the same parties and issues. The court overseeing that case could transfer it to this district if it determines that this district is the most appropriate venue. Our dismissal therefore does not prejudice Sparktrode. Additionally, HMT is bankrupt, so the Georgia case is currently stayed--as this case would be were we to re-open it. Thus, dismissal with prejudice is the best way to conserve scarce judicial resources in the face of duplicative litigation. *Trippe*, 46 F.3d at 629; *see also Ridge Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.*, 572 F. Supp. 1210, 1212-13 (D.C. Ill. 1983). Accordingly, we decline to amend our judgment.

2005 U.S. Dist. LEXIS 14175, *

**CONCLUSION**

This Court denies Sparktrode's motion to amend the judgment. (R. 2-1.) [*8] We properly applied the first-filed rule and properly dismissed Sparktrode's duplicative declaratory judgment action with prejudice.

**ENTERED:**

**Judge Ruben Castillo**

**United States District Court**

**DATED: July 13, 2005**

EXHIBIT G

LEXSEE 2007 U.S. DIST. LEXIS 90567



Analysis
As of: Aug 29, 2008

**RONALD MOORE, MORRIS ALLEN, JR., MICHAEL BARNETT, ANTHONY BELL, PATRICK CARTER, MARTIN DIXON, ERNEST DORSEY, MARY EVANS, JANICE GRANT, JUSTIN HARRIS, MARK LEWERS, MAURICE MABON, BRIAN ROY, MARION TUCKER, on behalf of themselves and all others similarly situated, Plaintiffs, v. MORGAN STANLEY & CO., INC., Defendant.**

**Civil Action No.: 07 C 5606**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

**2007 U.S. Dist. LEXIS 90567**

**December 6, 2007, Decided**
**December 6, 2007, Filed**

**PRIOR HISTORY:** Jaffe v. Morgan Stanley DW, Inc., 2007 U.S. Dist. LEXIS 8502 (N.D. Cal., Jan. 19, 2007).

**COUNSEL:** [*1] For Ronald Moore, Morris Allen, Jr, Michael Barnett, Anthony Bell, Patrick Carter, Martin Dixon, Ernest Dorsey, Mary Evans, Janice Grant, Justin Harris, Mark Lewers, Maurice Mabon, Brian Roy, Marion Tucker, on behalf of themselves and all others similarly situated, Plaintiffs: Linda Debra Friedman, Mary Stowell, Suzanne E. Bish, LEAD ATTORNEYS, Stowell & Friedman, Ltd., Chicago, IL.

For Morgan Stanley & Co., Inc., Defendant: Arthur James Rooney, LEAD ATTORNEY, Morgan, Lewis & Boccius LLP, Chicago, IL; Barry A. Hartstein, Nina G. Stillman, LEAD ATTORNEYS, Morgan Lewis Bockius, Chicago, IL; L. Julius M. Turman, Morgan Lewis & Bockius, San Francisco, CA.

**JUDGES:** Suzanne B. Conlon, United States District Judge.

**OPINION BY:** Suzanne B. Conlon

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Ronald Moore and thirteen other named plaintiffs sue Morgan Stanley & Co., Inc. ("Morgan Stanley") under 42 U.S.C. §1981, purporting to bring an action as individuals and "on behalf of a class of past and present African American applicants, Financial Advisor Trainees, Financial Advisors, and managers of Defendant in the United States who have been subjected to discrimination by Defendant due to their race and have been subjected to retaliation [*2] due to their opposition to discrimination." Compl. P 57, 66-67. Morgan Stanley moves to dismiss or, in the alternative, to stay and strike portions of the complaint because of a duplicative case, *Jaffe, et al. v. Morgan Stanley & Co., Inc.,* No. 06 C 3903 (TEH) ("*Jaffe*"), pending in the Northern District of California.

**I. BACKGROUND**

When plaintiffs filed their complaint on October 3, 2007, *Jaffe* was pending in the United States District Court for the Northern District of California. *Jaffe* began as a gender discrimination class action against Morgan Stanley on June 22, 2006. On August 17, 2007, a second amended complaint was filed in *Jaffe,* alleging a nationwide class action under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended, on behalf of classes of "all African American and all minority Financial Advisors and Registered Financial Advisor Trainees employed by Morgan Stanley in the United States at any

time from October 12, 2002 to the present." *Jaffe* Sec. Am. Compl P 19, Cts. III-IV.

The same day the second amended complaint was filed, the *Jaffe* parties reached a settlement on the class race claims. The proposed settlement class is defined as:

> All African Americans [*3] and Latinos who were employed as Financial Advisors or Registered Financial Advisors Trainees in the Global Wealth Management Group of Morgan Stanley & Co. Incorporated or its predecessor, Morgan Stanley DW Inc. at any time between October 12, 2002 through [the date of preliminary approval].

The settlement is now pending preliminary approval by the Northern District of California. The *Moore* plaintiffs have filed objections to the proposed settlement as inadequate and unfair to the class. Morgan Stanley and the *Jaffe* plaintiffs' counsel have filed responses to the *Moore* plaintiffs' objections.

All but two of the fourteen named plaintiffs in *Moore* would be class members in the *Jaffe* settlement class. The two exceptions are Justin Harris, who purports to bring an action on behalf of African American applicants not hired by Morgan Stanley, and Mary Evans, who was employed as an assistant branch manager (rather than a financial advisor) during the class period.

## II. ANALYSIS

### A. Motion to Dismiss or Stay the Proceeding

A federal suit may be dismissed for reasons of wise judicial administration whenever it is duplicative of a parallel action already pending in another federal court. *Serlin v. Arthur Andersen & Co.,* 3 F.3d 221, 223 (7th Cir. 1993) [*4] (citations omitted). The court is accorded a great deal of latitude and discretion in determining whether one action is duplicative of another, but generally a suit is duplicative if the "claims, parties, and available relief do not significantly differ between the two actions." *Id.* (citing *Ridge Gold Standard Liquors v. Joseph E. Seagram & Sons, Inc.,* 572 F. Supp. 1210, 1213 (N.D. Ill. 1983). When mirror-image suits are filed in two federal districts, the first case filed takes priority. *See Caccamo v. Greenmarine Holdings LLC,* No. 01 C 0899, 2001 U.S. Dist. LEXIS 8477, 2001 WL 668929, at *1 (N.D. Ill. Jun. 14, 2001) (Darrah, J.). However, the Seventh Circuit does not espouse a rigid "first-to-file" rule. *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.,* 819 F.2d 746, 750 (7th Cir. 1987). There is a rebuttable presumption the first case that establishes jurisdiction

should be allowed to proceed, and the second case be dismissed. *Asset Allocation & Management Co. v. Western Employers Ins. Co.,* 892 F.2d 566, 573 (7th Cir. 1989); *Northwest Airlines, Inc. v. American Airlines, Inc.,* 989 F.2d 1002, 1004 (8th Cir. 1993). The *Moore* plaintiffs bear the burden of showing compelling circumstances or an imbalance of convenience [*5] to overcome the presumption that the *Jaffe* suit should proceed. *Caccamo,* 2001 U.S. Dist. LEXIS 8477, 2001 WL 668929, at *1.

### 1. Duplicative Litigation

Morgan Stanley argues this case warrants dismissal because the claims, parties, and available relief do not significantly differ between this case and the previously filed *Jaffe* case. The complaint in *Moore* and the second amended complaint in *Jaffe* assert similar race-based legal theories over similar class periods against Morgan Stanley, including: disparate treatment, disparate impact, hostile work environment and retaliation. *See* Compl. PP 35, 48; *Jaffe* Sec. Am. Compl. PP 77-97. Both cases seek the same remedies: injunctive relief, equitable remedies, compensatory damages, punitive damages and attorneys' fees. *See* Compl. P 71; *Jaffe Sec. Am. Compl.* PP 130-36. However, plaintiffs argue this case is not duplicative of *Jaffe,* as the *Moore* complaint includes a proposed class of Morgan Stanley managers and financial adviser applicants, as well as additional allegations that Morgan Stanley refused to hire or promote African Americans on account of their race.

These differences are not central to the class claims in both cases. *Moore* and *Jaffe* focus heavily on discriminatory [*6] treatment of financial advisors. And although the proposed class in *Jaffe* would not include named plaintiffs Harris and Evans, it is readily apparent that twelve of the fourteen named plaintiffs here are members of the proposed class in *Jaffe. See, e.g., Mackey v. Board of Educ. for Arlington Central School Dist.,* 112 Fed.Appx. 89 (2d Cir. 2004) (class members' subsequent action duplicative even though unnamed in previous class action); *Peak v. Green Tree Fin. Servicing Corp.,* No. 00 C 0953, 2000 U.S. Dist. LEXIS 9711, 2000 WL 973685, at*4 (N.D. Cal. July 7, 2000). The settlement in the *Jaffe* class action may have a material impact on this case, as it may dispose of virtually all class claims pertaining to financial advisors. Simultaneous litigation in both venues would expend significant judicial and litigant resources.

Harris and Evans have different claims from other named plaintiffs. This situation militates in favor of a stay, so they are not prejudiced by dismissal. *See Central States, Southeast and Southwest Areas Pension Fund v. Paramount Liquor Co.,* 203 F.3d 442, 445 (7th Cir. 2000) (where parallel proceeding given "priority," the

action before the district court "should be stayed, rather than dismissed, [*7] unless it is absolutely clear that dismissal cannot adversely affect any litigant's interests"). Plaintiffs' request to allow individual claims to proceed is premature. Plaintiffs' assertion they intend to opt out of the *Jaffe* settlement is mere conjecture at this point.

**2. Priority of Filing**

Plaintiffs additionally argue this case cannot be duplicative of *Jaffe* because it preceded *Jaffe*. They contend the first-filed rule should not be applied because of Morgan Stanley's bad faith in shopping for a plaintiff in *Jaffe* who was willing to agree to bind the class on inadequate and unfair terms. Plaintiffs assert they originally sought to negotiate their claims with Morgan Stanley in good faith, only to have Morgan Stanley secretly collude with the *Jaffe* plaintiffs to construct a race-based class on the eve of settlement. Morgan Stanley vigorously contests this, stating that they engaged in good faith negotiations and mediation with the *Jaffe* and *Moore* plaintiffs. After reviewing the memoranda, chronology, declarations, and exhibits, it is inconclusive whether bad faith was present in negotiating the *Jaffe* race-based settlement. Plaintiffs have not satisfied their burden in rebutting the [*8] presumption that the first-filed rule should be followed. This case will yield to *Jaffe* in order to avoid expensive and duplicative litigation of virtually the same claims in two federal courts. *See, e.g., Applexion S.A., v. The Amalgamated Sugar Co.,* No. 95 C 858, 1995 U.S. Dist. LEXIS 9350, 1995 WL 404843 (N.D. Ill. July 7, 1995) (Conlon, J.) (first-filed rule instructs one case to yield). A stay is granted until the final *Jaffe* settlement is approved or some other event in *Jaffe* warrants vacating the stay. *See, e.g., Jaffe v. Morgan Stanley DW, Inc.,* No. C06-3903, 2007 U.S. Dist. LEXIS 8502, 2007 WL 163196 (N.D. Cal. Jan. 19, 2007).

**B. Motion to Strike**

Morgan Stanley requests the court to strike paragraphs 4, 5, 27, 28, 29 and 30 of the complaint pursuant to Fed. R. Civ. P. 12(f). These paragraphs refer to plaintiffs' attempts to settle their claims with Morgan Stanley, Morgan Stanley's purportedly improper conduct, and the fairness of the proposed settlement agreements in *Jaffe*.

The court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P 12(f). Motions to strike are a disfavored, drastic remedy. *See, e.g., Custom Vehicles, Inc. v. Forest River, Inc.,* 464 F.3d 725, 726-28 (7th Cir. 2006); [*9] *Robinson v. Midlane Club, Inc.,* No. 94 C 1459, 1994 U.S. Dist. LEXIS 14790, 1994 WL 577219, at *2 (N.D. Ill. Oct. 18, 1994) (collecting cases). Morgan Stanley is required to show the allegations in the complaint are "so unrelated to plaintiffs claims as to be void of merit and unworthy of any consideration." *Robinson,* 1994 U.S. Dist. LEXIS 14790, 1994 WL 577219, at *2.

Morgan Stanley argues it would be prejudiced by allegations of improper conduct during the *Jaffe* settlement, as the allegations only serve to tarnish Morgan Stanley and its counsel. The allegations have the potential of confusing the issues with respect to plaintiffs' racial discrimination claims. Paragraphs 5, 27, 28, 29 and 30 are stricken from the complaint.

**III. CONCLUSION**

Because this case is substantially similar to *Jaffe*, it will be stayed until the final *Jaffe* settlement is approved or some other event in *Jaffe* warrants vacating the stay. Paragraphs 5, 27, 28, 29 and 30 of the complaint are stricken pursuant to Fed. R. Civ. P. 12(f).

December 6, 2007

/s/ Suzanne B. Conlon

Suzanne B. Conlon

United States District Judge

# EXHIBIT H

LEXSEE 1996 US DIST LEXIS 3262



Positive
As of: Aug 29, 2008

**CAMPBELL SOFTWARE, INC. and MATTHEW TOMLINSON, Plaintiffs, v. KRONOS INCORPORATED, Defendant.**

**No. 95 C 7348**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

**1996 U.S. Dist. LEXIS 3262**

**March 15, 1996, Decided**
**March 19, 1996, DOCKETED**

**COUNSEL:** [*1] For CAMPBELL SOFTWARE, INC., MATTHEW TOMLINSON, plaintiffs: David Thomas Beech Audley, [COR LD NTC A], Chapman & Cutler, Chicago, IL.

For KRONOS INCORPORATED, defendant: Rodney D. Joslin, [COR], Cecelia M. Comito, [COR NTC], Jenner & Block, Chicago, IL. Jon Rosenfeld, [COR LD NTC A], Hale & Dorr, Boston, MA.

**JUDGES:** Suzanne B. Conlon, United States District Judge

**OPINION BY:** Suzanne B. Conlon

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Campbell Software, Inc. ("Campbell") and Matthew Tomlinson (collectively "plaintiffs") sue defendant Kronos Incorporated ("Kronos") for declaratory relief pursuant to 28 U.S.C. § 2201. Plaintiffs seek a declaration that a proprietary rights and confidentiality agreement ("the agreement") purportedly entered into between Tomlinson and Kronos in 1990 is unenforceable or that Tomlinson did not violate the agreement. Subject matter jurisdiction is based on diversity of citizenship. 28 U.S.C. § 1332(a). Kronos moves to transfer this case for consolidation with a prior-filed related action between the parties pending in the United States District Court for

the District of Massachusetts pursuant to 28 U.S.C. § 1404(a), or alternatively to answer the complaint *instanter*. Plaintiffs oppose the motion to transfer and request that this court: (a) grant Kronos leave to file its answer *instanter* and (b) stay these proceedings pending resolution of venue and jurisdictional issues raised by pleadings filed by the parties in the Massachusetts action.

**BACKGROUND**

[*2] Campbell is an Illinois corporation with its principal place of business in Evanston, Illinois. Complaint ("Compl.") P 1. Campbell primarily designs, develops, manufactures, markets and services computer software relating to workforce management, labor scheduling and business forecasting. Affidavit of Michael Campbell ("Campbell Aff.") P 2. Labor scheduling software forecasts sales and related labor needs and creates schedules utilizing the forecasts and information regarding available labor resources. Second Affidavit of Matthew Tomlinson ("Second Tomlinson Aff.") P 2. In the fiscal year ending December 31, 1994, Campbell earned approximately $ 3.5 million in sales. Campbell Aff. P 2.

Kronos is a Massachusetts corporation with its principal place of business in Waltham, Massachusetts. Compl. P 3; Third Affidavit of Matthew Tomlinson ("Third Tomlinson Aff."), Ex. A. Kronos has 21 sales offices throughout the United States, including one in Chicago, Illinois. Third Tomlinson Aff. P 2; Ex. A. In its last fiscal year, Kronos earned approximately $ 126 million in sales. Second Tomlinson Aff. P 2. Kronos manu-

factures hardware and software for computerized time clocks that provide information [*3] from which employee paychecks are generated. Id. Kronos earns approximately $ 1 million in sales relating to labor scheduling software. Id.; see Second Affidavit of Aron Ain ("Second Ain Aff.") P 6. Kronos and Campbell are direct competitors in the labor scheduling software industry. See Supplemental Affidavit of Scott Martiny ("Martiny Supp. Aff.") P 6.

Tomlinson is an Illinois resident. Second Tomlinson Aff. P 1. Tomlinson was employed by Kronos in Chicago, Illinois as a sales representative between August 1983 and August 1985, as a sales manager between August 1985 and August 1987, and as a district manager between August 1987 and November 1995. Id at P 2. As district manager of Kronos' Chicago branch office, Tomlinson managed sales, services and administrative functions. Id. at P 3. The Chicago branch is comprised of the Chicago metropolitan area, including 15 counties in northern Illinois and four adjacent counties in Indiana. Id.

During his employment with Kronos, Tomlinson periodically travelled to Kronos corporate headquarters in Massachusetts to consult with Kronos personnel and to receive training. Second Ain Aff. P 3. Tomlinson also had less direct [*4] contact with Massachusetts: he submitted quarterly sales reports to his superiors in Massachusetts; he submitted monthly expense reports for reimbursement to Massachusetts; he participated in monthly telephone calls with Kronos' credit personnel located in Massachusetts to review credit status of customers; and he received paychecks from and generated revenues for Kronos. Id. P 3.

Tomlinson and Kronos executed the agreement in Illinois in April 1990. Second Tomlinson Aff. P 4; Compl. Ex. A. The agreement contains a choice-of-law provision that states it is to be interpreted in accordance with Massachusetts law. Compl. Ex. A at 3. In the agreement, Tomlinson acknowledged Kronos develops confidential information that may give Kronos an advantage. Id. at 1. Tomlinson agreed to "never, directly or indirectly, use, publish, disseminate or otherwise disclose any Confidential Information without the prior written consent of the Company's chief executive officer." Id. Tomlinson further agreed to restrictions on his employment after leaving Kronos for any reason, absent Kronos' approval, including engaging in activities similar to his responsibilities as Kronos' Chicago district [*5] manager for companies in direct or indirect competition with Kronos. Id. at 2. The agreement-not-to-compete extended throughout the United States and "any other areas in which the Company's products are sold," for 24 months. Id. Finally, if a lawsuit commences to enforce the agreement, Tomlinson consented without limitation to jurisdiction of the court in the place where his subsequent employer is incorporated or has a principal place of business. Id. at 3.

On November 7, 1995, Tomlinson voluntarily resigned from Kronos effective November 21, 1995, to become Campbell's Eastern Region Vice President. Second Tomlinson Aff. P 1, 5; Affidavit of Aron Ain ("Ain Aff.") P 15. Tomlinson began working for Campbell on November 27, 1995. Second Tomlinson Aff. P 1. Tomlinson's duties are direct sales and sales management for accounts located in the region east of Ohio to and along the eastern seaboard. Id.; Campbell Aff. P 3.

On December 12, 1995, Kronos filed a complaint seeking a temporary restraining order and preliminary injunction against Campbell and Tomlinson in the United States District Court for the District of Massachusetts ("the Massachusetts action"). Affidavit of [*6] Jonathan D. Rosenfeld ("Rosenfeld Aff.") P 2. The complaint alleges Tomlinson breached the agreement, violated the Massachusetts trade secrets statute, and breached his common law duty of loyalty. Kronos further alleged that Campbell tortiously interfered with the agreement. Campbell was served with the Massachusetts complaint on December 13, 1995. Id. Tomlinson was served with the Massachusetts complaint on December 14, 1995. Id.

On December 14, 1995, Campbell and Tomlinson filed this declaratory judgment action against Kronos in this court ("the Illinois action"). Campbell and Tomlinson did not disclose in the Illinois complaint that Kronos had previously filed the related Massachusetts action. Rather, Campbell and Tomlinson alleged that "Kronos has indicated to Tomlinson and Campbell that it believes the [agreement] is enforceable . . . [and] that it will seek damages . . . ." Compl. P 13. Plaintiffs further alleged, "given Kronos' stated intention to attempt to enforce the [agreement] against Tomlinson and, thereby, enjoin his employment with Campbell . . . and to claim money damages against Tomlinson and Campbell, there exists an actual case or controversy . . . [*7] ." Id. P 16. Kronos was served with the Illinois complaint on December 15, 1995. Def. Motion at 4.

On December 26, 1995, Tomlinson and Campbell filed a motion to dismiss the Massachusetts action for lack of personal jurisdiction, or alternatively to transfer the case to this court pursuant to 28 U.S.C. § 1404(a). See Pl. Ex. A. On December 28, 1995, the Massachusetts court granted Kronos' motions for a temporary restraining order and to preserve documents and evidence. Rosenfeld Aff. P 3. The Massachusetts court barred Tomlinson from working for Campbell pending the Massachusetts action's resolution. The temporary restraining order was extended until the Massachusetts court could conduct a preliminary injunction hearing scheduled for March 11, 1996. Id.

On January 4, 1996, Tomlinson and Campbell filed a motion to postpone, to conduct expedited discovery and to combine a hearing on the preliminary injunction with a trial on the merits. Id. at 4. Tomlinson and Campbell served discovery on Kronos in the Massachusetts action. Pl. Motion at 2. On January 19, 1996, the Massachusetts court held a discovery conference and ruled that the preliminary injunction hearing would [*8] be consolidated with a trial on the merits of Kronos' request for injunctive relief. See Pl. Motion at 2-3; Rosenfeld Aff. P 5. The Massachusetts court scheduled the trial on March 11, 1996. Rosenfeld Aff. P 5. The court further ordered expedited discovery, with all depositions to occur in Massachusetts. Rosenfeld Aff. P 5. Thus, Tomlinson and Campbell withdrew their motion to dismiss or to transfer. Pl. Motion at 3; Pl. Ex. A. Subsequently, the Massachusetts court ruled the motion to dismiss or to transfer was moot. Pl. Motion at 3; Pl. Ex. A.

On February 13, 1996, Tomlinson and Campbell filed their respective answers to the Massachusetts complaint. See Pl. Ex. B, C. Despite filing several motions with the Massachusetts court conducting discovery and consenting to a trial on the merits, Tomlinson and Campbell each asserted affirmative defenses that the Massachusetts court lacked personal jurisdiction and was an improper venue. Pl. Ex. B at 12; Pl. Ex. C at 10.

Plaintiffs assert they filed an agreed motion to stay the Illinois proceedings on January 26, 1996. See Pl. Motion at 3; Pl. Ex. D. However, the motion was not properly filed and is not part of this district's [*9] official files. On January 30, 1996, this court entered an order setting a discovery schedule and placing the Illinois action on the July 1996 trial calendar. See Order, No. 95 C 7348 (N.D. Ill. Jan. 30, 1996). The parties have failed to notify this court of the outcome of the Massachusetts court's March 11 hearing, or whether the Massachusetts hearing was postponed.

## DISCUSSION

Kronos moves to transfer this action to the District of Massachusetts. Kronos asserts that transfer is warranted to avoid unnecessary duplicative litigation by consolidating this action with the first-filed Massachusetts action. Keppen v. Burlington Northern R. Co., 749 F. Supp. 181 (N.D. Ill. 1990); Countryman v. Stein Roe & Farnham, 681 F. Supp. 479 (N.D. Ill. 1987); Zurich Ins. Co. v. Raymark Indus., Inc., 672 F. Supp. 1102 (N.D. Ill. 1987). Moreover, the Massachusetts court is the more appropriate forum for interpreting an agreement governed by Massachusetts law. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 91 L. Ed. 1055, 67 S. Ct. 839 (1947); Dunn v. Soo Line R. Co., 864 F. Supp. 64, 67 (N.D. Ill. 1994). Finally, the consent to jurisdiction clause in the agreement merely [*10] provided an additional forum

where jurisdiction is proper; it does not require the litigation be maintained in this court. Heller Financial, Inc. v. Nutra Food, Inc., 655 F. Supp. 1432, 1434 (N.D. Ill. 1987).

Plaintiffs respond the convenience of the parties favor this court because Kronos has a Chicago office, Tomlinson resides in Chicago and Campbell is an Illinois corporation headquartered in Evanston, Illinois. The relative financial strengths of the companies purportedly favors this court. Galonis v. National Broadcasting Co., Inc., 498 F. Supp. 789, 793 (D.N.H. 1980); Wright, Miller & Cooper, Federal Practice and Procedure § 3849 (1995). According to plaintiffs, the convenience of the witnesses and interests of justice allegedly favor continuing this litigation in this court. New Medico Associates, Inc. v. Kleinhenz, 750 F. Supp. 1145 (D. Mass. 1990).

Section 1404 (a) provides the court may transfer any suit to another district "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Transfer under § 1404 (a) is appropriate only if: (1) venue is proper in the transferor district; (2) venue is proper in the transferee [*11] district; and (3) transfer is for the convenience of parties and witnesses and in the interest of justice. Coleman Co., Inc. v. Black & Decker Corp., No. 95 C 7379, 1996 U.S. Dist. LEXIS 986, 1996 WL 41484 (N.D. Ill., Jan. 31, 1996); Applexion S.A. v. The Amalgamated Sugar Co., No. 95 C 858, 1995 U.S. Dist. LEXIS 9350, 1995 WL 404843 (N.D. Ill. July 7, 1995); FUL Inc., v. Ottawa Univ., No. 92 C 7756, 1993 U.S. Dist. LEXIS 1883, 1993 WL 47294 (N.D. Ill. Feb. 22, 1993). The first-filed action is preferred unless, "considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise." Black & Decker Corp., 1996 U.S. Dist. LEXIS 986, *12, 1996 WL 41484, at *5 (citation omitted). The court should not countenance the simultaneous litigation of essentially identical claims in two federal courts. Applexion, 1995 U.S. Dist. LEXIS 9350, 1995 WL 404843, at *2 (citing Asset Allocation & Mgt. Co. v. Western Employers Ins. Co., 892 F.2d 566, 573 (7th Cir. 1989)). Special circumstance must militate in favor of proceeding with the later suit instead of the first-filed action. Applexion, 1995 U.S. Dist. LEXIS 9350, 1995 WL 404843, at *3. The decision whether to transfer venue ultimately lies within the court's discretion. See Source Services Corp. v. Technisource, Inc., No. 95 C 1420, [*12] 1995 U.S. Dist. LEXIS 11815, 1995 WL 493499, at *1 (N.D. Ill., Aug. 9, 1995).

The parties do not discuss the first two factors. Venue is clearly proper in this forum: Campbell is an Illinois corporation headquartered in Evanston, Illinois, Tomlinson is an Illinois resident, and Kronos has a branch office located in Chicago. Venue is also proper in Massachusetts. Kronos is a Massachusetts corporation.

Campbell does not contest that it services clients head-quartered in Massachusetts. See Second Ain Aff. P 2. Finally, Tomlinson previously had frequent and regular contact with Kronos headquarters in Massachusetts, and as Campbell's eastern region vice president, he is responsible for servicing accounts located in Massachusetts. Moreover, Campbell and Tomlinson have answered the Massachusetts complaint, filed pleadings, conducted discovery and consented to the Massachusetts court's jurisdiction for purposes of a consolidated preliminary injunction hearing and a hearing on the merits of a permanent injunction. Accordingly, this court finds venue to be proper in this jurisdiction and in Massachusetts.

### A. Interests of Justice

The interests of justice concern the efficient functioning of the courts. The [*13] court does not consider the private interests of the parties. Source Services, 1995 U.S. Dist. LEXIS 11815, 1995 WL 493499, at *3. An important consideration in weighing the interests of justice is the possibility of consolidation with related litigation. Coffey v. Van Dorn Iron Works, 796 F.2d 217, 221 (7th Cir. 1986) ("related litigation should be transferred to a forum where consolidation is feasible"); Keppen, 749 F. Supp. at 183-84; Countryman, 681 F. Supp. at 484; Zurich Ins., 672 F. Supp. at 1104. This factor is even more persuasive when the related litigation was filed first. Coleman Co., 1996 U.S. Dist. LEXIS 986, 1996 WL 41484, at *5.

Plaintiffs do not even acknowledge that the Massachusetts action pre-dates this action. The Illinois complaint alleges Kronos intends to enforce the agreement, but fails to disclose that Kronos actually instituted the Massachusetts action. It is clear plaintiffs filed this declaratory action immediately after service of the Massachusetts complaint in order to select a more preferable forum. [1] Moreover, plaintiffs simply state that staying these proceedings will resolve the dual litigation problem. Thus, plaintiffs fail to effectively rebut Kronos' argument that transfer [*14] is in the interest of justice because of the possibility of consolidating this case with the preexisting Massachusetts action.

> 1 This court will not accord any deference to the chosen forum because of plaintiffs' transparent attempt at forum-shopping.

Scarce judicial resources should not be exhausted when there is pre-existing litigation involving the same parties, issues and facts. The Massachusetts and Illinois actions involve the same parties, concern the enforceability of the same agreement and whether Tomlinson violated it, and are premised on the same factual occurrences. Thus, the two actions should be consolidated.

Furthermore, it is in the interest of justice that the consolidation take place in the District of Massachusetts. First, because the agreement is to be construed under Massachusetts law, it is in the interest of justice that a Massachusetts court familiar with Massachusetts law interpret the agreement. Gulf Oil, 330 U.S. at 508; Dunn, 864 F. Supp. at 67; Van Gelder v. Taylor, [*15] 621 F. Supp. 613, 620 (N.D. Ill. 1985). Familiarity with the governing law is important because plaintiffs raise numerous arguments as to the enforceability of the covenant not to compete. Second, the Massachusetts action is broader than the Illinois action -- besides breach of contract, it also concerns breaches of a Massachusetts statute and common law causes of action by both Tomlinson and Campbell. Third, the Massachusetts action is further along procedurally: the Massachusetts court has already entered a temporary restraining order enjoining Tomlinson from working with Campbell; the parties have conducted expedited discovery; and the Massachusetts court scheduled a combined hearing on the propriety of issuing a preliminary injunction and the merits of permanent injunctive relief on March 11, 1996. Indeed, the parties are submitting affidavits in this court that were prepared for the Massachusetts litigation. [2] On the other hand, Kronos has not filed its answer to the Illinois complaint. Accordingly, the interests of justice strongly favor transferring this case to Massachusetts.

> 2 In fact, plaintiffs' brief appears to be no more than a regurgitation of their motion to transfer filed in the Massachusetts action. Plaintiffs fail to cite any Seventh Circuit cases, instead relying on Massachusetts, New Hampshire and New York cases.

### [*16] B. Convenience Of The Parties And Witnesses

Both parties contend their preferred forum is more convenient. Plaintiffs rely heavily on the "consent to jurisdiction" provision of the agreement. That clause does not persuade this court that this case should remain in Illinois. First, in Heller Financial, Inc. v. Nutra Food, Inc., the court construed a similar provision as "simply adding an additional forum wherein jurisdiction was proper and litigation could proceed." Heller Financial, 655 F. Supp. at 1434. Second, the clause specifically states that without limitation, Tomlinson consented and submitted to the jurisdiction of the court where his subsequent employer was located. Kronos did not consent or submit to any jurisdiction. The significance of the clause would be greater if Tomlinson argued Illinois was an inconvenient forum. However, in the context of these proceedings, the clause does not bear much weight.

The parties' relative financial strength is a factor this court considers. See Adams Apple Distributing L.P. v.

Powell, No. 95 C 6270, 1996 U.S. Dist. LEXIS 813, 1996 WL 34469, at *4 (N.D. Ill. Jan. 26, 1996). Kronos is in a better position financially to litigate this case [*17] in a less convenient forum. Kronos earned $ 126 million in sales in the fiscal year ending December 1994, compared with Campbell's $ 3.5 million in earnings. Kronos has a branch office in Chicago, while Campbell does not have an office in Massachusetts. This factor favors retaining jurisdiction.

Plaintiffs also effectively point out that numerous witnesses reside in Chicago, Illinois. Most of these witnesses are either Kronos or Campbell employees. Defendants identify fewer witnesses located close to Massachusetts. Plaintiffs' general argument that the Massachusetts court lacks compulsory process over plaintiffs' potential witnesses residing in Chicago is unpersuasive. The lack of compulsory process is not persuasive unless a potential witness demonstrates a reluctance to testify. Source Services, 1995 U.S. Dist. LEXIS 11815, 1995 WL 493499, at *3. Neither party offers evidence concerning a particular witness' reluctance to testify. Overall, the convenience of witnesses weighs against transfer.

### C. Balance

The most significant factor in this case is the interest of justice and the efficient operation of the courts. Although convenience factors may favor this district, they do not outweigh the interest [*18] of justice. There is

ongoing, pre-existing litigation in Massachusetts concerning the identical issues and parties. Massachusetts law governs the agreement's construction and should be applied by a Massachusetts court. Plaintiffs filed a motion to transfer the Massachusetts action to Illinois, but withdrew it in favor of a hearing on the merits in the Massachusetts court. Their attempt to have this court interpret the agreement by filing this declaratory action was in clear disregard of the interest of justice. The conservation of scarce resources that can be achieved by consolidating the two actions is of primary importance. The possibility of two courts reaching conflicting results also is a significant consideration. Thus, Kronos' motion to transfer this case to the District of Massachusetts must be granted.

### CONCLUSION

Defendant Kronos Incorporated's motion to transfer venue is granted. Kronos' alternative motion to file its answer *instanter* [12-2] is moot. This case is transferred to the United States District Court for the District of Massachusetts.

ENTER:

Suzanne B. Conlon

United States District Judge

March 15, 1996

# EXHIBIT I

LEXSEE 2005 U.S. DIST. LEXIS 41079



Cited
As of: Aug 29, 2008

**VANGUARD PRODUCTS GROUP, INC. and TELEFONIX, INC., both Illinois corporations, Plaintiffs, v. PROTEX INTERNATIONAL CORP., Defendant.**

**Case No. 05 C 6310**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

**2005 U.S. Dist. LEXIS 41079**

**March 14, 2005, Decided**

**COUNSEL:** [*1] For Vanguard Products Group, Inc., Telefonix, Inc., both Illinois corporations, Plaintiffs: Lee F. Grossman, Jeffrey Mark Drake, Mark M. Grossman, Grossman Law Offices, Chicago, IL.

For Protex International Corp., a New York corporation, Defendant: Philip T. Petti, Rudy I. Kratz, Fitch, Even, Tabin & Flannery, Chicago, IL.

**JUDGES:** JOHN W. DARRAH, United States District Court Judge.

**OPINION BY:** JOHN W. DARRAH

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, Vanguard Products Group, Inc. and Telefonix, Inc., filed suit against Defendant, Protex, International Corp., alleging Defendant's infringement of U.S. Patent No. 6,799,994 B2. Presently pending before the Court is Protex's motion to dismiss for improper venue pursuant to Fed.R. Civ. P. 12(b)(3) or, in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404(a).

**BACKGROUND**

A reading of the Complaint, including attachments, and other matters of record supports the following summary of the alleged operative conduct of the parties.

Paul Burke, the founder and president of Telefonix, Inc., obtained U.S. Patent No. 6,799,994 B2 ("the '994

Patent") for an [*2] anti-shoplifting system, entitled Cord Management Apparatus and Method. The anti-shoplifting equipment protected by the '994 Patent is a unique cord reel management system which permits the unattended display of electronic consumer products by retailers for use by potential purchasers, while simultaneously preventing product theft. On October 5, 2004, immediately after obtaining the patent, Burke assigned the '994 Patent to Telefonix, which is a designer and manufacturer of products in the field of electronic cord management. Thereafter, Telefonix exclusively licensed the '994 Patent to Vanguard. Vanguard is a wholesaler of anti-shoplifting equipment to various companies throughout the United States. Vanguard is co-owned by Burke, who is a Lake County, Illinois resident. Protex is a former customer of Telefonix and is also a purveyor of anti-shoplifting equipment to retailers. Protex is a competitor of Vanguard and sells a cord reel management system called PowerPro.

On March 4, 2005, Vanguard wrote a letter, notifying Protex of its possible infringement of the '994 Patent. Protex responded by letter on April 13, 2005, stating its opinion that the '994 Patent did not cover its PowerPro [*3] product.

On September 2, 2005, following Protex's execution of a large contract for the sale of the PowerPro product, Plaintiffs filed an amended complaint, adding Protex as a party defendant to a pending patent infringement action Plaintiffs had filed in the Northern District of Illinois against Diam International and Diam U.S.A. on March 4, 2005, for infringement of the '994 Patent (the *Diam* ac-

tion"). The *Diam* court permitted the joinder of Protex in this suit.

On September 20, 2005, the *Diam* defendants filed a motion, requesting the court to reconsider the previous ruling that allowed Protex to be added as a defendant. The *Diam* defendants argued that Protex had been improperly joined inasmuch as Protex's alleged acts of patent infringement did not arise out of the same occurrence as the *Diam* action. On October 26, 2005, the motion to reconsider was granted; and the *Diam* court issued an order, denying Plaintiffs' motion to amend the complaint by adding Protex as a party defendant. The order stated that "plaintiff is required to file a separate action against one of the two defendants" and that "there is no proper basis for joining the two defendants in one [*4] action."

On October 27, 2005, Protex filed a declaratory judgment action, in the Eastern District of New York, against Plaintiffs. In its complaint, Protex requested that the New York court declare the '994 Patent invalid and that Protex is not infringing and has not infringed upon the '994 Patent.

On November 3, 2005, eight days after the declaratory judgment action was filed in the New York forum, Plaintiffs filed the instant action against Protex. Protex then filed this Motion to Dismiss or Transfer with this Court.

## ANALYSIS

### Motion to Dismiss for Improper Venue Under the First-to-File Rule

Protex moves for dismissal of this action pursuant to Fed. R. Civ. P. 12(b)(3), asserting improper venue under the first-to-file rule. In response, Plaintiffs contend: that the declaratory judgment action pending in the New York forum was not the first filed because Plaintiffs' claim in the Illinois forum in the *Diam* action should be considered the first filed; also, that the declaratory action filed by Protex was an improper, anticipatory filing. For these reasons, Plaintiffs contend their choice of the Illinois forum, rather than [*5] Protex's choice of forum, should prevail. Protex responds that it did not engage in forum shopping and that it did not file its action in the New York forum in apprehension of an ongoing threat of litigation.

The Federal Circuit Court applies its circuit law when reviewing district court decisions on patent law issues in the interest of promoting national uniformity. *See Midwest Indus., Inc. v. Karavan Trailers, Inc.,* 175 F.3d 1356, 1359 (Fed. Cir. 1999). In resolving venue disputes and issues of appropriate forum where two actions involve closely related patent infringement questions, the Federal Circuit has strongly endorsed the first-

to-file doctrine. *See Genentech, Inc. v. Eli Lilly & Co.,* 998 F.2d 931, 937 (Fed. Cir. 1993), *overruled in part on other grounds by, Wilton v. Seven Falls Co.,* 515 U.S. 277, 289, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995) (Genentech); *Trading Techs. Int'l, Inc. v. CQG, Inc.,* 2005 U.S. Dist. LEXIS 26514, 2005 WL 3601936 at 2 (N.D. Ill. Oct. 31, 2005) (*Trading Tech.*). The first-to-file rule is a discretionary doctrine that provides if actions involving nearly identical parties and issues have been filed in two different courts, the court in which [*6] the first suit was filed should generally proceed to judgment. *See Genentech,* 998 F.2d at 937. This rule applies even if the filing is a declaratory judgment action. *See Elecs. for Imaging, Inc. v. Coyle,* 394 F.3d 1341, 1347 (Fed. Cir. 2005) (Elec. for Imaging); *Genentech,* 998 F.2d at 937.

### Determination of the Action First Filed

It must first be determined which of the two actions was first filed. As between the instant action and the action filed in New York (Case No. CV-05 5032), the record is unambiguous as to the dates of filing. The declaratory judgment action pending in the New York forum was filed on October 27, 2005. The instant action was filed eight days later, on November 3, 2005. Considering only these two actions, the declaratory judgment action filed in the New York forum was chronologically the first filed.

Plaintiffs, however, argue Protex's New York declaratory judgment action should be deemed the second filed. Plaintiffs contend the order in the *Diam* action that denied their efforts to add Protex to the suit in the Illinois action imposed upon Plaintiffs a requirement to file this action against Protex; [*7] and, therefore, it should be afforded the status of an action pending prior to the time the New York action was filed. Said another way, it is Plaintiffs' position that because the court order in the *Diam* action imposed a requirement on Plaintiffs to file a separate action against Protex, the instant action should be treated as the first filed in relation to the New York action, inasmuch as the instant action effectively constitutes a continuation of the Illinois *Diam* action. The *Diam* court order, Plaintiffs contend, creates a special circumstance, favoring a determination by this Court that their litigation was the first filed because they had no choice but to file the instant action against Protex.

Notwithstanding Plaintiffs' characterization of the *Diam* order, it essentially determined that the pursuit of claims of patent infringement against both Diam and Protex must be by separate, independent actions. That is, the order specifies that in the prosecution of both claims of patent infringement, one of the proposed defendants in the *Diam* action must be sued in litigation apart from the *Diam* action. The crux of the order is (1) that the existing claims against [*8] the previously named defendants in

the *Diam* action cannot be litigated in a single action with Protex and (2) that Plaintiffs, to the extent they intend to pursue prosecutions of both parties, would be required to bring their claims in separate actions. No reasonable reading of the language of the order supports an interpretation otherwise. Nothing in the procedural history nor the language of the *Diam* court in refusing to join Protex as a defendant in that case demonstrates sound reason to make it unjust to find Protex the first filed in the New York District Court. *See Genentech,* 998 F.2d at 937-38.

## Exceptions to the First-to-File Rule

With the question as to which action was first filed having been resolved in Protex's favor, the Court now turns to the consideration of relevant equitable factors that might rebut the presumption favoring Protex's choice of forum in New York.

The rule favoring the forum of first-filed action is not absolute. *See Genentech,* 998 F.2d at 937; *MLR, LLC v. U.S. Robotics Corp.,* 2003 U.S. Dist. LEXIS 2827, 2003 WL 685504 at * 1 (N.D. Ill. Feb. 23, 2003) (*MLR*). The first-to-file doctrine is a general rule "favoring [*9] the right of the first litigant to choose the forum, absent countervailing interests of justice or convenience." *Genentech,* 998 F.2d at 938. "Rigid mechanical solutions" to venue and jurisdiction problems are not counseled by the Federal Circuit. *See Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.,* 342 U.S. 180, 183, 72 S. Ct. 219, 96 L. Ed. 200, 1952 Dec. Comm'r Pat. 407 (1952); *Trading Techs.,* 2005 U.S. Dist. LEXIS 26514, 2005 WL 3601936 at 2.

Exceptions recognized by the Federal Circuit are found when justice or expediency requires. *Genentech,* 998 F.2d at 937. Considerations affecting strict application of the first-to-file rule include "convenience and availability of witnesses, absence of jurisdiction over all necessary or desirable parties, the possibility of consolidation with related litigation, or considerations relating to the real party in interest." *Genentech,* 998 F.2d at 938. Other equitable considerations are whether a first-filed declaratory judgment is in bad faith, anticipatory and motivated by forum shopping. *See Serco Servs. Co. v. Kelley Co.,* 51 F.3d 1037, 1039 (Fed. Cir. 1995) (*Serco Serv.*). These equitable factors, as possibly warranting exceptions [*10] to the general rule in favor of the first-filed action in patent cases, track those considered in ruling on a motion to transfer under 28 U.S.C. § 1404(a). *See Genentech,* 998 F.2d at 937-38; *Buztronics, Inc. v. Theory3, Inc.,* 2005 U.S. Dist. LEXIS 8661, 2005 WL 1113873 at 4 (N.D. Ill. May 9, 2005) (*Buztronics*).

Accordingly, the relevant equitable factors to be considered are (1) jurisdiction over the parties, (2) judi-

cial efficiencies and economies, (3) conveniences to the parties, (4) availability and convenience of witnesses, and (5) the extent to which the declaratory judgment action filed in another forum is anticipatory and motivated by forum shopping.

### Jurisdiction Over the Parties

In the instant case, because neither forum lacks jurisdiction, there is no countervailing effect on application of the first-to-file rule.

### Judicial Efficiencies and Economies

The *Genentech* court observed the importance of avoiding a "redundancy of litigation" and of "preventing multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." 998 F.2d at 938. While the *Diam* action [*11] involving the '994 Patent is yet pending, that court determined there is no basis to join Protex with Diam as co-defendants. Therefore, "comprehensive disposition of litigation" of both actions cannot be achieved in that suit pending in the Illinois forum that would promote judicial economy or avoid "a redundancy of litigation." Although, Telefonix is not a named party in the New York patent infringement action, there does not appear to be any impediment to joining Telefonix as a defendant there. Consideration of promoting judicial efficiency and conservation of judicial resources here are neutral factors and, if not, weigh slightly in favor of the New York forum and, therefore, do not support an exception to the first-filed rule.

### Conveniences to the Parties

In evaluating conveniences for the parties, courts considers: the choice of forum of the first to file; the convenience of the witnesses; the ease of access to evidence; the location of material events; and the overall convenience of litigating in the respective forums. *See, e.g., Amoco Oil Co. v. Mobil Oil Corp.,* 90 F. Supp.2d 958, 960 (N.D. Ill. 2000). For the New York-based Protex and its principals, the [*12] Illinois forum is obviously the less convenient forum. For the Florida-based Vanguard, the New York and the Illinois forums are equally inconvenient (except for Burke, one of its principals). For the Illinois-based Telefonix and its sole principal, Burke, the '994 Patent inventor who resides in Illinois, the New York forum is the less convenient forum. If the forum remains in Illinois, Protex and its organization will be caused, overall, greater inconvenience. On the other hand, only Burke would be more inconvenienced in the New York forum.

Regarding access to the evidence, New York, as the principal place of business for Protex, is the location of

documents and evidence regarding sales, manufacturing personnel, equipment, and the witnesses responsible for the design of the Protex PowerPro product. Even though the Northern District of Illinois may be a convenient forum in this regard, unless it is clear that it is more convenient than New York, deference must be given to the New York forum -- the preferred forum of the first-filed plaintiff. Deference to a later-filed action will not be given when to do so "merely serves to shift in conveniences from one to another." *See, e.g.,* [*13] *RJF Holdings III, Inc. v. Refractec, Inc.,* 2003 U.S. Dist. LEXIS 22144, 2003 WL 22794987 at 4 (E.D. Pa. Nov. 24, 2003) (quoting *Weight Watchers Int'l, Inc. v. Stouffer Corp.,* 11 U.S.P.Q.2D (BNA) 1544, 1989 WL 73292 at 4 (S.D.N.Y. June 28, 1989). Therefore, the overall convenience weighs in favor of the New York forum; and no sound reason exists for making an exception to the application of the first-to-file rule.

*Availability and Convenience of Witnesses*

Of major concern is the availability of non-party witnesses. *Buztronics,* 2005 U.S. Dist. LEXIS 8661, 2005 WL 1113873 at 4. Party witnesses and those closely aligned with a party are presumed to be more willing to testify in a different forum. *Samsung Elecs. Co. v. Rambus, Inc.,* 386 F. Supp. 2d 708, 718 (E.D. Va. 2005). Parties are generally assumed to be sufficiently motivated to have their own employees or other allies appear in person for trial wherever it might take place. *Buztronics,* 2005 U.S. Dist. LEXIS 8661, 2005 WL 1113873 at 4. This is not so for non-party witnesses. Therefore, principal concern is to ensure that non-party witnesses are available for trial. *Buztronics,* 2005 U.S. Dist. LEXIS 8661, 2005 WL 1113873 at 4. In this case, neither party [*14] has identified any non-party witnesses. At most, the parties have made reference only to witnesses who are employees or who are closely aligned with a party. Consequently, it may be assumed that each party can obtain the presence of these witnesses in the more distant venue. There is no indication that one party's witnesses will be burdened or inconvenienced more than the other party's witnesses. For the presumption of the first-to-file rule to be overcome, there must be a clear showing that it would be unjust or inefficient for the first-filed lawsuit to proceed. *See, e.g., Design Auto Group, Inc. v. Lund Indus., Inc.* 1996 WL 377063 at 1-2 (N.D. Ill. July 1, 1996) (*Design Auto*). The factor of availability of non-party witnesses weighs in favor of neither party and presents no sound basis for exception to the first-to-file rule.

*Forum Shopping*

Plaintiffs contend that Protex filed the declaratory judgment action in New York solely in anticipation of the instant lawsuit and was a manipulative attempt to select a forum. The Declaratory Judgment Act is not a tool to be used by potential litigants for the purpose of securing the forum. *See Schumacher Elec. Corp. v. Vector Products, Inc.,* 286 F. Supp.2d 953, 955 (N.D. Ill. 2003). [*15]

Whether the party filing the action did so for the purpose of preempting the infringement suit brought by another may be considered. *See Serco Servs.,* 51 F.3d at 1040. Intent of the filing party, though, is "merely one factor (to be considered) in the analysis." *Elecs. for Imaging,* 394 F.3d at 1347-48; *Trading Techs.,* 2005 U.S. Dist. LEXIs 26514, 2005 WL 3601936 at 2.

Protex claims it filed the New York action in good faith and not for purposes of forum shopping. Other than the prior unsuccessful attempted joinder of Protex as a defendant in the *Diam* case, the Plaintiffs cannot show any conduct by Protext that would make its New York declaratory judgment action anticipatory and Protex guilty of forum shopping. Even if the New York action could be characterized as anticipatory, this does not, alone, warrant making an exception to the general first-to-file rule. *Elecs. for Imaging,* 394 F.3d at 1348; *Buztronics,* 2005 U.S. Dist. LEXIS 8661, 2005 WL 1113873 at 5. Because the impact of traditional forum shopping in patent cases has been in large part obviated by the creation of the Federal Circuit, the stakes of a race to the courthouse are now less severe. [*16] *Serco Servs.,* 51 F.3d at 1040. Dismissal of a declaratory action that is anticipatory in nature may be granted in view of other factors, including the location of the witnesses and documents, but cannot be premised solely because the suit was designed to anticipate a later-filed complaint in another forum. *Elecs. for Imaging,* 394 F.3d at 1348. Here, there are no additional factors to support dismissal even if Protex's New York suit was found to be filed in anticipation of this action. Rather, those factors, as explained above, favor the New York forum and support the first-to-file rule.

Plaintiffs cite cases in support of the general proposition that the filing of an anticipatory declaratory judgment serves as a sufficient ground for departing from the first-to-file rule. *See Schwarz v. Nat'l Van Lines, Inc.,* 317 F. Supp. 2d 829, 833 (N.D. Ill. 2004) (Schwartz); *S.J.G. Enters., Ltd. v. Eikenberry & Assocs.,* 2004 U.S. Dist. LEXIS 15186, 2004 WL 17944475 at 1 (N.D. Ill. August 5, 2004); *Galileo Int'l Pshp. v. Global Village Commun.,* 1996 U.S. Dist. LEXIS 11240, 1996 WL 452273 at 4 (N.D. Ill. Aug. 8, 1996) (Galileo); *MLR,* 2003 U.S. Dist. LEXIS 2827, 2003 WL 685504 at * 1. [*17] The facts in each of the cases, however, are distinguishable. Specifically, in each of the cases, the potential litigants, prior to the filing of the declaratory action, had either been engaged in negotiations which broke down

and the patentee clearly articulated to the alleged infringer an explicit and unequivocal threat of imminent suit or the alleged infringer surreptitiously filed the declaratory judgment action while feigning good faith efforts to negotiate the dispute.

Unlike the circumstances in the above cited cases, when Protex brought its declaratory judgment action in New York, there had been no negotiations between the parties. While Protex and Vanguard had exchanged letters charging and denying infringement, there was no further communication for a period of nearly eight months. At the time Protex filed in the New York forum, there existed no express or implied agreement between the parties to negotiate.

**Motion to Transfer Pursuant to Federal Change of Venue Statute**

In light of the above ruling, the issue of transfer pursuant to 28 U.S.C. § 1404(a) is not considered.

**CONCLUSION**

In the instant action, the presumption [*18] favoring the forum of the first-filed action has not been overcome. There has been no showing of an imbalance of conven-

ience nor is there present compelling circumstances or sound reasons which would make it "unjust or inefficient" to permit the District Court for the Eastern District of New York first-filed action to proceed.

For the foregoing reasons, Protex's Motion to Dismiss is granted. Protex's Motion to Transfer Venue is denied as moot.

Dated: March 14, 2005

JOHN W. DARRAH

United States District Court Judge

**JUDGMENT IN A CIVIL CASE**

Decision by Court. This action came to hearing before the Court. The issues have been heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that for the reasons stated in the Court's 3/14/06 memorandum opinion and order, Protex's motion to dismiss is granted. Protex's motion to transfer venue is denied as moot. Enter Memorandum Opinion and Order.

Date: 3/14/2006

# EXHIBIT J

LEXSEE 2004 U.S. DIST. LEXIS 18970



Analysis
As of: Aug 29, 2008

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, Plaintiff, v. MELTON TRUCK LINES, INC. and GULF INSURANCE COMPANY, Defendants.**

**No. 04 C 2390**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

**2004 U.S. Dist. LEXIS 18970**

**September 8, 2004, Decided
September 20, 2004, Docketed**

**PRIOR HISTORY:** Indem. Ins. Co. of N. Am. v. Melton Truck Lines, Inc., 2004 U.S. Dist. LEXIS 17879 (N.D. Ill., Sept. 7, 2004)

**DISPOSITION:**    [*1] Defendant Melton Truck Lines' motion to dismiss granted.

**COUNSEL:** For INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, plaintiff: Michael Smith Knippen, Brett L. Warning, Janet Ann Flynn, Bollinger, Ruberry and Garvey, Chicago, IL.

For MELTON TRUCK LINES, INC, defendant: Jill B. Berkeley, John A. Bannon, Samantha Christine Norris, Schiff Hardin LLP, Chicago, IL.

For GULF INSURANCE COMPANY, defendant: Jean Mary Golden, John David Hackett, Cassiday, Schade & Gloor, Chicago, IL.

**JUDGES:** Judge James B. Zagel.

**OPINION BY:** James B. Zagel

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Defendant Melton Truck Lines, Inc. ("Melton") is an interstate trucking company based in Oklahoma. Defendant Gulf Insurance Company ("Gulf") provides Melton with its primary motor carrier indemnity insurance in the amount of $ 4,950,000. Plaintiff Indemnity Insurance Company of North America ("IICNA") provides Melton's secondary insurance with a limit of $ 25,000,000.

In February 2003, one of Melton's trucks covered by the Gulf and IICNA policies was involved in a collision. A lawsuit ensued, and, on November 14, 2003, a judgment was entered against Melton in the amount of $ 14,650,000. Melton has subsequently appealed. While Gulf has acknowledged [*2] that its policy covers part of the judgment, IICNA has denied coverage, alleging that Melton violated the notice conditions of the IICNA policy.

On March 30, 2004, Melton filed a declaratory judgment action against IICNA in the Federal District Court for the Northern District of Oklahoma (the "Oklahoma Action"). In the Oklahoma Action, Melton alleged that it had complied with all conditions precedent under the IICNA policy and asked the court to find that the IICNA policy provides coverage for the $ 14,650,000 judgment, in excess of Gulf's policy.

IICNA was served with the Oklahoma Complaint on March 31, 2004. One day later, on April 1, 2004, IICNA filed this lawsuit against Melton and its primary insurer, Gulf, seeking a declaration from this court that IICNA did not provide coverage to Melton for the claim at issue. The complaint filed in the Oklahoma Action is similar to the complaint filed in this court in all respects. In both, the parties are asking a determination as to Melton's

compliance with IICNA's policies and IICNA's liability pursuant to that policy. IICNA argues that the actions are substantially different because this action has an added and, in IICNA's opinion, necessary [*3] party, Gulf. However, I do not think this is a substantial difference. In its complaint here, IICNA makes no substantive allegations of fact involving Gulf and seeks no monetary relief from Gulf. To the extent that IICNA does feel Gulf is a necessary party, Gulf could easily be joined in the Oklahoma Action.

In general, federal courts have held that when multiple actions involving the same controversy are filed, the action that was filed first is the one that should proceed. *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.,* 342 U.S. 180, 96 L. Ed. 200, 72 S. Ct. 219, 1952 Dec. Comm'r Pat. 407 (1952). "The first-filed rule gives priority to the party who first establishes jurisdiction in order to conserve judicial resources and avoid conflicting rulings." *Illinois Blower, Inc. v. Deltak, LLC,* No. 04 C 0341, 2004 U.S. Dist. LEXIS 5838 at *6 (N.D. Ill. Apr. 7, 2004) (citations omitted). Despite the administrative efficiency and certainty of a rigid "first-to-file" rule, courts in this district and in others have recognized that circumstances may render the general rule inapplicable. *Fed. Signal Corp. v. Pub. Safety Equip., Inc.,* No. 91 C 0493, 1991 U.S. Dist. LEXIS 9437 at *5-6 (N. [*4] D. Ill. July 10, 1991).

As IICNA points out, one such circumstance occurs when the first suit is a declaratory judgment action filed in anticipation of an action on the merits. *Id.* Such pre-

emptive litigation strikes can be used as a means of forum shopping and are a proper basis for departing from the first to file rule. 2004 U.S. Dist. LEXIS 5838 [WL] at *8. (citations omitted). But, looking at the events leading up to Melton's filing of the Oklahoma Action, I see no indication that Melton's motive for filing the suit was improper. In fact, Melton waited nearly four months after IICNA denied its claim before filing suit. Since I see no evidence of forum shopping in this case, I am, pursuant to my discretion, dismissing the case before me for reasons of judicial economy.

For these reasons, Melton's Motion to Dismiss is GRANTED.

ENTER:

James B. Zagel

United States District Judge

DATE: 8 Sep 2004

## JUDGMENT IN A CIVIL CASE

Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that motion to dismiss is granted.

Date: [*5] 9/15/2004

# EXHIBIT K

LEXSEE 1995 U.S. DIST. LEXIS 9350



Caution
As of: Aug 29, 2008

**APPLEXION S.A., a French corporation, and SPRECKELS SUGAR COMPANY, INC., a California corporation, Plaintiffs, v. THE AMALGAMATED SUGAR COMPANY, a Utah corporation, Defendant.**

**No. 95 C 858**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

**1995 U.S. Dist. LEXIS 9350**

**July 6, 1995, Decided**
**July 7, 1995, DOCKETED**

**COUNSEL:** [*1] For APPLEXION S A, plaintiff: Edward L. Foote, Peter Charles McCabe, III, Raymond C. Perkins, Winston & Strawn, Chicago, IL. James W. Potthast, Law Offices of Potthast & Ring, Chicago, IL.

For AMALGAMATED SUGAR COMPANY, THE, a Utah corporation, defendant: Kathleen Ann Lyons, Keith V. Rockey, Rockey, Rifkin and Ryther, Chicago, IL.

For AMALGAMATED SUGAR COMPANY, THE, counter-claimant: Kathleen Ann Lyons, Keith V. Rockey, Rockey, Rifkin and Ryther, Chicago, IL.

For APPLEXION S A, counter-defendant: Edward L. Foote, Peter Charles McCabe, III, Raymond C. Perkins, Winston & Strawn, Chicago, IL. James W. Potthast, Law Offices of Potthast & Ring, Chicago, IL.

**JUDGES:** Suzanne B. Conlon, United States District Judge

**OPINION BY:** Suzanne B. Conlon

**OPINION**

*MEMORANDUM OPINION AND ORDER*

Applexion S.A. ("Applexion") and Spreckels Sugar Company, Inc. ("Spreckels") brought this suit against Amalgamated Sugar Company ("Amalgamated") seeking a declaratory judgment that Amalgamated's United States Patent No. 4,412,866 ("the '866 patent") is invalid, unenforceable, and not infringed by Applexion's sale of equipment and technology for the chromatographic separation of chemical constituents, including molasses desugarization. Amalgamated answered the suit and counterclaimed against Applexion and Spreckels for infringement of the '866 patent. Amalgamated later filed suit against Applexion in the District of Utah charging Applexion with infringing the same patent at a different facility. Applexion moves to enjoin Amalgamated from prosecuting the Utah action until this suit is resolved.

*BACKGROUND*

Applexion sells sugar processing equipment and technology to sugar processors. Amalgamated is a sugar distributor that also uses equipment for the purpose of processing sugar products. Amalgamated is the assignee of the '866 patent. The '866 patent claims certain [*2] chemical separation processes, including molasses desugarization.

Prior to 1994, Amalgamated and Applexion discussed forming a business relationship to develop and market separation technology. The negotiations were unsuccessful. Some time later, Amalgamated learned that Applexion was marketing to Spreckels a chromatographic separation process for molasses desugarization for use in Spreckels' new plant. In a series of letters and meeting, Amalgamated notified Applexion that it considered Applexion's process violative of the '866 patent.

1995 U.S. Dist. LEXIS 9350, *

Applexion disagreed, and asserted that Amalgamated's patent was invalid and unenforceable for several reasons. On February 10, 1995, Applexion filed this declaratory judgment action (to which Spreckels was later added as an additional plaintiff) seeking a declaration that Amalgamated's patent is invalid and unenforceable, and that the chromatographic separation equipment installed at Spreckels' facility does not infringe the '866 patent. Discovery commenced shortly thereafter. On April 14, 1995, the court denied Amalgamated's motion to dismiss for lack of a justiciable controversy. On May 2, 1995, Amalgamated answered the complaint and filed a counterclaim [*3] charging Applexion and Spreckels with infringement of "at least claim 8" of the '866 patent.

Meanwhile, on May 1, 1995, Amalgamated filed a patent infringement suit against Applexion in the United States District Court for the District of Utah ("the Utah action"). Applexion did not learn of the Utah action until it was served with the complaint on May 19, 1995. The Utah action charges Applexion with infringement of "at least claim 8" of the '866 patent. *See* Mot. Inj. Ex. A. The alleged infringement stems from a chromatographic separation process that Applexion employs in its SMB pilot plant at the Audubon Sugar Institute in Louisiana. Applexion moves to enjoin Amalgamated from prosecuting the Utah action until this case has been resolved.

## DISCUSSION

Applexion seeks to enjoin Amalgamated from prosecuting the Utah action because the fundamental issues in the Utah action are identical to the issues in this lawsuit. The general rule is that the first federal court to obtain jurisdiction has the discretionary power to enjoin its defendant from prosecuting (or initiating) a separate suit involving the same essential issues against the plaintiff in another court, thereby [*4] forcing the defendant either to litigate its claim as a counterclaim or to abandon it. *Asset Allocation & Mgt. Co. v. Western Employers Ins. Co.*, 892 F.2d 566, 572 (7th Cir. 1989); *Warshawsky & Co. v. Arcata Nat'l Corp.*, 552 F.2d 1257, 1265 (7th Cir. 1977); *Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1004 (8th Cir. 1993); 6 C. Wright, *et al., Federal Prac. & P.* § 1418 (2d ed. 1990); *see also Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 185, 96 L. Ed. 200, 72 S. Ct. 219 (1952). The basis for the power is practical. *Asset Allocation,* 892 F.2d at 572. In order to conserve judicial resources, avoid conflicting rulings, and facilitate the economical management of complex litigation, the first-filed rule gives priority, for purposes of choosing among possible venues, to the party who first establishes jurisdiction. *See Northwest Airlines,* 989 F.2d at 1006; *Asset Allocation,* 892 F.2d at 572. Nevertheless, the rule yields to the interest of justice; courts exercising the power must give due regard to the balance of convenience if the parties litigate in one forum rather than another. *Asset Allocation,* 892 F.2d at 572-73. [*5]

Thus, a rebuttable presumption exists that the first case should be allowed to proceed and the second should be enjoined. *Id.* at 573; *Martin v. Graybar Elec. Co.,* 266 F.2d 202, 204 (7th Cir. 1959). The presumption may be rebutted by showing an imbalance of convenience or some other special circumstance that militates in favor of proceeding with the later suit instead of the first-filed action. *Dahlstrom Mfg. Co. v. Storage Technology Corp.,* 1994 U.S. Dist. LEXIS 483 (W.D.N.Y. Jan. 14, 1994). Circumstances that suffice to rebut the presumption include the inability of the defendant to obtain jurisdiction over one of the counterclaim defendants in the first-filed suit, *see Asset Allocation,* 892 F.2d at 573, the trivial nature of the original suit compared to the latter one, *id.,* a showing that the first action was filed in bad faith, *Crosley Corp. v. Westinghouse Elec. & Mfg. Co.,* 130 F.2d 474, 475 (3d Cir. 1942), a showing that the plaintiff in the first-filed action raced to the courthouse to avoid litigating in another forum, *Northwest Airlines, Inc. v. American Airlines, Inc.,* 792 F. Supp. 655, 658 (D. Minn. 1992), or a showing that the second action [*6] has developed further than the first. *Id.* In no case, however, should a district court countenance the simultaneous litigation of essentially identical claims in two federal courts. *Asset Allocation,* 892 F.2d at 573.

The court finds that an injunction is warranted in light of these standards. Applexion filed this action on February 10, 1995. The primary relief sought by Applexion is a declaration that Amalgamated's patent is invalid under several statutory provisions and that it is unenforceable because of Amalgamated's alleged inequitable conduct in prosecuting the patent. Applexion's lawsuit stems from Amalgamated's charges that an Applexion process installed at Spreckels' plant infringes at least claim 8 of the '866 patent.

The Utah action was not filed until May 1, 1995. The Utah action charges Applexion with infringing at least claim 8 of the '866 patent through the use of its process at the Audubon Sugar Institute. Both this case and the Utah action involve the same fundamental factual and legal issues; both cases revolve around the common nub of claim 8 of Amalgamated's patent. *See, e.g., Akzona Inc. v. E.I. du Pont de Nemours & Co.,* 662 F. Supp. 603, 618 (D. Del. [*7] 1987); Wright *et al., supra,* at § 1410. Amalgamated's general counsel, John Lemke, concedes that identical issues of claim interpretation, patent validity, and enforceability are present in both the Illinois and Utah actions. *See* Lemke Dep. 42. Moreover, Lemke also testified that he believed all issues in both lawsuits would be the same, although he noted the possibility that the facts surrounding the different

facilities may be "slightly different." Lemke Dep. 42. Thus, the gravamen of both the Illinois and Utah actions is substantially similar, if not identical. Both actions arise out of the same patent and involve identical issues of claim interpretation, validity, and enforceability. These issues comprise the essence of each lawsuit. The record also suggests a strong probability that all issues in both lawsuits will be identical. Lemke Dep. 42. Because these parallel suits involve the same parties and issues, a rebuttable presumption exists that this suit, being first-filed, should proceed while the Utah action should be enjoined. *See Asset Allocation,* 892 F.2d at 573. The presumption is buttressed by the fact that considerable discovery has been conducted in this [*8] case and the case has been placed on the November 1995 trial calendar. [1] In contrast, the Utah action was recently filed and nothing has occurred in the case. Indeed, Applexion is not required to answer the Utah complaint until August 17, 1995. Amalgamated presents no argument or evidence in favor of allowing the second action to proceed while enjoining this suit.

> 1   At the time Applexion filed its motion, discovery was set to close in mid-July and the case was to be tried in August 1995. On July 5, 1995, the court granted Applexion's motion to extend the discovery cut-off and trial dates. Discovery must be completed and dispositive motions filed by September 18, 1995. The case is now on the November trial calendar. The extension was necessitated by Amalgamated's late production of significant amounts of documents.

Amalgamated advances several arguments against the injunction that do not change the result. First, Amalgamated contends that the issues and parties in the two suits "are only marginally related." [*9] Amalgamated Resp. at 1. The court disagrees. Both cases involve the same principal parties, Applexion and Amalgamated. [2] Moreover, the Illinois and Utah actions fundamentally involve interpretation of the same patent claim, the validity of the same patent, and the enforceability of the same patent. The '866 patent and the issues surrounding it therefore provide the common basis for both lawsuits and represent the major issues to be litigated. The only possible difference between the two actions is that the Illinois action involves Applexion's process at the Spreckels facility while the Utah action involves the Applexion process at the Audubon Sugar Institute in Louisiana. However, Amalgamated's general counsel testified that he believes the lawsuits involve the same issues and that any difference that may exist between the processes employed at the facilities would only be slight. *See* Lemke Dep. 40, 42. Thus, any differences between the cases appear insignificant in light of the fact that the major issues in both cases are identical.

> 2   The fact that Spreckels is an additional plaintiff in the Illinois case and that others could be added as defendants in the Utah action is of no moment. *See Asset Allocation,* 892 F.2d at 574.

[*10] Amalgamated also argues that the Utah action should not be enjoined because one of patent's inventors, Karlheinz Schoenrock, lives in Utah and is not subject to the jurisdiction of this court. Schoenrock is not a party to either action; he is a potential witness. The only relevant jurisdictional problem is that this court may not compel Schoenrock's appearance with a subpoena. Amalgamated does not contend that Schoenrock is hostile to Amalgamated or would refuse to testify in Illinois if called. Indeed, Applexion took Schoenrock's deposition in connection with the Illinois action during the week of May 22, 1995. *See* Applexion Mot. at 6. Moreover, Amalgamated makes no showing that Schoenrock's testimony is critical in the sense that no other witnesses could competently testify to the relevant facts, or that Schoenrock's evidence deposition would not suffice. *See* Rule 32(a)(3)(B), Federal Rules of Civil Procedure. Accordingly, Schoenrock's domicile is not a compelling reason to deny the injunction.

Amalgamated next contends that the Utah action should not be enjoined because the Utah action has not affected and cannot be expected to affect or prejudice the Illinois action. [*11] Amalgamated notes that discovery has progressed significantly in the Illinois action while Applexion has not even answered the Utah complaint. Amalgamated suggests that the Illinois action may be tried and completed by the time that Applexion is required to answer or otherwise plead in Utah. Amalgamated's argument has several flaws. First, Amalgamated's argument assumes an August trial date for the Illinois action. However, the court recently reset the trial on its November calendar. *See* July 5, 1995 Minute Order. Second, Amalgamated's argument ignores the policies served by the first-filed rule. The first-filed rule is designed to conserve judicial resources and avoid the expense associated with duplicitous litigation. *See Asset Allocation,* 892 F.2d at 572; *Northwest Airlines,* 989 F.2d at 1006. There is no reason to require the parties to engage in the time, effort, and expense of litigating the Utah action when the same issues, potentially dispositive to the Utah action, are close to trial in Illinois. Contrary to Amalgamated's representation, allowing the Utah and Illinois actions to proceed independently presents an unacceptable risk of conflicting rulings. *See Northwest* [*12] *Airlines,* 792 F. Supp. at 658-59 (enjoining later-filed duplicitous action in part because two federal courts entered conflicting rulings in parallel litigation).

Perhaps more fundamentally, Amalgamated appears to misapply the first-filed rule. Instead of contending that

the Illinois action should be enjoined and the Utah action should continue, Amalgamated appears to contend only that the Utah action should not be enjoined. In other words, Amalgamated's position seems to be that both actions should continue. But the first-filed rule is premised on the notion that there should not be simultaneous litigation of essentially identical claims in two federal district courts; one of the actions should yield to the other in the interest of judicial economy. *See Asset Allocation,* 892 F.2d at 573. The first-filed rule is a method of choosing among potential venues in this situation. *See Northwest Airlines,* 989 F.2d at 1006. Amalgamated's contention that both actions should continue along parallel roads because they will not affect one another is presumptively untenable -- one or the other should be enjoined. Amalgamated has not presented any evidence or argument that the Utah action [*13] should continue and the Illinois action should be enjoined. In contrast, it is clear that discovery in the Illinois case has progressed significantly, trial is approaching, and the court is familiar with the issues in the case. Moreover, there is no indication it would be any more convenient to litigate the issues in Utah; Applexion is located in Illinois, Amalgamated is located in Utah, Spreckels is located in California, and Audubon Sugar Institute is located in Louisiana.

Finally, Amalgamated contends that it would be prejudiced if it were ordered to dismiss the Utah action. Applexion has not asked the court to order Amalgamated to dismiss the Utah suit. It would be inappropriate for this court to order Amalgamated to dismiss the Utah action. *See Asset Allocation,* 892 F.2d at 571. Applexion only seeks to enjoin Amalgamated from prosecuting a duplicitous action until resolution of this suit. [3] Amalga-

mated has failed to demonstrate that an injunction would cause prejudice. [4]

> 3    Amalgamated makes passing reference to problems that might occur if the Utah action is transferred and joined to this action. The purpose behind this remark is unclear. The only issue before the court is whether Amalgamated should be enjoined from prosecuting the duplicitous Utah action. Whether the Utah action should be transferred and joined to the Illinois action at this stage is not properly before this court.

[*14]

> 4    Amalgamated implies that it would stipulate to an injunction. Thus, despite its expressed opposition to Applexion's motion, Amalgamated appears amenable to the injunction. Amalgamated Br. at 6.

### CONCLUSION

Plaintiff Applexion S.A.'s motion for an injunction is granted. Defendant Amalgamated Sugar Company is enjoined from prosecuting *The Amalgamated Sugar Company v. Applexion, S.A.,* Case No. 1:95 CV 0059W in the United States District Court for the District of Utah until further order of this court.

ENTER:

Suzanne B. Conlon

United States District Judge

July 6, 1995