IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CONSOLIDATED COMMERCIAL CONTROLS, INC. D/b/a ALLPOINTS FOODSERVICE PARTS & SUPPLIES, | Case No. 08 C 4388 |
| Plaintiff, | Judge Virginia M. Kendall |
| v. | |
| 5 STAR SUPPLY, LLC, 5 STAR MANAGEMENT GROUP, LLC, LINDA A. WILLIAMS, CLIFFORD G. WILLIAMS II, STEPHEN J. PURSEL, PHILIP J. CARUSO, and ROBERT G. MASTROFRANCESCO | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Consolidated Commercial Controls, Inc. ("CCC") brought suit against Defendants 5 Star Supply LLC, 5 Star Management Group (collectively "5 Star"), Linda A. Williams ("L.Williams"), Clifford J. Williams II ("C. Williams"), Stephen J. Pursel ("Pursel"), Philip J. Caruso ("Caruso"), and Robert G. Mastrofrancesco ("Mastrofrancesco") (collectively " Individual Defendants") asserting violations of the Illinois Trade Secrets Act, breach of contract, tortious interference with contract, violation of the Computer Fraud and Abuse Act, conversion breach of fiduciary duty and civil conspiracy and seeking injunctive relief and compensatory and punitive damages. Defendants now move this Court to dismiss CCC's claims because this Court lacks personal jurisdiction. For the reasons stated below, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is granted.

1

# STATEMENT OF FACTS

CCC, a distributor of foodservice equipment, parts and supplies, is a corporation organized under the laws of the state of Delaware with its principal place of business in Illinois. Compl. at ¶ 3. On or about October 31, 2007, CCC acquired one of its competitors, International Commercial Supply Company, LLC ("ICS"), a company based in Connecticut. *Id* at ¶¶ 1, 18. At the time of the acquisition, the Individual Defendants were employees of ICS. *Id*. The Individual Defendants were and remain citizens of Connecticut. In 2008, after the acquisition, L. Williams resigned from CCC and formed 5 Star. *Id*. at ¶¶ 31-33. The rest of the Individual Defendants resigned their employment with CCC soon thereafter and became employees of 5 Star, a company organized under the laws of Connecticut with its principal place of business in Connecticut. *Id*. at ¶¶ 36-37.

5 Star has no operations or customers in Illinois. L. Williams Dec. at 18. None of the Defendants own property, maintain bank accounts, or conduct operations in Illinois. L. Williams Dec. at ¶ 13; C. Williams Dec. at ¶ 7; Pursel Dec. at ¶ 10; Caruso Dec. at 7; MASTROFRANCESCO Dec. at ¶ 10.

During their brief employment with CCC, the Individual Defendants had minimal contact with the state of Illinois. Specifically, 1) all Individual Defendants attended a management meeting at CCC's offices in Chicago; 2) L. Williams four additional meetings in CCC's office in Chicago, Illinois; 3) C. Williams and L. Williams attended the CCC Christmas party in Illinois; and 4) Caruso attended one additional meeting at CCC's offices in Illinois. L. Williams Dec. at ¶¶ 15, 16; C. Williams Dec. at ¶ 9; Pursel Dec. at ¶ 12; Caruso Dec. at ¶¶ 9, 10; Mastrofrancesco Dec. at ¶ 12. In addition, Mastrofrancesco attended eight trade shows in Illinois over twenty-seven years at ICS's

expense, and Pursel attended three trade shows in Illinois on behalf of ICS and a prior employer. Mastrofrancesco Dec. at ¶ 14; Pursel Dec. at ¶ 13.

Soon after the Individual Defendants' departures, CCC undertook a forensic examination of each of their computers and discovered that a substantial number of files had been transferred or deleted circa the time of the Individual Defendants' resignations. Compl. at ¶¶ 39-42. Concerned that the Individual Defendants intended to use CCC's files for the gain of 5 Star, on July 17, 2008, CCC sent a letter to each of them demanding that they contact CCC's counsel and the return of any CCC or ICS property or documents. *Id*. at ¶¶ 43-44. The letter further stated that if CCC did not receive a response within five business days, it would seek a preliminary injunction. *Id*.

On July 24, 2008, CCC received a letter from counsel representing 5 Star and the Individual Defendants enclosing a complaint filed that day in the United States District Court for the District of Connecticut. *Id*. at ¶ 45, Ex. F. The Complaint sought a declaratory judgment that "the individual Plaintiffs' employment with 5 Star Supply LLC does not violate any contractual or legal obligations of the individual Plaintiffs to Defendant or any alleged doctrine of inevitable disclosure of confidential information." *Id*. The complaint also included a claim by Caruso, C. Williams, and Mastrofrancesco alleging that CCC did not pay them for unused vacation days or for their final two days of employment. *Id*. Thereafter, on August 1, 2008, CCC filed a Complaint seeking injunctive and other relief in this Court.

**STANDARD OF REVIEW**

In reviewing a motion to dismiss for lack of personal jurisdiction, the Court accepts all well-pleaded factual allegations in the complaint as true unless controverted by the defendant's affidavits.

3

*See Turncock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987), *superceded on other grounds*. Where affidavits submitted by the plaintiff create a factual dispute, all disputed facts are construed in the plaintiff's favor. *Logan Prods., Inc. v. Optibase, Inc.*, 103 F.3d 49, 52 (7th Cir. 1996).

Once a defendant challenges the court's exercise of personal jurisdiction, the plaintiff bears the burden of demonstrating that personal jurisdiction exists. *See Jennings v. AC Hydraulic A/S*, 383 546, 548 (7th Cir. 2004). When a court decides a motion solely on the written submissions, the plaintiff bears the burden to establish a *prima facie* case that jurisdiction may be exercised. *See Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). The Court first reviews whether statutory grounds exist for personal jurisdiction, and then determines if the exercise of jurisdiction would be consistent state and federal constitutional law. *See Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 939 (7th Cir. 2000). A federal court sitting in diversity has personal jurisdiction over a defendant only if the courts of the state in which it sits would have personal jurisdiction. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997).

"A federal court borrowing a state jurisdictional statute may acquire personal jurisdiction only to the extent that the state law authorizes service of process." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). The Illinois long-arm statute governs service of process in Illinois and "permits its courts to exercise jurisdiction on any basis permitted by the Illinois and United States constitutions." *See* 735 ILCS 5/2-209(c); *Hyatt*, 302 F.3d at 714. Due process requirements for jurisdiction under the Illinois Constitution parallel due process requirements for jurisdiction under the federal Constitution; therefore, the inquiry collapses into whether the exercise of

4

jurisdiction over MDR would comport with the due process requirements of the federal Constitution. *See Central States*, 230 F.3d at 940; *accord Hyatt*, 302 F.3d at 714-16.

To satisfy the requirements of due process, a defendant must have "minimum contacts" with Illinois and those minimum contacts must not offend "traditional notions of fair play and substantial justice." *See RAR*, 107 F.3d at 1275, *discussing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). There exist two types of jurisdiction: "general" and "specific." *See Hyatt*, 302 F.3d at 713*, discussing Helicopteros Nationales de Colombia v. Hall*, 466 U.S. 408, 414 (1984). "General jurisdiction is proper only when the defendant has 'continuous and systematic' contacts with the state in question; if such contacts exist, the court may exercise personal jurisdiction over the defendant even in cases that do not arise out of and are not related to the defendant's forum contacts." *Hyatt*, 3102 F.3d at 713. Specific jurisdiction allows the Court to exercise jurisdiction over a defendant whose contacts with the forum state are limited but where "the plaintiff's cause of action must arise out of or be related to these minimum contacts that sufficiently comport with fairness and justice." *Central States*, 230 F.3d at 943.

## **DISCUSSION**

Here, CCC concedes that Defendants are not subject to this Court's general jurisdiction but argues that this Court has specific personal jurisdiction. In determining whether specific jurisdiction exists over an out-of-state defendant, the Court must determine whether the minimum contacts between the defendant and the forum state demonstrate that the defendant "purposefully availed itself of the privilege of conducting activities" in the forum state such that it should reasonably anticipate being haled into court there." *See*, *RAR, Inc.*, 107 F.3d at 1277. The Court focuses on "the relationship among the defendant, the forum, and the litigation." *Heritage House Restaurants, Inc.*

5

*v. Continental Funding Group, Inc.*, 906 F.2d 276, 283 (7th Cir. 1990). Specific jurisdiction exists if it is foreseeable that he contacts with the forum state would be sufficient for the defendant "to reasonably anticipate being haled into court there." *See Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985).

Specifically, CCC argues that this Court has personal jurisdiction over Defendants under the "effects doctrine" of specific jurisdiction. Under this doctrine, a tortfeasor is subject to suit in the state in which the victim of a tort suffers the injury. *Jamark, Inc. v. T. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997) *citing Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Limited Partnership*, 34, F.3d 410, 411-12 (7th Cir. 1994). Indeed, an injury is a component of a "tort," and as such, part of the tort occurred in the state in which the injury occurred. *Jamark*, 132 F.3d at 1202.

The effects doctrine can justify the exercise of jurisdiction over a defendant who commits a tort against a business located in Illinois when the resultant injury is felt in Illinois. *Indianapolis Colts*, 34 F.3d at 411. (defendants who used a name similar to that of the Indianapolis Colts endangered property in Indiana and therefore were subject to personal jurisdiction there). More specifically, Defendants accused of appropriating trade secrets belonging to Illinois corporations may be subject to personal jurisdiction in Illinois under the effects doctrine. *See Riddell v. Monica*, No. 03 C 3309, 2003 WL 21799935, at *3-4 (N.D.Ill. July 25, 2003) (defendants misappropriated trade secrets of company with principal place of business in Illinois); *Int'l Molding Machine Co. v. St. Louis Conveyor Co.*, No. 01 C 8305, 2002 WL 1838130, at *4 (N.D.Ill. August 12, 2002) (defendants located in Missouri misappropriated trade secrets of a company located in Illinois). Here, similarly, the Defendants are accused of committing the act of trade secret misappropriation

in Connecticut, but CCC, the entity that suffered injury from that alleged misappropriation is located in Illinois. As such, the injury resulting from the misappropriation took place in Illinois.

However, this Court has held that even under the effects doctrine, "a court must still assess each defendant's contacts with the forum state." *Ferris Mfg. Corp. v. S.P.R.D.*, No. 07 C 466, 2007 WL 1438375, at *4 (N.D.Ill. May 15, 2007) (Kendall, J.) *citing Calder*, 465 U.S. 783, 790 (1984); *see also*, *Softee Manf., LLC v. Mazner*, No. 03 C 3367, 2003 WL 23521295, at *5 (N.D.Ill. December 18, 2003) (personal jurisdiction is not established by virtue of a trademark owner's residence but rather plaintiff must show additional contacts with the forum state). Contacts that are "random, fortuitous, or attenuated" are insufficient to establish minimum contacts". *Ferris*, 2007 WL 1438375, at *4 (defendants accused of defrauding an Illinois corporation not subject to personal jurisdiction where defendants only contact with forum state amounted to purchasing plaintiffs products through an out-of-state intermediary) *citing Heritage House*, 906 F.2d at 283. Such additional contacts are present in *Riddell* and *Int'l Moulding*, relied on by Defendants. *Riddell*, 2003 WL 21799935, at *3 (personal jurisdiction exists even under the more restrictive interpretation because defendant mailed an advertisement for its product into Illinois); *Int'l Moulding*, 2002 WL 1838130, at *4 (defendant had prior contractual relationships with plaintiff in Illinois).

Here, CCC argues only that Defendants should be subject to this Court's personal jurisdiction because the effects of their alleged misappropriation of trade secrets without reference to any other contact with Illinois. This is insufficient to establish personal jurisdiction under *Jamark*.[1] For the reasons stated above, Defendants' Motion to Dismiss for Lack of Personal

---

[1] There is no evidence of other contact with Illinois by 5-Star, but the Individual Defendants admit to various other contacts with the state of Illinois, namely, attendance at meetings at CCC's headquarters and in the past, attendance at trade shows. These contacts are notably minimal and

7

Jurisdiction is granted. Because this Court has no personal jurisdiction over Defendants, Defendants' Motion to Dismiss due to Improper Venue or in the Alternative Transfer and CCC's Motion for Expedited Discovery and Motion for a Preliminary Injunction are denied as moot.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: November 26, 2008

---

regardless, each of these actions was taken at the behest of and in furtherance of the interest of the Individual Defendants' employer, CCC and prior to that, ICS. The fiduciary shield doctrine, in force in Illinois, precludes personal jurisdiction over a defendant where that defendant's activities in Illinois were taken for the benefit of an employer rather than for his personal interests. *Rollins v. Ellwood*, 565 N.E.2d 1302, 1318 (Ill. 1990) (accepting fiduciary shield doctrine and noting that where a defendant's contacts with a state are caused and motivated by his employer, not for his personal interests, it is unfair to use that conduct to justify asserting personal jurisdiction over the defendant); *see also*, *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir. 1994) (fiduciary shield doctrine precludes personal jurisdiction over an individual whose activity in the state in which a suit is brought was solely on behalf of an employer). As such, these minimal additional contacts with Illinois by the Individual Defendants cannot be used to justify an assertion of personal jurisdiction over them. Since CCC does not assert that Defendants had any further contacts with the state of Illinois, this Court may not exercise personal jurisdiction over them.